EXECUTION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

      Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

      Defendants.

---

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated April 28, 2021 (the "Settlement Agreement") is entered into by and between (i) the Court-appointed lead plaintiff Peter Voulgaris ("Lead Plaintiff") and named plaintiff Wendell Rose (collectively with Lead Plaintiff, "Plaintiffs") and (ii) defendants Array BioPharma Inc. ("Array"), Ron Squarer, Victor Sandor, and Jason Haddock (collectively, "Defendants" and, together with Plaintiffs, the "Parties") in *Voulgaris et al. v. Array BioPharma Inc. et al.* (the "Action"), pending in the United States District Court for the District of Colorado (the "Court"), and embodies the terms and conditions of the settlement of the Action.[1]

WHEREAS, on November 20, 2017 and November 28, 2017, two separate class action complaints were filed in the Court, alleging that Defendants violated the federal securities laws by making materially misleading statements or omissions regarding the New Drug Application ("NDA") for binimetinib;

WHEREAS, on March 12, 2018, the Court consolidated the related actions and appointed Peter Voulgaris as Lead Plaintiff, and Levi & Korsinsky, LLP as Lead Counsel and Berens Law LLC as liaison counsel for the proposed class;

WHEREAS, Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint") against Defendants on April 26, 2018.  The Complaint asserted claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder;

---

[1]     All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in paragraph 1 herein.

EXECUTION

WHEREAS, on June 11, 2018, Defendants moved to dismiss the Complaint, which Plaintiffs opposed on July 26, 2018.  Defendants thereafter filed a rely brief on August 16, 2018.

WHEREAS, in June 2019, while the Defendants' motion to dismiss was *sub judice*, Array was purchased by Pfizer Inc. ("Pfizer") and is now a wholly-owned subsidiary of Pfizer;

WHEREAS, the Court, by Opinion and Order dated November 24, 2020, denied Defendants' motion to dismiss the Complaint;

WHEREAS, on December 29, 2020, Defendants filed their answer and affirmative defenses to the Complaint;

WHEREAS, on January 11, 2021, Plaintiffs moved for the Action to be certified as a class action (the "Class Motion");

WHEREAS, on January 19, 2021, the Parties filed a joint proposed scheduling order pursuant to Rule 26(f) and Local Civil Rule 16.1, which the Court ordered on January 26, 2021;

WHEREAS, formal discovery in the Action commenced soon thereafter and the Parties exchanged initial disclosures, Defendants served written discovery requests on Plaintiffs and Defendants conducted the deposition of Plaintiff Wendell Rose and Plaintiffs' proposed class certification expert;

WHEREAS on March 22, 2021, Defendants' opposed the Class Motion, and on March 24, 2021, Plaintiffs filed a reply in further support of their Class Motion;

EXECUTION

WHEREAS, on March 24, 2021, Plaintiffs, Lead Counsel, Defendants, Defendants' insurers and counsel for Defendants participated in a mediation before the Honorable Layn Phillips of Phillips ADR, a nationally recognized mediator.  In advance of that mediation session, Defendants produced certain documents to Plaintiffs, and the Parties prepared detailed statements of their cases and defenses with supporting evidence.  While the parties did not reach an agreement to settle the Action at the mediation on March 24, 2021, the Parties continued settlement negotiations with the assistance of Judge Phillips, who provided the parties with a mediator's proposal.  On March 29, 2021, the Parties accepted the mediator's proposal and agreed to settle the Action for $8.5 million;

WHEREAS, the Parties wish to fully and finally settle and resolve all claims asserted in the Complaint, all claims that could have been asserted in the Complaint, and all claims that could in the future be asserted in any court or forum that arise out of or relate to the claims asserted in the Complaint;

WHEREAS, based upon their investigation, prosecution, and negotiations regarding the resolution of the Action, Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate and in the best interests of the Class.  Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, Plaintiffs have agreed to resolve the Released Plaintiffs' Claims in accordance with this Settlement Agreement, after considering, among other things: (*i*) the substantial financial benefit that the members of the Class will receive under the proposed Settlement; and (*ii*) the significant risks and costs of continued litigation and trial; and

WHEREAS, Defendants deny any improper conduct or violation of the federal securities laws or any other laws or regulations and believe that their public statements during the Class Period contained no material misstatements or omissions.  Defendants assert that they are settling the Action solely to avoid the burden, expense and uncertainty of further litigation;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs (individually and on behalf of all members of the Class) and Defendants, by and through their respective undersigned attorneys, and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be settled, released and dismissed with prejudice, upon and subject to the terms and conditions and definitions set forth below.

