# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

      Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

      Defendants.

---

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

---

**BERENS LAW LLC**
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
Alexander A. Krot III
1101 30th Street N.W.
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (212) 333-2121
nporritt@zlk.com
aapton@zlk.com
akrot@zlk.com

Dated: April 28, 2021

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ......................2

       A.     Plaintiffs' Claims and Allegations ..........................................................................2

       B.     Procedural History and Settlement Negotiations ....................................................2

III.   THE PROPOSED TERMS OF SETTLEMENT ........................................................3

       A.     Class Definition ....................................................................................................3

       B.     Monetary Consideration and Plan of Allocation ....................................................4

       C.     Release Provisions ................................................................................................4

       D.     Attorneys' Fees and Reimbursement of Expenses..................................................5

       E.     The Court's Continuing Jurisdiction......................................................................5

IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
       APPROPRIATE........................................................................................................6

       A.     The Settlement Is the Product of Serious and Informed Arm's Length
              Negotiations Between the Parties. ..........................................................................7

       B.     The Settlement Has No Obvious Deficiencies and Falls Within the Range of
              Possible Approval. ................................................................................................9

V.     PROVISIONAL CERTIFICATION OF THE =CLASS UNDER RULE 23 IS
       APPROPRIATE......................................................................................................11

       A.     The Class Members Are So Numerous that Joinder Is Impracticable ...................12

       B.     Common Questions of Law or Fact Exist..............................................................13

       C.     Plaintiffs' Claims Are Typical of Those of The Class...........................................14

       D.     Plaintiffs Will Fairly and Adequately Protect the Interests of The Class..............14

       E.     The Requirements of Rule 23(b)(3) Are Also Satisfied .......................................15

              1.     Common Legal and Factual Questions Predominate................................16

              2.     A Class Action is the Superior Means to Adjudicate Plaintiffs' and  Class
                     Members' Claims...................................................................................16

VI.    THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE
       CONSTITUTIONALLY SOUND AND APPROPRIATE ...............................................17

VII.    PROPOSED SCHEDULE ................................................................................18

VIII.   CONCLUSION.............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*

    521 U.S. 591 (1997) .................................................................................... 14, 15, 16

*American Home Assurance Co. v. Cessna Aircraft Co.,*

    551 F.2d 804 (10th Cir. 1977) ..................................................................... 6

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*

    167 F. Supp. 2d 1216 (D. Colo. 2001) ........................................................ 6

*DG ex rel. Stricklin v. Devaughn,*

    594 F.3d 1188 (10th Cir. 2010) ................................................................... 14

*Ehrheart v. Verizon Wireless,*

    609 F.3d 590 (3d Cir. 2010) ........................................................................ 6

*Eisen v. Carlisle & Jacquelin,*

    417 U.S. 156 (1974) ..................................................................................... 18

*Guyer v. MGT Cap. Invs., Inc.,*

    2019 WL 8403029 (S.D.N.Y. Dec. 17, 2019) ............................................ 15

*Hodge v. Signia Marketing, Ltd.,*

    2017 U.S. Dist. LEXIS 196930, 2017 WL 5900344 (D. Colo. Nov. 30, 2017) ........................ 6

*In re Applied Micro Circuits Corp. Sec. Litig.,*

    2003 WL 25419526 (S.D. Cal. July 15, 2003) ........................................... 12

*In re Crocs, Inc. Sec. Litig.,*

    2013 WL 4547404 (D. Colo. Aug. 28, 2013) .............................................. 7

*In re Crocs, Inc. Secs. Litig.,*

    306 F.R.D. 672 (D. Colo 2014) ............................................... 7, 12, 14, 16

*In re Gensworth Fin. Sec. Litig.,*

    210 F. Supp 3d 837 (E.D. Va. 2016) ........................................................... 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*

    2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ........................................................ 7

*In re Molycorp, Inc. Sec. Litig.,*

    2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................................ 8

*In re Monster Worldwide, Inc. Sec. Litig.,*

    251 F.R.D. 132 (S.D.N.Y. 2008) ...................................................................... 17

*In re Motor Fuel Temperature Sales Practices Litig.,*

    286 F.R.D. 488, 492 (D. Kan. 2012) ................................................................. 7

*In re Ocean Power Techs., Inc.,*

    2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................................ 15

