IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

     Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

     Defendants.

## DECLARATION OF ADAM M. APTON

I, ADAM M. APTON, hereby declare as follows:

1. I am a partner of the law firm of Levi & Korsinsky, LLP, attorneys for Court-appointed lead plaintiff Peter Voulgaris ("Lead Plaintiff") and named plaintiff Wendell Rose (collectively with Lead Plaintiff, "Plaintiffs") and Lead Counsel in this Action. I am admitted to practice before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action. I submit this Declaration in support Plaintiffs' Motion for Preliminary Approval of the Settlement.

## BACKGROUND

2. Levi & Korsinsky is a nationally recognized firm for its expertise in securities litigation. The firm actively follows corporate disclosures and initiates investigations under circumstances that, in its attorneys' opinions, suggest potential wrongdoing or violations of the federal securities laws. That is precisely what happened here. On March 19, 2017, Array

1

Biopharma, Inc. ("Array") announced its withdrawal of the New Drug Application for binimetinib. News reports relating to the withdrawal raised questions which, in our opinion, warranted investigation.

3. In response to Array's March 19, 2017 announcement, Levi & Korsinsky commenced a preliminary investigation spanning several weeks. It included a review of Array's public statements, filings with the SEC, and analyst reports relating to Array and binimetinib. The investigation also included review of public information filed with the FDA concerning the clinical trials for binimetinib, *i.e.*, the NEMO trial. These materials comprised thousands of pages of company-specific material dating back several years. Given the subject matter of the investigation, analyzing the content of these documents was difficult and required sophistication to accurately understand the events that preceded the announcement on March 19, 2017.

4. As additional information came to light through our research, it appeared that Array and certain of its officers at the time potentially committed a violation of the federal securities laws. Accordingly, the firm began working with various clients to file an initial complaint on behalf of a class of Array shareholders. Plaintiff Wendell Rose, a client of Levi & Korsinsky, served as the named plaintiff in the complaint filed initially on November 20, 2017. He represented at that time a proposed class of Array shareholders who purchased their stock between December 16, 2015 and March 17, 2017.

5. Mr. Rose's initial complaint prompted outreach from other members of the proposed class. Lead Plaintiff Peter Voulgaris, another client of Levi & Korsinsky, was one of the members who inquired with the firm for additional information. He had sustained a substantial loss from purchases of Array stock during the class period. Mr. Voulgaris ultimately decided to move for lead plaintiff on January 22, 2018. The Court granted his motion on March 12, 2018.

6. Levi & Korsinsky continued its investigation following Mr. Voulgaris's appointment as the lead plaintiff. The purpose of this further investigation was to obtain additional factual support for the alleged securities fraud violations that would then be used to amend the initial complaint. Given the pleading standards for securities fraud violations under the Securities

Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995, additional factual support for our allegations was critical in order to defeat an anticipated motion to dismiss.

7. Our firm spent the next two months researching the alleged claims. This entailed further review of Array's public statements and relevant analyst reports. It also included review of public filings with the European Medicines Agency and consultation with experts on issues pertaining to the New Drug Application process and standards for demonstrating clinical benefits of pharmaceuticals. We also consulted with an expert on issues pertaining to market efficiency, loss causation, and damages.

8. On April 26, 2018, we filed the amended complaint on behalf of Mr. Voulgaris and a proposed class of shareholders who purchased their Array stock between June 30, 2016 and March 17, 2017. The amended complaint contained the results of our investigation and included details concerning the clinical trial and commercial application process for binimetinib. Critically, for support we included information obtained from public filings with the European Medicines Agency. This information was available through an application made by one of Array's partners that had been seeking commercial approval for binimetinib in Europe. With assistance from one of our consulting experts, we were able to capitalize on the information contained in the documentation and use it to support our allegations of falsity in accordance with the applicable pleading standards for our claims.

9. On June 11, 2018, Defendants moved to dismiss the amended complain. The briefing on the motion was extremely thorough. Together with various exhibits and appendices, it comprised several hundred pages of factual material and legal argument. We also submitted additional legal authority in support of Plaintiffs' positions after the motion was fully briefed and submitted, making sure that the Court was aware of the latest developments in the case law relevant to our claims.

10. On November 24, 2020, the Court entered an order denying Defendants' motion to dismiss. Over the course of fifty-seven (57) pages, the Court addressed and resolved each and every argument raised by the parties.

3

11. Having defeated Defendants' motion to dismiss, we immediately proceeded with the discovery process given the amount of time that elapsed while the motion was *sub judice*. We conducted an initial discovery conference with Defendants pursuant to Federal Rule of Procedure 26(f) and began drafting initial disclosures and discovery demands. To develop these disclosures and demands, we revisited our preliminary research for the amended complaint and also discussed the case and the Court's holdings on the motion to dismiss with our consulting experts.