A.      **Definitions**

1.      As used in this Settlement Agreement and any exhibits attached hereto and made a part hereof, the following capitalized terms have the following meanings:

a.      "Action" means *Voulgaris et al. v. Array BioPharma Inc. et al.*, No. 17-cv-02789-KLM (consolidated with Civil Action No. 17-cv-02828-STV).

b.      "Attorneys' Fees and Expenses Application" means the application for fees and expenses to be made by Lead Counsel pursuant to paragraph 13 below, which may include a request for reimbursement to Plaintiffs for their costs and expenses incurred in connection with their representation of the Class.

      c.     "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Lead Counsel (and any other counsel representing Plaintiffs), including the fees and expenses of experts and consultants and any costs and expenses of Plaintiffs directly related to their representation of the Class.

      d.     "Authorized Claim" means a claim for recovery from an Authorized Claimant that has been found to be timely and valid under the terms of this Settlement Agreement.

      e.     "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successors, affiliates, or assigns) whose claim for recovery has been found to be timely and valid under the terms of this Settlement Agreement.

      f.     "Claim" or "Claims" means any and all claims, losses, rights, actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, matters and issues of any sort whatsoever, whether in law, in admiralty or in equity, and whether based on a United States federal, state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, accrued or not accrued, existing now or to be created in the future, including "Unknown Claims" (as defined below).

g.      "Claim Form" means the form that a Class Member must complete and submit to the Settlement Administrator in order to be eligible to receive a payment from the Net Cash Settlement Amount pursuant to this Settlement Agreement, which will, subject to Court approval, be substantially in the form set out in Exhibit A-2 hereto.

h.      "Claimant" means a person or entity who or that submits a Claim Form to the Settlement Administrator seeking to be eligible to receive a payment from the Net Cash Settlement Amount pursuant to this Settlement Agreement.

i.      "Class" means all persons or entities who purchased or otherwise acquired Array common stock between and including June 30, 2016 and March 17, 2017 and were damaged thereby, with the exception of: (a) Array and the Individual Defendants; (b) the officers and directors of Array during the Class Period; (c) members of their immediate families and their legal representatives, heirs, successors, or assigns; and (d) any entity in which the Individual Defendants have or had a controlling interest during the Class Period.

j.      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Cash Settlement Amount be distributed, in whole or in part, to Authorized Claimants.

k.      "Class Members" means a Person who falls within the definition of the Class.

l.      "Class Period" means the period of time between and including June 30, 2016 and March 17, 2017.

m.      "Defendants" means Array BioPharma Inc., Ron Squarer, Victor Sandor, and Jason Haddock.

EXECUTION

n.      "Defendants' Counsel" means the law firms of Skadden, Arps, Slate, Meagher & Flom LLP and Holland & Hart LLP, including of their attorneys, employees, experts, consultants, agents, and representatives.

o.      "Effective Date" shall be conditioned on the occurrence of all of the events and conditions specified hereafter: (*i*) execution of this Settlement Agreement and such other documents as may be required to obtain final Court approval of the Settlement Agreement in a form satisfactory to the Parties, (*ii*) the Court has entered the Preliminary Approval Order, substantially in the form of Exhibit A hereto, (*iii*) the Settlement Amount has been deposited into the Escrow Account in accordance with paragraph 2 hereto, (*iv*) Defendants have not exercised any option they may have to terminate the Settlement Agreement, (*v*) Plaintiffs have not exercised any option they may have to terminate the Settlement Agreement, (*vi*) the Court has approved the Notice, substantially in the form of Exhibit A-1 hereto, (*vii*) the Court has approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, (*viii*) the Court has entered the Judgment, substantially in the form of Exhibit B hereto, and (*ix*) the Judgment has become Final, as defined herein.

p.      "Escrow Account" means the account to be established by Lead Counsel at Signature Bank, into which the Settlement Amount will be paid pursuant to paragraph 2 of this Settlement Agreement and held in escrow under the control of Lead Counsel.

q.      "Escrow Agent" means Signature Bank.

r.      "Final" means, when used in connection with any court judgment or order, that the judgment or order will be final: (1) if no appeal is taken, on the date on which the time to appeal from the judgment or order (including any potential extension of time) has

expired; or (2) if any appeal is taken from the order and judgment, the date on which all such appeals – including any petitions for rehearing *en banc*, petitions for *certiorari* or any other form of review and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant judgment or order. Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (*i*) the Attorneys' Fees and Expenses Award or (*ii*) the plan of allocation for the Net Cash Settlement Amount (as submitted or subsequently modified), shall not in any way delay or preclude the Judgment from becoming Final.