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.,*

    318 F.R.D. 435 (D. Colo. 2015) ...................................................................... 13

*In re Polaroid ERISA Litig.,*

    240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................... 15

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*

    2006 U.S. Dist. LEXIS 71039 (D. Colo. Sept. 28, 2006) .................................... 7

*In re Regulus Therapeutics Inc. Sec. Litig.,*

    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .................................................... 15

*In re Thornburg Mortg., Inc.,*

    912 F. Supp. 2d 1178 (D.N.M. 2012) ............................................................... 12

*In re United Telecomms., Inc. Sec. Litig.,*

    1992 WL 309884 (D. Kan. Sept. 15, 1992) ...................................................... 16

*In re Veeco Instruments Inc. Sec. Litig.,*

    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..................................................... 8

*Kerns v. SpectralinkCorp.,*

    2003 U.S. Dist. LEXIS 11711 (D. Colo. July 2, 2003) ........................................ 12

*Lucas v. Kmart Corp.*,

    234 F.R.D. 688 (D.Colo. 2006) ................................................................................ 7

*Ramos v. Health*,

    2020 U.S. Dist. LEXIS 210056 (D. Colo. Nov. 10, 2020) ........................................ 6

*Reiskin v. Reg'l Transp. Dist.*,

    2017 U.S. Dist. Lexis 204242 (D Colo. July 11, 2017) ............................................ 8

*Rhodes v. Olson Associates, P.C.*,

    308 F.R.D. 664 (D. Colo. 2015) ............................................................................... 7

*Rhodes v. Olson Assocs., P.C.,*

    308 F.R.D. 664 (D. Colo. 2015) ............................................................................. 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

    314 F.3d 1180 (10th Cir. 2002) ............................................................................. 14

*Shapiro v. J.P. Morgan Chase & Co.*,

    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................................... 8

*Tennille v. Western Union Co.*,

    785 F.3d 422 (10th Cir. 2015) ............................................................................... 18

*Tuten v. United Airlines Inc.*,

    41 F. Supp.3d 1003 (D. Colo. 2014) ....................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................................................... 13

**Statutes**

15 U.S.C. § 77z-1(a)(7) ................................................................................................ 17

15 U.S.C. § 78u-4(a)(7) ............................................................................................... 17

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements, 2020 Review and Analysis* ............. 10

*Manual for Complex Litigation*, Third, §23.14 (West ed. 1995) ........................................... 17, 18

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 6, 13, 14, 16

## I.      INTRODUCTION

Court-appointed lead plaintiff Peter Voulgaris ("Lead Plaintiff") and named plaintiff Wendell Rose (collectively with Lead Plaintiff, "Plaintiffs") respectfully submit this memorandum in support of their motion for an order preliminarily approving the proposed settlement ("Settlement") of this action embodied in the Stipulation and Agreement of Settlement.[1] The proposed Settlement was reached after the parties engaged in hard-fought litigation and arm's length settlement negotiations. Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement which consists of a payment of $8,500,000 in cash. If approved, it will fully resolve this action filed in November 2017 on behalf of a class of people who purchased or otherwise acquired common stock of Array Biopharma, Inc. ("Array") during the period between June 30, 2016 and March 17, 2017, inclusive ("Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate so that notice of the proposed Settlement can be given to members of the Class and a hearing can be scheduled to consider final settlement approval. The Settlement clearly meets these criteria. As discussed below, while Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability and damages, and therefore the $8,500,000 cash fund that will be created under the Parties' agreement represents a beneficial resolution of the Action and the Settlement is in the best interests of the Class.

Because all the requirements for settlement approval are met, the Court should certify the Class for settlement purposes only. Also, because the Plan of Allocation is fair, reasonable, and adequate, it should be preliminarily approved. Finally, the Court should schedule a Final Approval Hearing to determine whether the proposed Settlement, the Plan of Allocation, and Lead Counsel's

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation and Agreement of Settlement dated April 28, 2021 ("Stipulation").

request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable, and adequate.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiffs' Claims and Allegations

Array was a biopharmaceutical company focused on the discovery, development, and commercialization of targeted small molecule drugs to treat patients afflicted with melanoma skin cancer. Plaintiffs' case focused on Defendants' Class Period statements about the Phase 3 clinical trial ("NEMO") that Array conducted for the drug candidate, binimetinib.