12. We were also cognizant of the fact that the statute of repose would begin expiring soon for Plaintiffs' claims. The alleged misrepresentations at issue in the case dated back to June 2016. With a five-year statute of repose, class members interested in pursuing individual claims would soon be time-barred from doing so. Accordingly, we promptly prepared a motion for class certification in order to obtain permission to disseminate notice to the class of its pendency and allow for class members interested in doing so the opportunity to pursue individual claims while they were still allowed. On January 11, 2021, we filed the motion for class certification on behalf of Plaintiffs and the class of Array investors who purchased their shares between June 30, 2016 and March 17, 2017.

13. On January 26, 2021, the Court held the initial scheduling conference. At that time, the Court set a hearing on Plaintiffs' motion for class certification for April 1, 2021, and a discovery end date of January 31, 2022. The Court also scheduled a fourteen-day trial for November 7, 2022.

14. Shortly after the initial scheduling conference with the Court, the parties scheduled a mediation for March 24, 2021 with the Honorable Layn R. Phillips (Ret.). Judge Phillips is widely regarded by experienced securities lawyers, companies, and insurers as one of the best mediators for complex securities lawsuits. He is the founder of Phillips ADR Enterprises located in Corona Del Mar, California, which employs a number of retired judges and experienced practitioners as private mediators.

15. The parties proceeded with litigation on two tracks after scheduling the mediation. While conducting formal discovery and briefing the motion for class certification, the parties were

4

simultaneously preparing for their upcoming mediation session. This required Plaintiffs, in particular, to respond to written discovery and prepare for depositions while at the same time conducting informal confidential merits discovery with Defendants and drafting detailed mediation submissions concerning the strengths and weaknesses of the parties' respective claims and defenses.

16.   In connection with the class certification motion, Plaintiffs provided discovery evidencing their transactions in Array during and after the class period. Mr. Rose, the named plaintiff in the initial complaint, and Plaintiffs' market efficiency expert, Dr. Adam Werner, also appeared for depositions. Mr. Voulgaris, the lead plaintiff, was unfortunately unable to appear for a deposition due to the personal circumstances described in his accompanying declaration to this motion.

17.   Meanwhile, in preparation for the mediation, Defendants provided Plaintiffs with certain of Array's correspondence with the FDA during the New Drug Application process. This correspondence, which remains confidential, provided additional details pertinent to the parties' claims and defenses. Defendants provided Plaintiffs with this information because, as Plaintiffs explained to Defendants when they requested it, it enabled the parties to discuss the issues intelligently and on somewhat equal footing in terms of access to information.

18.   The parties submitted opening and reply mediation briefs on March 10 and 16, 2021. The briefs focused on the salient issues impacting liability, incorporating heavily information from the FDA correspondence provided by Defendants. The briefs also addressed damages in detail and asserted different arguments concerning loss causation and recoverability under the applicable case.

19.   On March 24, 2021, the parties participated in a private virtual mediation session before Judge Phillips. The mediation began at 11:00 a.m. ET and ended at approximately 10:00 p.m. ET with a mediator's recommendation to settle the case for $8,500,000.

20.   When the mediation ended, Plaintiffs were uncertain as to how Defendants would respond to the mediator's recommendation and whether the case would ultimately settle.

5

Consequently, we filed our reply in support of Plaintiffs' motion for class certification, assuming that the motion would be heard as scheduled on April 1, 2021.

21. On Monday, March 29, 2021, at 1:00 p.m. ET, the mediator informed the parties that his recommendation had been accepted and that the case was tentatively settled pending court-approval. The parties promptly informed the Court of the tentative settlement and asked that all upcoming deadlines be adjourned, including the hearing for Plaintiffs' motion for class certification.

## THE SETTLEMENT

22. The Stipulation and Agreement of Settlement dated April 28, 2021 (the "Settlement Agreement"), contains the full terms of the proposed settlement. The parties have also negotiated a separate Supplemental Agreement Regarding Requests for Exclusion dated April 28, 2021, that allows Defendants to terminate the Settlement Agreement at their discretion if a certain number of Array shareholders request to be excluded from the settlement.

23. The settlement before the Court provides for a cash payment by or on behalf of Array of $8,500,000. In exchange for this payment, Plaintiffs have provided a full release of all claims related to this action. Plaintiffs agreed to the settlement only after careful consideration of its benefits.

24. First and foremost, the amount of the recovery strongly supports accepting the settlement. Indeed, given the size of the case, the recovery is at the high end of the range of historical settlements in similar cases. Cornerstone Research is a leading economics consulting firm. Every year it publishes a report on class action settlements in securities fraud lawsuits. Most recently, in its report titled *Securities Class Action Settlements—2020 Review and Analysis*, Cornerstone Research stated that in cases with damages between $25 million and $74 million between 2011 and 2019, the median settlement as a percentage of overall damages was 7.6%. Considering that damages in this case were estimated between $24 million and $34 million (using a two-trader model to estimate the number of damaged shares in the class), the recovery nets between 25% and 35% of total recoverable damages. A copy of the Cornerstone Research report

6

is attached hereto as Exhibit A. The data from the report referenced in this paragraph is located on page 6 in figure 5.