       s.     "Final Approval Hearing" means the hearing to be set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider, among other things, (*i*) whether to approve the Settlement as fair, reasonable and adequate, *(ii)* whether to approve the proposed plan for allocating the proceeds of the Settlement to eligible members of the Class, and (*iii*) whether to grant the Attorneys' Fees and Expenses Application.

       t.     "Individual Defendants" means Ron Squarer, Victor Sandor, and Jason Haddock.

       u.     "Judgment" means the final judgment to be entered by the Court pursuant to the Order Approving Settlement and Final Judgment, which shall be substantially in the form set out in Exhibit B to this Settlement Agreement.

       v.     "Lead Counsel" means the law firm of Levi & Korsinsky, LLP, including all of its attorneys, employees, experts, consultants, agents, and representatives.

       w.     "Lead Plaintiff" means Peter Voulgaris.

x.      "Net Cash Settlement Amount" means the balance remaining in the Escrow Account (including any interest that has accrued) after the payments described in paragraph 4 below are made from the Escrow Account.

y.      "Notice" means the notice to be mailed to Class Members to inform them of the proposed Settlement, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit A-1 hereto.

z.      "Notice and Administrative Expenses" means all expenses associated with administration and implementation of this Settlement, including the Settlement Administrator's fees and expenses; *provided, however*, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses Award.

aa.      "Order Approving Settlement and Final Judgment" means the order to be entered by the Court approving the Settlement and this Settlement Agreement as contemplated in paragraph 41 of this Settlement Agreement, which order shall be substantially in the form set out in Exhibit B to this Settlement Agreement.

bb.      "Parties" means Defendants and Plaintiffs, on behalf of themselves and the Class.

cc.      "Person" means an individual, corporation (including all divisions and subsidiaries), general partnership, limited partnership, association, joint stock, company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their heirs, predecessors, successors, representatives, or assignees.

dd.     "Plaintiffs" means Lead Plaintiff Peter Voulgaris and named plaintiff Wendell Rose.

ee.     "Plaintiffs' Counsel" means Lead Counsel, Berens Law LLC, and all other counsel representing Plaintiffs in this matter.

ff.     "Plaintiffs' Releasee" means each and every one of, and "Plaintiffs' Releasees" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) Plaintiffs' Counsel, and (*iv*) any consultants, experts or other professionals retained by Plaintiffs' Counsel during the course of this Action.

gg.     "Plan of Allocation" means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to, Authorized Claimants, which shall, subject to Court approval, be substantially in the form contained in the Notice, attached hereto as Exhibit A-1.

hh.     "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement, directing notice of the Settlement to the Class, and scheduling the Final Approval Hearing, as contemplated in paragraph 40 of this Settlement Agreement, which order shall be substantially in the form set out in Exhibit A to this Settlement Agreement.

ii.     "Publication Notice" means the notice to be published, which notice shall, subject to Court approval, be substantially in the form set out in Exhibit A-3.

jj.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

EXECUTION

kk.     "Recognized Claim" shall have the meaning attributed to it in the Plan of Allocation.

ll.     "Releases" means the releases set forth in paragraphs 35-39 of this Settlement Agreement.

mm.     "Releasee" means each and every one of, and "Releasees" means all of Pfizer, Defendants, any of the Individual Defendants' immediate family members, any of Defendants' parent entities, business units, business divisions, associates, affiliates or subsidiaries and each and all of their past, present, or future officers, directors, stockholders, employees, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, insurers, engineers, other professionals, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, and each of their respective predecessors, successors, and assigns.

nn.     "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members (except those who submit a request for exclusion from the Class that is accepted by the Court), and (*iii*) their respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such.

oo.     "Released Plaintiffs' Claims" means any and all Claims arising from or related in any way to both (*i*) the purchase of Array BioPharma Inc. common stock during the Class Period and (*ii*) the acts, facts, statements or omissions that have been, could have been, or could be alleged by Plaintiffs in the Action, including any and all Claims and claims, demands, losses, rights, causes of action, liabilities, obligations, judgments, suits, matters and issues of any