Plaintiffs alleged that Defendants made materially false and/or misleading statements and/or omissions by: (1) omitting to disclose material information about the results the NEMO study showed, which would be important considerations for the FDA in evaluating the New Drug Application ("NDA") for binimetinib; (2) misleading investors to believe that the NEMO study results showed sufficient clinical benefits of binimetinib for the purposes of obtaining FDA approval; and (3) concealing that Defendants intended to seek FDA approval for a more narrow indication (only patients who have had prior immunotherapy treatment) than what was submitted in the original NDA. Defendants made these alleged misleading statements and omissions during the Class Period between June 30, 2016 and March 17, 2017.

On March 19, 2017, Array announced that it had met with the FDA and decided to withdraw its NDA for binimetinib. The news of Array's decision surprised the market, including analysts and investors alike, given Defendants' positive statements about the NEMO trial data over the previous nine months. The next two trading days brought steep declines in the price of Array's stock, falling from $10.56 per share to $9.13 per share on unusually heavy trading volume. Plaintiffs alleged that the decline in the stock and, in turn, the losses they suffered were due to Defendants' fraudulent statements about the NEMO trial data.

### B.    Procedural History and Settlement Negotiations

Plaintiffs filed suit to recover their losses caused by Array's March 19,  2017 announcement. Wendell Rose filed the initial complaint on November 20, 2017. *See* ECF No. 1.

Plaintiffs then filed the Consolidated Class Action Complaint ("Complaint") on April 26, 2018. *See* ECF No. 27. Defendants moved to dismiss the Complaint on June 11, 2018. *See* ECF No. 32. Plaintiffs filed an opposition to Defendants' motion to dismiss on July 26, 2018. *See* ECF No. 35.

The Court denied Defendants' motion to dismiss the Complaint in its entirety on November 24, 2020 holding, *inter alia*, that the alleged failure to disclose the secondary data that negatively impacted binimetinib's benefit, while disclosing only that the study purportedly successfully met its endpoint, was adequately alleged to be misleading. *See* ECF 46 at 32. The Court rejected Defendants' argument that Plaintiffs failed to state particularized facts showing that the omitted information about the negative secondary data was material. *Id*. at 24, 33.

The Court also held that Plaintiffs pleaded facts showing that the change in binimetinib's indication occurred during the Class Period while Defendants were discussing with the public the anticipated basis for FDA approval (based on the overall population of the patients being included), but not informing investors of the change to a narrower subset. *Id.* at 37, 39.

Following the Court's holding on Defendants' motions to dismiss, the Parties commenced formal discovery as well as class certification briefing. Apton Decl*.* at ¶¶ 12, 15-16.  At or around the same time, they also agreed to mediate the case before the Honorable Layn Phillips (Ret.) of Phillips ADR, a nationally recognized mediator. *Id.* at ¶ 14. The mediation occurred on March 24, 2021. *Id.* at ¶ 19.  While participating in mediation, Plaintiffs recognized that they faced several critical obstacles in the case and determined that the Settlement was in the best interest of the class. *See* Section IV.B., *infra*.

## III.   **THE PROPOSED TERMS OF SETTLEMENT**

### A.   **Class Definition**

The Class includes all persons or entities, including, without limitation, their beneficiaries, that purchased or otherwise acquired Array's common stock between June 30, 2016, and March 17, 2017 (inclusive), excluding Defendants, the officers, and directors of Array during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest during the Class

Period. Also excluded from the Class are any putative Class Members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice. *See* Stipulation at ¶ nn.

**B.      Monetary Consideration and Plan of Allocation**

Under the terms of the proposed Settlement, the Parties have agreed that Defendants or their designee will make a cash payment of eight million and five-hundred thousand dollars ($8,500,000), as set forth in greater detail in ¶ 2 of the Stipulation.  The $8,500,000 in cash will be deposited into the Settlement Fund (as defined in ¶ tt of the Stipulation) as follows: (a) 15 business days after the Court enters the Preliminary Approval Order, $4,250,000 of the Settlement Amount will be deposited into the Escrow Account; and (b) the remainder of the Settlement Amount will be deposited thirty (30) calendar days before the Final Approval Hearing. *See id.* at ¶ 2.  Any interest earned will be for the benefit of the Class.  *See id.* at ¶ 7.