25.     Second, the settlement comes at a critical time relative to individual class member rights. Violations under Section 10(b) of the Securities Exchange Act of 1934 have a statute of repose of five years, meaning that an individual can only pursue such claims if the claim is commenced within five years of the alleged fraudulent statements. The alleged misrepresentations at issue in this case occurred between June 30, 2016 and March 17, 2017. Thus, the settlement presents an excellent resolution just in time for many class members before their claims begin to expire under the applicable statute of repose.

26.     Third, given the amount of time that has elapsed since the underlying acts occurred, discovery could have proven difficult in terms of obtaining relevant information. While Defendants in all likelihood abided by their preservation obligations, the fact of the matter is that the New Drug Application for binimetinib is almost five years old at this point and the trial data underlying the application is older. The individuals who oversaw the trial and the application process have since moved on in their careers and have worked on any number of additional trials and applications over the years. Even if Plaintiffs were able to locate these percipient witnesses, there is no guarantee that they would have remembered key factual information. Indeed, even Array no longer exists in its own right at this point being that it was acquired by Pfizer Inc. in July 2019.

27.     Fourth, continued litigation would have also proven risky given the substance of the communications between Defendants and the FDA during the application process. While these materials remain confidential and thus cannot be discussed in public, they potentially supported some of Defendants' arguments on the merits. This created a risk for Plaintiffs that a jury could be persuaded to accept Defendants' account of what occurred, despite Plaintiffs' arguments to the contrary.

28.     Fifth, additional litigation would also have been risky with respect to damages. Plaintiffs' damages expert would have opined that investors sustained damages over a period of

7

two days, given that Array's stock price declined steadily during the two days following its announcement on March 19, 2017. Defendants' expert, however, would have argued that the first day of decline was only partially related to the alleged fraud and that the second day of decline altogether was completely unrelated, thereby limiting Plaintiffs' damages to only a portion of the first day of decline in Array's stock price. Unless Plaintiffs would have been successful in precluding Defendants' damages expert from testifying, their recovery may have largely depended on which expert the jury found more persuasive.

29. Considering each of these points independently and collectively, the proposed settlement provides an excellent outcome for Plaintiffs and the class. It restores between 25% and 35% of their alleged damages and will provide a recovery in the near term instead of years of additional litigation with uncertainty over the outcome. The proposed settlement is without question fair, reasonable and adequate, and should be given preliminary approval by the Court.

## PRELIMINARY APPROVAL

30. If the Court grants preliminary approval of the settlement, Plaintiffs' counsel is prepared to proceed with a thorough notice program with the Settlement Administrator, JND Legal Administration. JND Legal Administration will mail copies of the notice to all potential Class Members, which will include a description of the claims, the recovery, and information about each class member's rights to participate, opt out, or object to the settlement. JND Legal Administration will also publish a shorter, summary notice once in print and once electronically in business-oriented news services, *i.e.*, *Investor's Business Daily* and *PR Newswire*. In addition, JND Legal Administration will also create and maintain a website devoted to the administration of this action and field telephone calls from potential claimants during normal business hours. In connection with the foregoing, Plaintiffs have filed herewith the Declaration of Luiggy Segura on behalf of JND Legal Administration which provides further detail about the administration process.

31. Importantly, the notice will also contain the Plan of Allocation for this Action. The Plan of Allocation compensates all Class Members in a uniform manner. Depending on the number of Array shares held at the end of the Class Period, Class Members will receive a certain amount

of compensation. The compensation received corresponds to the decline in the price of Array stock and the overall alleged losses sustained by Class Members who submit valid claims.

32. Specifically, the Plan of Allocation accounts for the declines in the price of Array stock that occurred on March 20 and 21, 2017. Following Array's announcement on March 19, 2017, its stock price declined $0.57 per share on March 20, 2017 and $0.63 per share on March 21, 2017. For Class Members who purchased during the Class Period and held over one or both of those dates, they will be assigned a recognized loss of either $0.57 per share (for those that held their shares on March 20 only) or $1.20 per share (for those that held their shares across both March 20 and 21). Each Class Member who submits a valid claim will ultimately be entitled to receive a distribution for their recognized loss proportionate to the overall recognized losses. In other words, each Class Member will receive his or her pro rata share of the Settlement Fund after fees and expenses (*i.e.*, the Net Cash Settlement Amount). The full terms of the Plan of Allocation are contained in the notice (attached as Exhibit A-1 to the Proposed Order Granting Preliminary Approval of Settlement).

33. Plaintiffs' Counsel intends to seek an award of attorneys' fees equal to one-third of the Settlement Fund ($2,833,333.33) and reimbursement of expenses in an amount equal to or less than $140,000. These amounts are intended to compensate Plaintiffs' Counsel for its attorneys' fees as well as include reimbursement for Plaintiffs' Counsel's out-of-pocket expenses. When Plaintiffs' Counsel files its motion for an award of attorneys' fees and reimbursement of expenses, the motion will be supported by supplemental information. This supplemental information will include time and expense information, including a description of the work performed by counsel, the hours expended, and the hourly rates typically billed.

34. Attached hereto as Exhibit B is a true and correct copy of Levi & Korsinsky's firm resume.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28 day of April, 2021.

_____
ADAM M. APTON