11

kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, that have been, could have been, or could be asserted in the Action or in any court, tribunal, forum or proceeding (including, but not limited to, any claims arising under federal, state or foreign law, common law, statute, rule or regulation relating to alleged fraud, breach of any duty, negligence, violations of the federal securities laws, or otherwise and including all claims within the exclusive jurisdiction of the federal courts), whether individual or class, which Plaintiffs or any member of the Class, or their legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, ever had, now have, or hereafter can, shall, or may have had, except claims to enforce the Settlement.

pp.     "Released Defendants' Claims" means any and all Claims that have been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee against any Plaintiffs' Releasee that arises out of or relates in any way to the institution, prosecution, investigation, or resolution of the Action, except claims to enforce the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

qq.     "Settlement" means the settlement terms, conditions and other provisions that are memorialized in this Settlement Agreement.

rr.     "Settlement Administrator" means JND Legal Administration subject to Court approval.

ss.     "Settlement Amount" means $8,500,000.

tt.     "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

EXECUTION

uu.    "Termination Date" means that date on which any of the Parties provides notice that he, she, or it is exercising a right to terminate this Settlement Agreement under paragraphs 43-48 of this Settlement Agreement.

vv.    "Unknown Claims" means any and all (*i*) Released Plaintiffs' Claims that any Releasor does not know or suspect exists with respect to one or more Releasees at the time of the release of the Releasees or (*ii*) Released Defendants' Claims that any Releasee does not know or suspect exists with respect to one or more Releasors at the time of the release of the Releasors, which, if known by such Releasee or Releasor (as the case may be) might have affected his, her, or its decision(s) concerning the Settlement.  As to all Claims released by this Settlement Agreement, the Parties stipulate and agree that, upon the Effective Date of the Settlement, each of the Parties expressly waives, and each Class Member shall be deemed to have waived, and by operation of the Order Approving Settlement and Final Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of federal or common law, that is similar, comparable or equivalent to California Civil Code Section 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties acknowledge, and all other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of Unknown Claims in the Claims released pursuant to the Settlement Agreement was separately bargained for and is a key element of this Settlement Agreement.

**B.     Settlement Consideration**

2.      In consideration for the full and final settlement, satisfaction, compromise and release of the Released Plaintiffs' Claims, Pfizer shall pay or cause to be paid, on behalf of Defendants, the Settlement Amount as follows: (a) 15 business days after the Court enters the Preliminary Approval Order, $4,250,000 of the Settlement Amount will be deposited into the Escrow Account; and (b) the remainder of the Settlement Amount will be deposited thirty (30) calendar days before the Final Approval Hearing.  Lead Counsel will provide Pfizer and Defendants with an executed Form W-9 and all necessary details of the Escrow Account (name/address of bank, routing number, account number, and account name) at least thirty (30) calendar days before payment is due.  No other Defendant shall have any responsibility for, or any liability whatsoever with respect to, the payment of the cash portion of the settlement.  Once the above payments are made, Defendants shall have no further monetary obligations of any sort or kind to Plaintiffs, members of the Class, or any counsel for Plaintiffs under the terms and conditions of the Settlement.

3.      The Escrow Agent shall invest the Settlement Amount in short term United States Agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, or in money market mutual funds invested in such instruments, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  Any residual cash balances up to the amount that is insured by the Federal Deposit Insurance Corporation ("FDIC") may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Agency or

Treasury securities is negative, in lieu of purchasing such securities, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

4.     The Settlement Fund shall be used to pay: (i) any taxes and tax expenses as provided in § H below, (ii) Notice and Administrative Expenses in accordance with paragraph 12 below, and (iii) the Attorneys' Fees and Expenses Award as provided in paragraphs 13-16 below.  The balance of the Settlement Fund (i.e., the Net Cash Settlement Amount) will be distributed to Authorized Claimants as allowed by this Settlement Agreement, the plan of allocation approved by the Court, or any order of the Court, as described in paragraphs 17-31 below.

5.     All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Settlement Agreement and/or further order of the Court.  The Escrow Agent shall not disburse the Settlement Fund except as provided in the Settlement Agreement, by an order of the Court, or with the written agreement of counsel for Defendants.

6.     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Settlement Agreement, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.  The Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

7.     This is not a "claims made" settlement.  No portion of the Settlement Amount (or accumulated interest) shall be returned to Defendants, or any other person or entity funding the Settlement Amount, once the Effective Date has occurred.