Lead Counsel has considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation. Lead Counsel consulted with a damages expert experienced in class action securities fraud litigation when developing the proposed Plan of Allocation. A copy of the Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action, pages 8-10, at Exhibit A-1 to the Stipulation.

**C.      Release Provisions**

Pursuant to the Order Approving Settlement and Final Judgment, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Class Member, on and after the Effective Date, Plaintiffs and all other Class Members, on behalf of themselves and their other Releasors, and anyone claiming through or on behalf of any of them, for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Order Approving Settlement and Final Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Plaintiffs' Claims against each and every one of the Releasees, except to the extent otherwise specified in this Settlement Agreement. *See* Stipulation at ¶35.

Defendants will also release Plaintiffs, Class Members, and other related parties upon the effective date of the settlement from "any and all Claims that have been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee against any Plaintiffs' Releasee that arises out of or relates in any way to the institution, prosecution, investigation, or resolution of the Action, except claims to enforce the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court." *See id.* at ¶36.

Nothing in the Order Approving Settlement and Final Judgment shall bar any action or Claim by the Parties or their counsel to enforce the terms of this Settlement Agreement or the Order Approving Settlement and Final Judgment *See id.* at ¶37. Pending final determination of whether the Settlement should be approved and applied in the Action, neither Plaintiffs, nor any of the Class Members, shall commence, maintain, or prosecute against Defendants, the other Releasees, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Plaintiffs' Claims, and none of Defendants shall commence, maintain or prosecute against Plaintiffs, the other Plaintiffs' Releasees, or any of them, any action or proceeding in any court or tribunal asserting or relating to any of the Released Defendants' Claims. *See id.* at ¶38.

### D. <u>Attorneys' Fees and Reimbursement of Expenses</u>

Lead Counsel will apply to the Court for an award of attorneys' fees equal to one-third of the Settlement Fund ($2,833,333.33). Lead Counsel will also apply to the Court for a reimbursement of its out-of-pocket expenses incurred through the Action (not to exceed $140,000.00).

### E. <u>The Court's Continuing Jurisdiction</u>

If the Court grants final approval of the proposed Settlement, the Parties will request that the Court enter a final judgment of dismissal. The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all parties agree to submit to

the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. *See* Stipulation at ¶55.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The Tenth Circuit has long recognized that "[t]he inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F.2d 804, 808 (10th Cir. 1977); *see also Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law favors and encourages settlements [;] [t]he settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation."). Moreover, courts in this District have a strong judicial policy in favor of class action settlements. *Ramos v. Health,* 2020 U.S. Dist. LEXIS 210056, *9-10 (D. Colo. Nov. 10, 2020) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *accord Hodge v. Signia Marketing, Ltd.*, 2017 U.S. Dist. LEXIS 196930, 2017 WL 5900344, at *3 (D. Colo. Nov. 30, 2017).  This policy has even more force in complex class actions such as this one, "where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines Inc.*, 41 F. Supp.3d 1003, 1007 (D. Colo. 2014) (internal quotations omitted).

Approval of a class action settlement occurs in two stages. In this first stage, the Court preliminarily approves the settlement agreement, certifies a settlement class, and authorizes notice to be given to the class so that interested members may object to the fairness of the settlement or opt out of the class. Fed. R. Civ. P. 23(e). In the second stage, after notice is provided to the Class, the Court holds a fairness hearing during which it will address any timely objections to either class treatment of the litigation or the fairness and adequacy of the settlement. *Id.*

At the preliminary approval stage, in contrast to the final approval stage, the Court's task is "to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D.

Colo. 2006); *see also In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."). As courts in this District have explained, a settlement should be preliminarily approved where it "appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (same). This Settlement Agreement meets that standard.

A.    **The Settlement Is the Product of Serious and Informed Arm's Length Negotiations Between the Parties.**

This Settlement Agreement is the product of fair, honest, and vigorous negotiations between the Parties' principals, under the supervision of a highly experience mediator and with the guidance and input of experienced and informed counsel. Settlement negotiations were supervised by Judge Layn Phillips, a former Federal District Court Judge. *See* Apton Decl. at ¶14. Judge Phillips is widely regarded by experienced securities lawyers, companies, and insurers as one of the best mediators for complex securities lawsuits. *Id.* Courts in this Circuit and elsewhere have held that the involvement of an experienced mediator strongly supports the fairness of a proposed settlement, and that Judge Phillips possesses considerable experience in mediating complex cases such as this one. *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 689 (D. Colo 2014) (citing the parties' mediation before "retired United States District Judge Layn R. Philips, who has extensive experience mediating complex cases" in support of preliminary approval of a proposed settlement); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *17 (D. Colo. Sept. 28, 2006); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 2016 WL 7625708, at *1 (S.D.N.Y. Dec. 21, 2016) (characterizing Judge Philips as a "renowned" mediator);