### C.     Limited Stipulation of Class Certification

8.     For purposes of the Settlement only, the Parties stipulate to (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) the appointment of Plaintiffs as representatives of the Class; and (c) the appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

9.     In the event this Settlement is terminated, or a Judgment and approval of the Settlement and dismissal of the Action for any reason does not occur, Defendants reserve all their rights to contest class certification in the Action.

### D.     Notice to Class Members

10.     Subject to the requirements of the Preliminary Approval Order, Lead Counsel shall cause the Notice and the Claim Form, substantially in the forms annexed hereto as Exhibits A-1 and A-2, respectively, to be mailed, by first class mail, postage prepaid, within fifteen (15) calendar days after the entry of the Preliminary Approval Order, to those Class Members who can be identified through reasonable effort.  Lead Counsel shall, at least seven (7) calendar days before the Final Approval Hearing, file with the Court proof of mailing of the Notice and Claim Form.  For purposes of identifying and providing Notice to the Class, within five (5) calendar days of the date of entry of the Preliminary Approval Order, Defendants shall

provide or cause to be provided to the Settlement Administrator a list in electronic form of the holders (consisting of names and addresses) of Array common stock during the Class Period.

11.     Within ten (10) calendar days following the mailing of the Notice and Claim Form: (i) Lead Counsel shall cause the Publication Notice, substantially in the form annexed hereto as Exhibit A-3, to be published once in *Investor's Business Daily* and on *PR Newswire*.

### E.     Notice and Administrative Expenses

12.     Lead Counsel or the Settlement Administrator may draw up to $500,000 from the Escrow Account at any time after the funding described in paragraph 2 herein, to pay the reasonable costs of providing notice of the Settlement to the Class, as well as customary administration costs without further approval from Defendants or any prior order or approval from the Court.  With the exception of amounts disbursed for providing notice to the Class, customary administration costs, and the payment of any awarded attorneys' fees and expenses as set forth in paragraphs 13-16, the Settlement Amount (including accumulated interest) shall not be distributed until the Settlement is reduced to a final, non-appealable judgment.  Additional sums for this purpose before the Effective Date may be paid from the Escrow Account upon order of the Court.

### F.     Attorneys' Fees and Expenses

13.     Lead Counsel shall file and serve the Attorneys' Fees and Expenses Application contemporaneously with their request to approve this Settlement Agreement, and the Settlement embodied herein, as fair, reasonable and adequate and in the best interest of the Class and if approved, to enter the Judgment. The Attorneys' Fees and Expenses Application may

include a request by Plaintiffs for reimbursement of their reasonable costs and expenses incurred in connection with their representation of the Class.

14.     The Attorneys' Fees and Expenses Award shall be paid out of the Settlement Fund.  The procedure for and the allowance or disallowance of the Attorneys' Fees and Expenses Application, or the amounts requested by Plaintiffs, are not the subject of any agreement between the Parties other than what is set forth in the Settlement, and shall have no effect on the terms of the Stipulation or on the validity or enforceability of this Settlement.

15.     The Attorneys' Fees and Expenses Award shall be paid to Lead Counsel from the Escrow Account, within five (5) business days after entry of the Attorneys' Fees and Expenses Award, irrespective of the existence of any objections or appeals related to the Attorneys' Fees and Expenses Award, the Settlement itself or the Plan of Allocation.  Lead Counsel shall be permitted to share such fees with Plaintiffs' Counsel, but shall be obligated and liable (a) to repay promptly the Attorneys' Fees and Expenses Award in full, and with interest thereon, in the event that (*i*) any of the conditions set forth in paragraph 1(o) herein are not satisfied or in the event of a reversal of such an award or (*ii*) the Settlement is terminated, and (b) to repay promptly such fees and expenses in the appropriate amount, and interest thereon, in the event of a reduction of such an award of fees and expenses.

16.     Other than Pfizer's payment of the Settlement Amount, Pfizer and Defendants shall bear no expenses, costs, damages, fees, or taxes alleged or incurred by any member of the Class, or by any of their attorneys, experts, advisors, agents, or representatives. Court approval of the Settlement is not in any way conditioned on Court approval of Plaintiffs' allocation of recovery amounts among various Claimants or Court approval of the Attorneys'

Fees and Expenses Award.  Pfizer and Defendants shall not oppose the Attorneys' Fees and Expenses Application.

### G.    Settlement Administration

17.    The Settlement Administrator shall be retained by Lead Counsel subject to the approval and jurisdiction of the Court.