*In re Gensworth Fin. Sec. Litig.,* 210 F. Supp 3d 837, 840 (E.D. Va. 2016) (noting that Judge Phillips "has extensive experience in mediating securities fraud settlement negotiations").

The Court may presume that the settlement negotiated at arm's-length by experienced counsel, who have concluded that the Settlement Agreement is in the best interest of the Class, is fair and reasonable. *See Shapiro v. J.P. Morgan Chase & Co.*, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) (citing *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."). Here, there should be no question that the proposal was negotiated at arm's length. *See In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (utilization "of an experienced mediator supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved"); *Reiskin v. Reg'l Transp. Dist.,* 2017 U.S. Dist. Lexis 204242, *10 (D Colo. July 11, 2017) ("In appraising the fairness of a proposed settlement, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'") (internal citations omitted).

The Parties and their counsel were knowledgeable about the strengths and weaknesses of their respective cases before the Settlement Agreement was reached. Plaintiffs and their counsel conducted extensive investigations, including a review of the Defendants' public statements, filings with the SEC, and analyst reports relating to Array and binimetinib. *Id.* at ¶3. The investigation also included review of public information filed with the FDA and the European Medicines Agency concerning the clinical trials for binimetinib. *Id.* at ¶¶ 3, 8. Plaintiffs' counsel also consulted with experts on issues pertaining to the New Drug Application process and standards for demonstrating clinical benefits of pharmaceuticals as well as experts on issues pertaining to market efficiency, loss causation and damages. *Id.* at ¶ 7. The Parties also submitted comprehensive opening and reply mediation briefs to Judge Phillips. *See* Apton Decl. at ¶18. These briefs focused on the salient issues impacting liability, incorporating heavily information provided

by Defendants during discovery. *Id.* The briefs also addressed damages in detail and asserted different arguments concerning loss causation and recoverability under the applicable case. *Id.* Judge Phillips reviewed the Parties' mediation submissions, as well as other briefs, motions, and orders, submitted to or issued by the Court. The Parties then participated in a private virtual mediation session before Judge Phillips, which lasted over 12 hours and concluded with a mediator's recommendation to settle the case for $8,500,000. *Id.* at ¶19. When the mediation ended, Plaintiffs were uncertain as to how Defendants would respond to the mediator's recommendation and whether the case would ultimately settle. *Id.* at ¶20. In the days following the mediation, the mediator informed the Parties that his recommendation had been accepted. *Id.* at ¶21.

It was only following the virtual mediation session with Judge Phillips, after the Parties exchanged extensive mediation materials and internal documents, and engaged in numerous rounds of vigorous negotiations, that the Parties reached the proposed Settlement Agreement.

The Settlement Agreement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by the Plaintiffs pursuant to the PSLRA, with guidance and input from experienced and informed counsel. It is, therefore, presumptively fair, reasonable, and adequate.

### B.  **The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Approval.**

The Settlement Agreement represents an extremely beneficial outcome for the Class, and nothing in its terms or the way it was negotiated raises any "obvious deficiencies" that would impede preliminary approval. The Settlement Agreement before the Court provides for a cash payment by or on behalf of Array of $8,500,000. The amount of the recovery strongly supports accepting the settlement. Given the size of the case, this recovery is at the high end of the range of historical settlements in similar cases. *See* Apton Decl. at ¶ 24. According to Cornerstone Research (a leading economics consulting firm), cases with damages between $25 million and $74 million

9

between 2011 and 2019, the median settlement as a percentage of overall damages was 7.6%.[2] Considering that damages in this case were estimated between $24 million and $34 million, this recovery will provide the Class between 25% and 35% of total recoverable damages. *See* Apton Decl. at ¶ 24. Therefore, the proposed Settlement easily falls within the range of possible approval. *Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 666 (D. Colo. 2015).