18.    The Settlement Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Defendants shall have no responsibility for the administration of the Settlement and shall have no liability to Class Members or Lead Counsel in connection with this administration.  Lead Counsel shall designate a contact person at the Settlement Administrator to whom Defendants may refer all inquiries they receive from potential Claimants.

19.    The Settlement Administrator shall receive Claims and determine, first, whether the Claim is an Authorized Claim, in whole or in part; and second, each Authorized Claimant's *pro rata* share of the Net Cash Settlement Amount based upon each Authorized Claimant's Recognized Claim (as calculated pursuant to the Plan of Allocation set forth in the Notice annexed hereto as Exhibit A-1, or in such other plan of allocation as the Court approves).

20.    The Plan of Allocation contained in Exhibit A-1 hereto is not a necessary term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that any particular plan of allocation be approved.  No Defendant shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

21.     Each Authorized Claimant shall be allocated a *pro rata* share of the Net Cash Settlement Amount based on his, her or its Recognized Claim compared to the total Recognized Claims of all Authorized Claimants.

22.     Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Cash Settlement Amount, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Plaintiffs' Claims.

23.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Cash Settlement Amount by the Settlement Administrator.  Defendants shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Cash Settlement Amount (except to provide the aforementioned list of holders of Array common stock during the Class Period). Defendants shall not be permitted to review, contest or object to any submitted Claim Form or any decision of the Settlement Administrator or Lead Counsel with respect to accepting or rejecting any submitted Claim Form or Claim for payment by a Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

24.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.      Each Class Member shall be required to submit a Claim Form substantially in the form attached hereto as Exhibit A-2, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Settlement Administrator or Lead Counsel, in their discretion, may deem acceptable.

b.      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Cash Settlement Amount or payment pursuant to this Settlement Agreement (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement including the terms of the Judgment and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Plaintiffs' Claims.  A Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, a Claim Form shall be deemed to have been submitted on the date when actually received by the Settlement Administrator.

c.      Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Settlement Agreement and the Court-approved plan of allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below.

EXECUTION

d.       Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Settlement Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Settlement Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

e.       If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

25.       Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, *provided, however*, that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with the processing of Claim Forms.

26.     Following the date on which the Settlement is no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise, and the Settlement Administrator has completed processing all of the Claims submitted in connection with the Settlement, Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any unpaid Notice and Administrative Expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.

27.     Upon entry of the Class Distribution Order, the Net Cash Settlement Amount (which excludes (*i*) the Attorneys' Fees and Expenses Award, (*ii*) Notice and Administrative Expenses incurred, (*iii*) estimated Notice and Administrative Expenses for distributing the Net Cash Settlement Amount to eligible Settlement Class Members, and (*iv*) any taxes paid or to be paid on the Settlement Amount (and accumulated interest) and related tax preparation expenses) shall be promptly distributed to Authorized Claimants in accordance with the plan of allocation approved by the Court.

28.     In the event that the Settlement is no longer subject to further appeal or review, the Settlement Administrator has completed processing all of the Claims submitted in connection with the Settlement, and the Court has entered an order authorizing distribution of the Settlement proceeds to the Class, but the Attorneys' Fees and Expenses Award is on appeal or subject to further appeal or review, Lead Counsel may conduct a partial distribution of the Net

Cash Settlement Amount to eligible members of the Class after setting aside and holding in reserve the amount of attorneys' fees and expenses at issue on appeal.

29.     If there is any balance remaining in the Net Cash Settlement Amount after nine (9) months from the date of distribution of the Net Cash Settlement Amount (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel shall, if economically feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion.  Lead Counsel shall conduct further re-distributions of the Net Cash Settlement Amount to Authorized Claimants until it is determined that further re-distributions are not economically feasible.  Thereafter, any balance that still remains in the Net Cash Settlement Amount shall be donated to the Investor Protection Trust or other appropriate non-profit organization to be selected by Lead Counsel.

30.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Cash Settlement Amount, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for herein and therein, and will be barred and enjoined from bringing any action against any and all of the Releasees concerning any and all of the Released Plaintiffs' Claims.

31.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

EXECUTION

### H.    Taxes

32.    The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, Lead Counsel, or an agent designated by Lead Counsel, shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel, or agent designated by Lead Counsel, to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

33.    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be Lead Counsel.  Lead Counsel, or agent designated by Lead Counsel, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in paragraph 32) shall be consistent with this paragraph and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Escrow Account as provided in paragraph 34.