The Settlement Agreement also clearly "falls within the range of possible approval" when its significant benefits are weighed against the risks that the Class could recover far less (or even nothing) if litigation were to continue. The settlement comes at critical time relative to individual Class Members' rights. Violations under Section 10(b) of the Securities Act of 1934 have a statute of repose of five years, meaning that an individual can only pursue such claims if the claim is commenced within five years of the alleged fraudulent statements. The alleged misrepresentations at issue in this case occurred between June 30, 2016 and March 17, 2017. Thus, the settlement presents an excellent resolution for many class members before their claims begin to expire under the applicable statute of repose. *See* Apton Decl. at ¶ 25.

Continued litigation would also present difficulties with witnesses. The New Drug Application for binimetinib is almost five years old and the underlying data is even older, and it may be difficult to locate the individuals who oversaw the NEMO trial and the application process. Even if Plaintiffs were able to locate these percipient witnesses, there is no guarantee that they would remember key information. Indeed, even Array no longer exists as it was acquired by Pfizer Inc. in July 2019. *See* Apton Decl. at ¶ 26.

Defendants also could prevail on liability, given the substance of the communications between Defendants and the FDA during the application process. While these materials remain confidential, they potentially support some of Defendants' arguments on the merits. This created

---

[2] Cornerstone Research uses what it refers to as "simplified tiered damages" to obtain this information. According to Cornerstone Research, it calculates "simplified tiered damages" by "utiliz[ing] an estimate of the number of shares damaged based on reported trading volume and the number of shares outstanding," similar to Plaintiff's expert's damages model. *Id*. at Exhibit A, pp. 8-9 & n.4.

a risk for Plaintiffs that a jury could be persuaded to accept Defendants' account of what occurred, despite Plaintiffs' arguments to the contrary. *See* Apton Decl. at ¶ 27.

Finally, additional litigation would be risky with respect to damages. Plaintiffs' damages expert was expected to opine that investors sustained damages over a period of two days, given that Array's stock price declined steadily during the two days following its announcement on March 19, 2017. Defendants' expert, however, likely would have argued that the first day of decline was only partially related to the alleged fraud and that the second day of decline was completely unrelated, thereby limiting Plaintiffs' damages to only a portion of the first day of decline in Array's stock price. Unless Plaintiffs were successful in precluding Defendants' damages expert from testifying, their recovery may have largely depended on which expert the jury found more persuasive. *See* Apton Decl. at ¶ 28.

Weighing each of these issues against the benefits of the Settlement, the Settlement provides an excellent outcome for the Class. It restores between 25% and 35% of their alleged damages and provides a recovery in the near term instead of years of additional litigation with uncertainty over the outcome. The proposed settlement is  fair, reasonable, and adequate, and should be preliminarily approved by the Court.

## V.     PROVISIONAL CERTIFICATION OF THE CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Plaintiffs seek, and Defendants agree to the certification of a Class defined as all persons or entities, including, without limitation, their beneficiaries, that purchased or otherwise acquired purchased or otherwise acquired Array's common stock between June 30, 2016, and March 17, 2017 (inclusive), with the exclusions noted above in the Class definition.  Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d)

the representative parties will fairly and adequately protect the interests of the class.   *See In re Crocs, Inc. Secs. Litig.,* 306 F.R.D. at 683 (. As discussed below, certification of a settlement class is appropriate here.

### A.       The Class Members Are So Numerous that Joinder Is Impracticable

While the precise number of members of the Class is unknown, the number certainly exceeds any number considered practical for joinder.   Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts.   *See In re Applied Micro Circuits Corp. Sec. Litig.*, 2003 WL 25419526, at *8 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued millions of shares and the class is presumed to have thousands of members); *see also In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1233-34 (D.N.M. 2012) (noting that generally, in securities actions, numerosity is readily satisfied). Courts in this Circuit have held that numerosity is satisfied in a securities class action if thesecurities at issue traded on a national exchange)

Array common stock was actively traded on the Nasdaq exchange during the Class Period. As of April 29, 2016, just before the start of the Class Period, Array had approximately 169 million shares of common stock outstanding. Array issued 21,160,000 additional shares as a part of supplemental offering.   *See Kerns v. SpectralinkCorp.*, 2003 U.S. Dist. LEXIS 11711, at *4-*5 (D. Colo. July 2, 2003) (19 million shares outstanding supported finding of numerosity). Likewise, from this information, one may conclude that there are likely thousands of members in the Class. The threshold for a presumption of impracticability is thus easily met.   *See In re Crocs,* 306 F.R.D. at 686.