34.    All (*i*) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Releasees or Releasors or their counsel with respect to any income

earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (*ii*) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph) ("tax expenses"), shall be paid out of the Escrow Account; in all events the Releasees and their counsel shall have no liability or responsibility for any taxes or tax expenses.  The Settlement Fund shall indemnify and hold each of the Releasees and their counsel harmless for taxes and tax expenses (including, without limitation, taxes payable by reason of any such indemnification).  Further, taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent, upon instruction from Lead Counsel, out of the Escrow Account without prior order from the Court, and the Escrow Agent, upon instruction from Lead Counsel, shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)).  The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

## I.      Releases and Waivers

35.      Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered

26

by or on behalf of any such Class Member, on and after the Effective Date, Plaintiffs and all other Class Members, on behalf of themselves and their other Releasors, and anyone claiming through or on behalf of any of them, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Order Approving Settlement and Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Plaintiffs' Claims against each and every one of the Releasees, except to the extent otherwise specified in this Settlement Agreement.

36.     Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, on and after the Effective Date, each and all Defendants, on behalf of themselves and their respective legal representatives, heirs, executors, administrators, predecessors, successors in interest, transferees and assignees, in their capacities as such, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Order Approving Settlement and Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Defendants' Claims against each and every one of the Plaintiffs' Releasees, except to the extent otherwise specified in this Settlement Agreement.

37.     Nothing in the Order Approving Settlement and Final Judgment shall bar any action or Claim by the Parties or their counsel to enforce the terms of this Settlement Agreement or the Order Approving Settlement and Final Judgment.

38.     Pending final determination of whether the Settlement should be approved and applied in the Action, neither Plaintiffs, nor any of the Class Members, shall commence, maintain, or prosecute against Defendants, the other Releasees, or any of them, any action or

proceeding in any court or tribunal asserting or relating to any of the Released Plaintiffs' Claims, and none of Defendants shall commence, maintain or prosecute against Plaintiffs, the other Plaintiffs' Releasees, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Defendants' Claims.

39.     The releases and waivers contained herein were separately bargained for and are essential elements of the Settlement Agreement.

**J.     Preliminary Approval of Settlement**

40.     Promptly upon execution of this Settlement Agreement, Plaintiffs shall file a motion for preliminary approval of the Settlement Agreement together with its exhibits to the Court and shall move for the Court's entry of the Preliminary Approval Order, substantially in the form of Exhibit A hereto.  Defendants shall not oppose Plaintiffs' motion if consistent with the terms of the Settlement.

**K.     Final Approval Hearing, Order Approving Settlement and Final Judgment and Dismissal**

41.     The Parties shall request that the Court schedule a Final Approval Hearing at which to consider whether to approve this Settlement Agreement, and the Settlement embodied herein, as fair, reasonable and adequate and in the best interest of the Class and if approved, to enter the Judgment, substantially in the form attached hereto as Exhibit B.  In connection therewith, Plaintiffs shall request the Court (*i*) to approve the Plan of Allocation, and (*ii*) to approve Lead Counsel's Attorneys' Fees and Expenses Application.

**L.     No Admissions**

42.     Except as otherwise expressly provided herein, this Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it:

a.      shall not be offered or received against Defendants for any purpose, including without limitation as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by any of Defendants with respect to the truth of any fact alleged by Plaintiffs or the validity of any Claim that had been or could have been asserted against Defendants in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of Defendants;

b.      shall not be offered or received against Defendants for any purpose, including without limitation as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant, or against Plaintiffs or any other Class Members as evidence of any infirmity in the claims of Plaintiffs or the other Class Members;

c.      shall not be offered or received against Defendants or against Plaintiffs or any other Class Members for any purpose, including without limitation as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Parties to this Settlement Agreement, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, Defendants may refer to them to effectuate the liability protection granted them hereunder;

d.      shall not be construed against Defendants, Plaintiffs, or any other Class Members for any purpose, including without limitation as an admission or concession that

the consideration to be given hereunder represents the amount that could be or would have been

recovered after trial; and/or

    e.  shall not be construed as or received in evidence as an admission,

concession or presumption against Plaintiffs or other Class Members or any of them that any of

their Claims are without merit or that damages recoverable under the Complaint would not have

exceeded the Settlement Amount.

  **M.**  **Modification or Termination of this Settlement Agreement**

    43.  The terms and provisions of this Settlement Agreement may not be

altered, amended, or modified except in writing signed by all Parties.