**B.**     **Common Questions of Law or Fact Exist**

In order to maintain a class action, there must be "questions of law *or* fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added).

 This commonality requirement asks only that the Plaintiffs demonstrate that class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "[E]ven a single [common] question" of law or fact will suffice to establish Rule 23's commonality requirement. *Dukes*, 564 U.S. at 359.

This case presents numerous common questions of both law *and* fact.  Here, questions of law and fact common to all members of the Class include:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

(b)     Whether the misstatements and omissions alleged herein were made with scienter;

(c)     Whether the statements made by Defendants to the investing public during the Class Period misrepresented material facts about Array's clinical trials and the NDA;

(d)     Whether Defendants acted knowingly or recklessly in issuing false and misleading statements about its clinical trials and NDA;

(e)     Whether the prices of Array's common stock during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f)     To what extent the Settlement Class members have sustained damages, and the proper measure of damages.

Courts in this District have found that similar questions of law and fact easily meet the commonality requirements. *See,* e.g., *In re Oppenheimer Rochester Funds Grp. Sec. Litig.,* 318 F.R.D. 435, 444 (D. Colo. 2015).

### C.     Plaintiffs' Claims Are Typical of Those of The Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Crocs*, 306 F.R.D. at 686 (internal quotations omitted). As the Tenth Circuit has explained, "provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010).

Here, Plaintiffs' claims are similar to the claims of the other Class members.  Defendants' alleged course of conduct described in the Complaint uniformly affected all Class members, as they each allegedly suffered economic injury from the decline in market value following the corrective disclosures. Plaintiffs' claims are typical of the other Class members because, like all other Class members, they allegedly were injured when the truth about Array's clinical trials and NDA were revealed. Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.     Plaintiffs Will Fairly and Adequately Protect the Interests of The Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594 (1997). The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiff and his counsel with other class members; and (2) that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the litigation with the named plaintiff.  *See Crocs*, 306 F.R.D. at 686; *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There are no apparent conflicts of interest between Plaintiffs and the absent Settlement Class Members.  Plaintiffs clearly suffered losses in connection with their transactions in Array's securities during the Class Period. Therefore, Plaintiffs and Class Members share the same interest

in maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs have been committed to the vigorous prosecution of this action from the outset and have reached a resolution that they believe is in the best interests of the Class. Plaintiffs have been engaged during the settlement negotiation process and support this motion and the Settlement it requests. *See* Declaration of Peter Voulgaris, ¶¶ 3-5; Declaration of Wendell Rose, ¶ 3.

Moreover, Plaintiffs and Lead Counsel have, and will continue to, vigorously protect the interests of the Class. Plaintiffs and Lead Counsel have devoted significant time and resources to initiating, prosecuting, and negotiating a resolution to this case. Lead Counsel also has extensive experience and expertise in prosecuting complex securities litigation and class action proceedings throughout the United States. *See*, *e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("Levi & Korsinsky LLP has extensive experience representing plaintiffs in securities and financial class action lawsuits. That such experienced counsel advocate in favor of the settlement weighs in favor of approval."); *Guyer v. MGT Cap. Invs., Inc.*, 2019 WL 8403029 at *2 (S.D.N.Y. Dec. 17, 2019) (appointing Levi & Korsinsky LLP as class counsel in connection with the preliminary approval of the settlement agreement); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *7 (D.N.J. Nov. 15, 2016) ("Lead Counsel, Levi & Korsinsky, is highly specialized in the field of securities class action litigation, and has efficiently conducted the motion practice and settlement negotiations involved in this proceeding, and is therefore qualified to represent the Settlement Class."); *see also* Apton Decl., Exhibit B (firm resume).

### E.       The Requirements of Rule 23(b)(3) Are Also Satisfied

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law *or* fact predominate over any individual questions and a class

action is superior to other available means of adjudication. *See Amchem v. Windsor* 521 U.S. 591, 607 (1997).  This case easily meets Rule 23(b)(3)'s requirements.