    44.  Any Party shall have the right to terminate the Settlement if the Court does

not approve the Settlement Agreement, or if the Court (or any appellate court) modifies the

Settlement Agreement in any way that a Party in good faith determines is material.  Plaintiffs

have the right to terminate the Settlement if Pfizer fails to timely and completely fund the

Settlement Amount in accordance with this Settlement Agreement.

    45.  Defendants shall have the option to terminate the Settlement in the event

that the aggregate number of total shares purchased or acquired during the Class Period by Class

Members who would otherwise be entitled to participate in the Settlement as Class Members, but

who timely and validly request exclusion in accordance with the terms of this Settlement, equals

or exceeds the threshold (the "Opt-Out Threshold") as calculated pursuant to a separate

agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants'

Counsel, which is incorporated by reference into this Settlement.  The Supplemental Agreement

or the Opt-Out Threshold may be disclosed *in camera* to the Court for purposes of approval of

the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Supplemental Agreement and Opt-Out Threshold.

46.     Plaintiffs may not terminate the Settlement based on the Attorneys' Fees and Expenses Award or the Court's approval of a plan of allocation.

47.     Unless otherwise ordered by the Court, in the event this Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within twenty (20) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Amount (including accrued interest), less Notice and Administrative Expenses that have either been incurred or disbursed pursuant to paragraph 12 hereof and taxes and tax expenses incurred or disbursed, shall be refunded pursuant to written instructions from Defendants' Counsel.  If said amount or any portion thereof is not returned within five (5) business days after receiving written instructions from Defendants' Counsel, then interest shall accrue thereon at twice the rate as earned by the Settlement Amount until the date that said amount is returned.  The Escrow Agent or its designee shall apply for any tax refund that may be owed or receivable on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, directly pursuant to written instructions from Defendants' Counsel.

48.     In the event this Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, the Parties shall return to their respective positions in the Action as of March 29, 2021, the date the Parties memorialized their agreement-in-principle to settle the Action.

EXECUTION

**N.      Miscellaneous Provisions**

49.     Plaintiffs and their counsel represent and warrant that none of the Released Plaintiffs' Claims or causes of action referred to herein has been assigned, encumbered, or in any manner transferred in whole or in part.

50.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

51.     The Parties to this Settlement Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs, any other Class Members and their attorneys against the Releasees with respect to the Released Plaintiffs' Claims.  Accordingly, Plaintiffs and Defendants agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

52.     Defendants and/or Released Defendant Parties may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy.

53.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

54.     The Parties shall, in good faith, endeavor to communicate the terms of the Settlement, if at all, in a manner that is respectful of the fact that no final adjudication of fault was determined by a court or a jury.

55.     The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Plaintiffs' Counsel and reimbursement of costs and expenses to Plaintiffs and enforcing the terms of this Settlement Agreement.

56.     The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

57.     This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Action, and no representations, warranties or inducements have been made by any party hereto concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

58.     This Settlement Agreement may be executed in one or more original, faxed, and/or scanned and electronically mailed counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument *provided, however*, that counsel for the signatories of this Settlement Agreement shall exchange among themselves, which exchange may be by fax or by electronic mail, original signed counterparts.

EXECUTION

59.     This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties hereto.

60.     The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of New York without regard to conflicts of laws principles, except to the extent that federal law requires that federal law govern.

61.     This Settlement Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

62.     All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

63.     This Settlement will not be conditioned on the obtaining of or any judicial approval of any releases between or among Defendants and/or any third parties.

64.     The Parties shall at all times act in good faith and use their best efforts to secure final Court approval of the Settlement and the dismissal of the Action upon the material terms set forth in this Settlement Agreement.

65.     All Parties will bear their own costs, except as provided herein.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be
executed, by their duly authorized attorneys, dated April 28, 2021.

By: _____

Nicholas I. Porritt
Adam Apton
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
nporritt@zlk.com
aapton@zlk.com

Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303)395-0393
jeff@jberenslaw.com

Counsel for Lead Plaintiff
Peter Voulgaris, Plaintiff Wendell Rose,
and the Lead Counsel Class

By: _____

Jay B. Kasner
James R. Carroll
Michael S. Hines
Rene H. DuBois
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
-- and –
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
jay.kasner@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com
rene.dubois@skadden.com

Holly Stein Sollod
Kimberly Brunelle Willis
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202-3979
Telephone: (303) 295-8085
Facsimile: (303) 975-5395
hsteinsollod@hollandhart.com

Counsel for Defendants
Array BioPharma, Inc., Ron Squarer,
Victor Sandor and Jason Haddock

35