### 1.        Common Legal and Factual Questions Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem,* 521 U.S. at 625; *see also In re Crocs,* 306 F.R.D. at 689; *In re United Telecomms., Inc. Sec. Litig.*, 1992 WL 309884, at *3 (D. Kan. Sept. 15, 1992) ("Where plaintiffs allege a common nucleus of misrepresentations, material omissions, and market manipulation, the common questions predominate over any differences between individual class members with respect to damages, causation, and reliance."). In this securities fraud case, Defendants' alleged liability arises from their statements regarding the binimetinib NDA  Whether Defendants' publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts is the central issue in this case and predominates over any individual issue that theoretically might arise. *See In re Crocs*, 306 F.R.D. at 689.  There are numerous questions of law and fact common to Plaintiffs and the proposed Class, including whether Defendants' statement or omissions and binimetinib's efficacy and safety and the NDA during the Class Period were false or misleading, whether Defendants acted with scienter, and whether, and to what extent Class Members suffered damages. Thus, the predominance requirement is satisfied here.

### 2.        A Class Action is the Superior Means to Adjudicate Plaintiffs' and Class Members' Claims

The second prong of Rule 23(b)(3) is satisfied by the proposed Settlement itself.  As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)); *see also In re Crocs,* 306 F.R.D., at 688-89 (citing *Amchem*).  Thus, any manageability problems that may have existed here—and Plaintiffs know of none—are eliminated by the Settlement. "Settlement avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal cost to adjudicate common legal and factual issues." *Id.* at 689. "In addition, settlement

is appropriate because recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims." *Id.*

Indeed, courts have concluded that in securities cases, the class action device is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersednature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigation. *See, e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule," securities cases "easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible" (internal quotations omitted)).

## VI.   THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Class of a Final Approval Hearing, at which they and the Parties may be heard with respect to final approval.  *See Manual for Complex Litigation*, Third, §23.14 (West ed. 1995).  Here, the Parties propose that notice be given principally by U.S. mail.  *See* Stipulation at ¶ 10. In addition, the Stipulation provides for publication of a summary notice, which will be published in the national edition of *Investor's Business Daily* and on *PR Newswire*.  *See id* at ¶11.

The proposed form of mailed notice (Exhibit A-1 to the Stipulation) provides the following details of the Stipulation to prospective members of the Class in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement.  The proposed form of summary notice (Exhibit A-3 to the Stipulation), provides essential information about the Litigation and the Settlement, including an address for potential class members to write to obtain the full long form of notice.

17

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7) and 78u-4(a)(7).  The Notice and Summary Notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)); *see also Manual Third* § 30.41 (approving use of combined class notice and settlement notice where appropriate).

## VII.   PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement Agreement, Plaintiffs request that the Court schedule a Final Approval Hearing between **August 9 and August 27, 2021**, or soon as is convenient to the Court on a date thereafter.

Plaintiffs respectfully request the Court schedule the required dates set forth in the [Proposed] Order Granting Preliminary Approval of Settlement .  Specifically, Plaintiffs request the Court schedule the following dates:

| | |
|---|---|
| Last day to complete mailing of Notice and Proof of Claim Form. | 15 calendar days after Order granting Preliminary Approval. |
| Last day to publish Summary Notice. | 25 calendar days after Order granting Preliminary Approval. |
| Last day for filing and serving opening papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. | 40 calendar days prior to Final Approval Hearing |
| Last day for Class Members to submit comments in support of or in opposition to the proposed Settlement, and the applications for Fee and Expense Awards. | 25 calendar days prior to Final Approval Hearing |

| Last day for Class Members to request exclusion from the Settlement Class. | 25 calendar days prior to Final Approval Hearing |
|---|---|
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards. | 15 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | 100 days after Order granting Preliminary Approval. |

## VIII.  <u>CONCLUSION</u>

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Granting Preliminary Approval of Settlement.

Dated: April 28, 2021                                LEVI & KORSINSKY, LLP

/s/ Adam M. Apton
Nicholas I. Porritt
Adam M. Apton
Alexander A. Krot III
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com
akrot@zlk.com

*Attorneys for Plaintiff Wendell Rose and Lead Plaintiff Peter Voulgaris and Lead Counsel for the Class*

Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

*Liaison Counsel for Plaintiff Wendell Rose, Lead Plaintiff Peter Voulgaris, and the Class*

## CERTIFICATE OF SERVICE

I, Adam M. Apton, an attorney, hereby certify that on April 28, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2021.

/s/ Adam M. Apton
Adam M. Apton