**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

      Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

      Defendants.

---

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT**

---

**BERENS LAW LLC**
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
1101 30th Street N.W.
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (212) 333-2121
nporritt@zlk.com
aapton@zlk.com

Dated: September 17, 2021

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 2

III.    LEGAL STANDARD........................................................................................ 5

IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .......... 6

    A.   The Proposed Settlement Warrants Final Approval Because It is Fair, Reasonable, and Adequate. .................................................................................................. 6

        1.   Plaintiffs' motion for preliminary approval demonstrated the fairness, reasonableness, and adequacy of the Settlement. ................................... 6

        2.   Plaintiffs fairly and honestly negotiated the Settlement. ...................... 7

        3.   Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. ................................................................................. 10

        4.   The value of an immediate recovery outweighs the mere possibility of future relief. ................................................................................................. 11

        5.   The class was adequately represented, and in the judgment of all parties, the settlement is fair, adequate, and reasonable......................................... 12

        6.   The proposed award of attorneys' fees and reimbursement of litigation expenses is appropriate.................................................................................... 13

    B.   The Plan of Allocation Is Fair, Reasonable, and Adequate Because it Treats All Class Members Equitably........................................................................................ 14

    C.   Plaintiffs' Notice of the Settlement Satisfied the Requirements of Rule 23, Due Process, and the PSLRA. ................................................................................... 15

    D.   The straightforward nature of the Settlement framework and lack of objections warrant final approval. ...................................................................................... 16

    E.   Certification of the Settlement Class Remains Warranted. ............................. 18

V.     CONCLUSION................................................................................................. 18

# **TABLE OF AUTHORITIES**

## **Cases**

*Am. Home Assur. Co. v. Cessna Aircraft Co.*,
   551 F.2d 804 (10th Cir. 1977) ................................................................. 7

*Belote v. Rivet Software, Inc.*,
   No. 12-cv-02792-WYD-MJW, 2014WL 3906205 (D. Colo. Aug. 11, 2014)........................... 7

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ........................................................................... 9

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   2020 WL 3288059 (D. Kan. June 18, 2020)..................................................... 5, 10

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................... 9

*Diaz v.Romer*,
   801 F. Supp. 405 (D. Colo. 1992)............................................................. 7

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   807 Fed. App'x. 752 (10th Cir. 2020) ........................................................ 16

*Farley v. Family Dollar Stores, Inc.*,
   2014 WL 5488897 (D. Colo. Oct. 30, 2014)..................................................... 13

*Gordon v. Chipotle Mexican Grill, Inc.*,
   2019 WL 6972701 (D. Colo. Dec. 16, 2019) .................................................... 15

*Gottlieb v. Wiles*
   11 F.3d 1004 (10th Cir. 1993)................................................................ 9

*Guyer v. MGT Cap. Invs., Inc.*,
   2019 WL 8403029 (S.D.N.Y. Dec. 17, 2019) ................................................... 13

*Hefler v. Wells Fargo & Co.*,
   Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sept. 4, 2018).......... 15

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) .................................................... 8

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ......................................................... 8

*In re Crocs Sec. Litig.*,
   2013 WL 4547404 (D. Colo. Aug. 28, 2013) ...................................................... 12

*In re Crocs Sec. Litig.*,
   2014 WL 4670886 (D. Colo. Sept. 18, 2014) .................................................... 10

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672  (D. Colo. 2014) ..................................................... 7, 13, 15

*In Re Integra Realty Resources, Inc.*,
   354 F.3d 1246 (10th Cir. 2004) ............................................................... 5

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) ............................................................ 9

*In re Molycorp, Inc. Sec. Litig.*,
   2017 WL 4333997 (D. Colo. Feb. 15, 2017) .................................................. 7

*In re N.M. Nat. Gas Antitrust Litig.*,
   607 F. Supp. 1491 (D. Colo.1984) ........................................................... 9

*In re Ocean Power Techs., Inc.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................................................. 13

*In  re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   2014 WL 12768451 (D. Colo. July 31, 2014) .............................................. 14

*In re Patriot Nat'l, Inc. Sec. Litig.*
   828 F. App'x 760 (2d Cir. 2020) ........................................................... 12

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................. 13

*In re Skilled Healthcare Group, Inc.*,
   2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011) ............................ 17

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo., 2006)............................................................. 7

*Mandujano v. Basic Vegetable Prods. Inc.*,
   541 F.2d 832 (9th Cir. 1976) ................................................................ 17

*Martin v. AmeriPride Servs.*,
   No. 08cv440-MMA (JMA), 2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ............. 17

*McNeely v. Nat'l Mobile Health Care, LLC*,
  2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ........................................................ 7

*O'Dowd v. Anthem*,
  2019 WL 4279123 (D. Colo. Sept. 9, 2019) ............................................. 5, 7, 10, 11

*Ramos v. Banner Health*,
  2020 WL 6585849 (D. Colo. Nov. 10, 2020) ......................................................... 6, 7

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ........................................................................... 5, 9

*Tennille v. Western Union Co.*,
  809 F.3d 555 (10th Cir. 2015) ........................................................................ 14, 16

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) .......................................................... 12

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) ........................................................................... 7

## Statutes

15 U.S.C. §78 ................................................................................................ 15, 16

## Rules

F.R.C.P. 23 .................................................................................................. passim

I.      **INTRODUCTION**

Plaintiffs Peter Voulgaris and Wendell Rose secured an $8.5 million settlement in this securities fraud class action lawsuit.[1] This is an exceptional result. It represents a 25% to 33% recovery of overall class-wide damages which sets it apart from settlements in similar cases where the historical median recovery is only 7.6%. The proposed Settlement is further supported by the fact that it eliminates all factual and legal risks Plaintiffs would have faced if the litigation continued. Consequently, Plaintiffs request final approval of the Settlement so that this litigation can be brought to a close once and for all and that Plaintiffs and other Settlement Class Members can receive their share of the recovery without any further delay.

Plaintiffs previously described in their Motion for Preliminary Approval the strengths, weaknesses, and bases for the Settlement. *See* Declaration of Adam M. Apton in Support of the Motion for Preliminary Approval of Settlement (ECF No. 78-1) (the "Apton Decl."). As set forth herein and in the previously filed motion papers, Plaintiffs achieved this Settlement only after conducting a thorough investigation of the facts and circumstances underlying their claims, including analysis of public documents, comprising of thousands of pages of company-specific materials and European regulatory filings; consultations with experts concerning drug trials and regulatory approvals; and a mediation, which required significant preparation and briefing in advance of the session. Given the relative strengths and weaknesses of the claims asserted in the action against the Defendants and the large recovery of cash obtained for the Class, Plaintiffs believe the Settlement is a superb result and fully endorse the requested approval. *See* Declaration of Wendell Rose (ECF No. 78-6); Declaration of Peter Voulgaris (ECF No. 78-7).

The proposed Settlement also warrants approval under Federal Rule of Civil Procedure 23(e) and Tenth Circuit precedent. The parties negotiated at arm's-length with the assistance of an

---

[1] All terms with initial capitalization not otherwise defined herein shall have the same meaning ascribed in the Stipulation and Agreement of Settlement dated April 28, 2021 (ECF No. 77) (the "Stipulation").

experienced mediator, the Honorable Layn Phillips (Ret.). Further, as mentioned above, the Settlement provides an immediate recovery to the class while eliminating all risks associated with the litigation; thus, the prospects of a larger recovery at some point down the road are easily outweighed by the benefits being received by the class under the terms of the proposed Settlement. Plaintiffs also provided notice of the Settlement to over 46,000 potential class members through direct mailing as well as publishing over *PR Newswire* and in *Investor's Business Daily*. The notice clearly described the terms of the deal as well as the proposed plan for distributing settlement funds and the fee award being requested by Lead Counsel. Plaintiffs did not receive any objections to the notice, thereby evidencing further support for granting final approval of the Settlement in its entirety.

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion in its entirety.

## II.    RELEVANT BACKGROUND

Plaintiffs alleged that Defendants made materially false and/or misleading statements and/or omissions by: (1) omitting to disclose material information about the results the NEMO study showed, which would be important considerations for the FDA in evaluating the New Drug Application ("NDA") for binimetinib; (2) misleading investors to believe that the NEMO study results showed sufficient clinical benefits of binimetinib for the purposes of obtaining FDA approval; and (3) concealing that Defendants intended to seek FDA approval for a more narrow indication (only patients who have had prior immunotherapy treatment) than what was submitted in the original NDA. Defendants made these alleged misleading statements and omissions during the Class Period between June 30, 2016 and March 17, 2017.

On March 19, 2017, Array announced that it had met with the FDA and decided to withdraw its NDA for binimetinib. The news of Array's decision surprised the market, including

analysts and investors alike, given Defendants' positive statements about the NEMO trial data over the previous nine months. The next two trading days brought steep declines in the price of Array's stock, falling from $10.56 per share to $9.13 per share on unusually heavy trading volume. Plaintiffs alleged that the decline in the stock and, in turn, the losses they suffered were due to Defendants' fraudulent statements about the NEMO trial data.

Plaintiffs filed suit to recover their losses. Wendell Rose filed the initial complaint on November 20, 2017. *See* ECF No. 1. Plaintiffs then filed the Consolidated Class Action Complaint ("Complaint") on April 26, 2018. *See* ECF No. 27. Defendants moved to dismiss the Complaint on June 11, 2018. *See* ECF No. 32. Plaintiffs filed an opposition to Defendants' motion to dismiss on July 26, 2018. *See* ECF No. 35.

The Court denied Defendants' motion to dismiss the Complaint in its entirety on November 24, 2020 holding, *inter alia*, that the alleged failure to disclose the secondary data that negatively impacted binimetinib's benefit, while disclosing only that the study purportedly successfully met its endpoint, was adequately alleged to be misleading. *See* ECF 46 at 32. The Court rejected Defendants' argument that Plaintiffs failed to state particularized facts showing that the omitted information about the negative secondary data was material. *Id.* at 24, 33. The Court also held that Plaintiffs pleaded facts showing that the change in binimetinib's indication occurred during the Class Period while Defendants were discussing with the public the anticipated basis for FDA approval (based on the overall population of the patients being included), but not informing investors of the change to a narrower subset. *Id.* at 37, 39.

Following the Court's holding on Defendants' motions to dismiss, the Parties commenced formal discovery as well as class certification briefing. Apton Decl. at ¶¶ 12, 15-16. At or around the same time, they also agreed to mediate the case before the Honorable Layn Phillips (Ret.) of Phillips ADR Enterprises, a nationally recognized mediator. *Id.* at ¶ 14. The mediation occurred on March 24, 2021. *Id.* at ¶ 19. While participating in mediation, Plaintiffs recognized that they

faced several critical obstacles in the case and determined that the Settlement was in the best interest of the class.  Plaintiffs moved for preliminary approval of the Settlement on April 28, 2021. ECF 78.

On May 4, 2021, the Court granted Plaintiffs' motion for preliminary approval of the Settlement. *See* Order Granting Motion for Preliminary Approval of Settlement, ECF No. 79 (the "Preliminary Approval Order"). The Court also certified a class for the purposes of the Settlement, holding that Plaintiffs had satisfied the requirements of Rule 23 because: "(a) the members of the Class are so numerous that joinder of all Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Plaintiffs are typical of the claims of the Class; and (d) Plaintiffs have fairly and adequately represented and protected the interests of all of the Class Members." Preliminary Approval at ¶3.  The Preliminary Approval Order further held that for the purposes of effecting this settlement, "a class action is superior  to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action." *Id*.

In addition, the Court confirmed Plaintiffs' proposed forms of notice. The Court held, in pertinent part, that the Notice, "meets the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstance, including individual notice to all Class Members who can be identified through reasonable efforts, and shall constitute due and sufficient notice to all Persons entitled thereto." *Id.* at ¶5.

### III.    LEGAL STANDARD

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." The Tenth Circuit has set forth four factors that courts should consider in assessing whether to grant final approval to a proposed settlement: (1) whether the settlement was fairly and honestly negotiated; (2) if there were serious questions of law and fact, which would place the outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibly of future relief after protracted litigation; and (4) if in the judgment of the parties the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002) (internal citations omitted); *see also In Re Integra Realty Resources, Inc.,* 354 F.3d 1246, 1266 (10th Cir. 2004).

Additional points of consideration include whether: (1) plaintiffs and counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; and (3) the relief for the class is adequate, taking into account (a) the costs, risks, and delay of trial and appeal, (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (c) the terms of any proposed fee award, including timing of payment, and (d) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (citing the 2018 amendments to Fed. R. Civ. P. 23(e)(2)); *see also O'Dowd v. Anthem*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (Mix J.) (the court "first addresses the relevant factors the Tenth Circuit applies [] and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2)").

This Settlement meets all these criteria and should be approved.

## IV.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.  The Proposed Settlement Warrants Final Approval Because It is Fair, Reasonable, and Adequate.

#### 1.  <u>Plaintiffs' motion for preliminary approval demonstrated the fairness, reasonableness, and adequacy of the Settlement.</u>

In moving for preliminary approval of the Settlement, Plaintiffs complied with Rule 23(e)(1)(A) by making an evidentiary showing that the Court would "likely be able to . . . approve the [Settlement] under Rule 23(e)(2)" and "certify the class for purposes of judgment." FED. R. CIV. P. 23(e)(1)(B). Plaintiffs submitted a declaration from Adam M. Apton, one of the lead attorneys on the matter, that outlined the litigation and described the basis for the Settlement. In pertinent part, the declaration demonstrated the complexity of the case and the work that was performed to arrive at the proposed Settlement. Apton Decl., ¶¶2-21. As evidence of the adequacy of the Settlement, Plaintiffs provided the Court with information concerning past settlements in similar cases. *Id*. at ¶24.

Significantly, relative to median settlement values of approximately 7.6% of overall damages, the Settlement at hand represents an estimated 25% to 35% recovery of overall damages. *Id*. "The Settlement Agreement ensures the class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment." *Ramos v. Banner Health*, 2020 WL 6585849, at *3 (D. Colo. Nov. 10, 2020). The Settlement provides an excellent outcome for the Class, restoring between 25% and 35% of their alleged damages and provides a recovery in the near term instead of years of additional litigation with uncertainty over the outcome.

In recognition of this, the Court granted Preliminary Approval of the settlement. The facts supporting the Court's conclusion on these points have not changed. Accordingly, the Court should reaffirm its holding and grant final approval of the Settlement. This is especially so considering that courts in the Tenth Circuit have long held that the "inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assur. Co.*

*v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977); *see also Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). In complex class actions, such as the case at bar, settlements between the parties are all the more encouraged. *See Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) ("settlements in class actions are favored"); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (in approving class action settlement, the court explained that a "consensual resolution of a dispute is always preferred"), *aff'd*, 9 F.3d 116 (10th Cir. 1993). The "presumption in favor of voluntary settlement agreements" is especially strong here, "where substantial judicial resources can be conserved by avoiding formal litigation." *See Ramos v. Banner Health*, 2020 WL 6585849, at *3 (D. Colo. Nov. 10, 2020).

### 2.    Plaintiffs fairly and honestly negotiated the Settlement.

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *11 (W.D. Okla. Oct. 27, 2008). Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd*, 2019 WL 4279123, at *13; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo., 2006). Moreover, utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017).

Plaintiffs and Defendants used an independent, third-party mediator to facilitate their settlement negotiations. Their mediator was the Honorable Layn Phillips (Ret.), a nationally recognized mediator of complex cases and class actions. *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in

extensive negotiations and mediation sessions for over a year" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.,* 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (noting settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips"); *see also In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").

Shortly after the initial scheduling conference with the Court on January 26, 2021, the parties scheduled a mediation for March 24, 2021 with Judge Phillips. Apton Decl. at ¶¶13-14. While preparing for the mediation, Plaintiffs also moved for class certification. In connection with the class certification motion, Plaintiffs provided discovery evidencing their transactions in Array common stock during and after the Class Period. *Id.* at ¶16. Mr. Rose, the named plaintiff in the initial complaint, and Plaintiff's market efficiency expert, Dr. Adam Werner, also testified at depositions. *Id.* All the while, the parties prepared for the mediation.

The mediation process included discovery and extensive briefings. Defendants provided Plaintiffs with certain FDA correspondences concerning Array's NDA for binimetinib. *Id.* These materials, which remain confidential, provided additional relevant details as to the claims and defenses at issue in the litigation, enabling the parties to discuss the merits of their respective positions. *Id.* at ¶17. With the benefit of discovery, the parties filed opening and reply mediation briefs on March 10 and 16, 2021. *Id.* at ¶18. The briefs analyzed liability and damages in detail and asserted various arguments concerning loss causation and recoverability under the relevant authority. *Id.*

On March 24, 2021, the parties virtually mediated the case before Judge Phillips over the course of 11 hours. *Id.* at ¶19. The session ended without an agreement and Judge Phillips provided the parties with recommendation to settle the matter for $8,500,000. *Id.* On March 29, 2021, Judge Phillips informed the parties that his recommendation had been accepted and the case was tentatively settled pending court-approval. *Id.* at ¶21.

The arm's-length nature of the parties' negotiations and the active involvement of an independent mediator, such as Judge Phillips in particular, provide strong support for approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"). Judge Phillips' involvement in the mediation process demonstrates fair, honest, and arm's length negotiations in the settlement negotiation. While the authority to grant or deny approval of a proposed settlement lies within the sound discretion of the Court, *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), courts typically defer to the judgment of the parties who negotiated the settlement, *see Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy"); *see also In re N.M. Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1497 (D. Colo. 1984) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned."). Thus, the manner in which the parties came to the proposed Settlement provides the Court with a sound basis to rely on their judgment in granting approval.

        3.    <u>Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.</u>

"Litigating an action under the PSLRA is not a simple undertaking." *In re Crocs Sec. Litig.*, 2014 WL 4670886, at \*3 (D. Colo. Sept. 18, 2014). Here, "serious questions of law and fact exist where disputes between the parties…could significantly impact this case if it were litigated." *O'Dowd*, 2019 WL 4279123, at \*13; *see also See Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at \*3 (D. Kan. June 18, 2020) ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt' and 'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'"—"largely overlap" with Rule 23(e)(2)(C)(i)). As detailed in the Motion for Preliminary Approval, before the Settlement was reached, Defendants raised credible defenses to the merits of Plaintiffs' claims, which could have resulted in either a substantially lower recovery or none at all. *See* Apton Decl. ¶27(while the discovery supporting the Defendants' contentions remains confidential, it potentially supports Defendants' arguments on the merits). A jury could have been persuaded that the Defendants' account of the regulatory process and their statements related to same did not constitute securities fraud, despite Plaintiffs' arguments to the contrary. *Id.*

Further litigation would have also been risky with respect to damages. Plaintiffs' damages expert would have testified that investors sustained damages over a period of two days because Array's stock price declined steadily over that period following the March 19, 2017 announcement about the NDA. *Id.* at ¶ 28. However, Defendants' expert would have argued that the first day of the decline was only partially related to the alleged fraud and the second day was entirely unrelated. *Id.* Unless Plaintiffs would have successfully precluded Defendants' damages expert from testifying, their recovery may have been largely dependent on which expert the jury found more persuasive. *Id.*

Continued litigation would also present difficulties with witnesses. The binimetinib NDA is almost five years old and the underlying data is even older, and it may be difficult to locate the

individuals who oversaw the NEMO trial and the application process. *Id.* at ¶ 26. Even if Plaintiffs were able to locate these percipient witnesses, there is no guarantee that they would remember key information. Indeed, even Array no longer exists as it was acquired by Pfizer Inc. in July 2019. *Id.*

In addition, Plaintiffs also faced many other risks inherent in most complex litigations, such as obtaining and maintaining class certification, having to defend and/or succeed against post-judgment appeals, and expert credibility concerns at trial. Collectively, these risks weighed heavily in favor of accepting the Settlement, which provides the substantial amount of $8.5 million to the Class in the near term, and likewise now weigh heavily in favor of approving the Settlement in final.

                4.      <u>The value of an immediate recovery outweighs the mere possibility of future relief.</u>

In assessing a settlement, courts in this District weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *O'Dowd*, 2019 WL 4279123, at *13. Here, there is no question that the Settlement Amount is exceptional, and that continued litigation would have been highly risky, costly, and protracted.

The $8.5 million recovery achieved here exceeds the median settlement amount for cases with damages between $25 million and $74 million. Apton Decl., Ex. A. Considering that damages in this case were estimated between $24 million and $34 million, this recovery will provide the Class between 25% and 35% of total recoverable damages. *See* Apton Decl. at ¶ 24. This dwarfs the median class action settlement for similar cases in the Tenth Circuit between 2010 and 2019 where the median settlement as a percentage of overall damages was 7.6% for similar cases. *Id.*

Even if the Action continued and Plaintiffs were successful at trial, the likely recoverable damages that could have been less if the Defendants established that damages were limited to only a portion of the first day of the decline in Array's stock price. *See In re Crocs Sec. Litig.*, 2013 WL

4547404, at *12 (D. Colo. Aug. 28, 2013) ("the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery"). Thus, the Settlement provides an excellent outcome for the Class, restoring between 25% and 35% of their alleged damages and provides a recovery in the near term instead of years of additional litigation with uncertainty over the outcome. Courts readily approve class action settlements representing similar or lower percentages of recoverable damages. *See*, *e.g., Crocs,* 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median…"); *In re Patriot Nat'l, Inc. Sec. Litig.* 828 F. App'x 760, 762 (2d Cir. 2020) (affirming approval of settlement recovery of 6.1% of "potentially recoverable damages"); *Thorpe v. Walter Inv. Mgmt. Corp*., 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement representing 5.5% of likely recoverable damages, noting settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size").

     5.    <u>The class was adequately represented, and in the judgment of all parties, the settlement is fair, adequate, and reasonable.</u>

Plaintiffs have adequately represented the interests of the Class by closely monitoring and participating in this litigation from the outset through resolution. Plaintiffs were in regular contact with Lead Counsel about the progress of the Action; Plaintiff took an active role in discussions about the claims and strategies; and Plaintiff Wendell Rose prepared and sat for deposition in connection with class certification. Plaintiffs also played an instrumental role in the settlement negotiations, closely evaluated the proposed Settlement and recommended that it be approved. *See* Rose Declaration (ECF No. 78-6) and Voulgaris Declaration (ECF No. 78-7).

Moreover, Plaintiffs' claims here are typical of the claims of the Class because they all purchased Array's common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions and suffered damages as a result. Therefore, Plaintiffs and the Class's claims are subject to the same burden of proof. Plaintiffs also have no antagonistic interests; rather,

Plaintiffs' interest in obtaining the largest-possible recovery in this Action was firmly aligned with all Settlement Class Members. *See Crocs*, 306 F.R.D. at 688 (approving settlement where, as here, there is "no evidence that one set of class members will benefit from the settlement to the detriment of another set of class members").

Furthermore, in this District, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Farley v. Family Dollar Stores, Inc*., 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014). Here, Plaintiffs retained counsel who are highly experienced in prosecuting securities class actions, and who have a long, successful track record of adequately representing large and diverse groups of investors in similar cases. *See*, *e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig*., 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("Levi & Korsinsky LLP has extensive experience representing plaintiffs in securities and financial class action lawsuits. That such experienced counsel advocate in favor of the settlement weighs in favor of approval."); *Guyer v. MGT Cap. Invs., Inc.*, 2019 WL 8403029 at *2 (S.D.N.Y. Dec. 17, 2019) (appointing Levi & Korsinsky LLP as class counsel in connection with the preliminary approval of the settlement agreement); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *7 (D.N.J. Nov. 15, 2016) ("Lead Counsel, Levi & Korsinsky, is highly specialized in the field of securities class action litigation, and has efficiently conducted the motion practice and settlement negotiations involved in this proceeding, and is therefore qualified to represent the Settlement Class."); *see also* Apton Decl., Exhibit B (ECF 78-3) (firm resume). Given their extensive experience and success in prosecuting class actions, Lead Counsel's judgment is also entitled to substantial weight.

      6.    <u>The proposed award of attorneys' fees and reimbursement of litigation expenses is appropriate.</u>

The terms of the proposed award of attorneys' fees, which are discussed in the accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation

Expenses (the "Fee Motion"), are appropriate. Plaintiffs' Counsel has applied for a fee of one-third of the Settlement Fund ($2,833,333.33). As set forth in detail in the Fee Motion, such a fee is highly reasonable considering the work performed, the results obtained, and is comparable to other settlements in complex class actions approved in the Tenth Circuit. *See, e.g., Tennille v. Western Union Co.,* 809 F.3d 555 (10th Cir. 2015) (award of 30% fee on $135 million settlement); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014) (awarding 30% of $89.5 million settlement as "a fee award of 30% of the Settlement funds is consistent with awards made within this District and in similar cases").

**B.    The Plan of Allocation Is Fair, Reasonable, and Adequate Because it Treats All Class Members Equitably.**

With respect to the way the Settlement will be distributed, the proposed Plan of Allocation easily satisfies Rule 23(e)(2)(D) because it treats all Settlement Class Members equally. The Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

All Class Members that meet the Class definition with a "Recognized Loss" will receive a pro rata share of the Settlement Fund. ECF No. 77-2; Apton Decl. at ¶¶31-32. The Plan of Allocation for this Settlement is as follows: Each Class Member that submits a valid Claim (an "Authorized Claimant") will be assigned a Recognized Loss. *Id.* An Authorized Claimant's Recognized Loss depends upon the number of Array shares held during the Class Period; specifically, an Authorized Claimant's Recognized Loss is equal to the number of shares he or she held at the time of the corrective disclosures multiplied by the declines in Array's stock price. *Id.* Accordingly, each Class Member that submits a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their "Recognized Loss" to ultimately have their pro rata share of the Net Settlement Fund calculated and distributed.

*Id.* Thus, this factor also supports granting final approval. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *38 (N.D. Cal. Sept. 4, 2018) ("the allocation plan disburses the Settlement Fund to class members 'on a pro rata basis based on the relative size of' the potential claims that they are compromising . . . This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable." (citing cases)).

### C.    Plaintiffs' Notice of the Settlement Satisfied the Requirements of Rule 23, Due Process, and the PSLRA.

The Settlement readily meets the requirements of Rule 23, Due Process, and the PSLRA. The Notice complied in all respects with the requirements set forth in the Stipulation and this Court's Preliminary Approval Order and Rule 23(e)(2)(C). The Court-approved Notice "gave the Settlement Class notice of the terms of the proposed Settlement Agreement; the rights of Class Members under the Settlement Agreement—including the rights to opt-out, object, and be heard at a Final Fairness Hearing; [and] the application for counsel fees, costs and expenses..." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *2 (D. Colo. Dec. 16, 2019) (holding requirements of Rule 23 and due process satisfied where similar notice was provided: "this Notice . . . constitutes due and sufficient notice").

The Notice also contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. §78u-4(a)(7), and due process because it sufficiently apprised the Class of, among other things, the nature of the Action and the claims asserted; the Settlement's basic terms, including the method of distribution provided for in the Plan of Allocation; and notice of the binding effect of a judgment on Class Members. ECF No. 77-2; *Crocs,* 306 F.R.D. at 693. The Notice also contained a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; identification of the attorneys for the class; and the reasons for the Settlement. *Id.* Accordingly,

15

the notice to the Class met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

The Notice also provided information on how to submit a Claim Form and informed Class Members of the avenues available to them to obtain any additional information necessary to make an informed decision, including by directly contacting Lead Counsel or visiting the Settlement website. *Id.*; s*ee also Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. App'x. 752, 764 (10th Cir. 2020) (holding requirements of Rule 23 and due process satisfied where similar notice was provided).

Furthermore, the Claims Administrator has satisfied its obligations. JND Legal Administration ("JND"), the Court-appointed claims administrator, has mailed 46,304 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees. Segura Aff'd at ¶12.  JND also published the Summary Notice via *Investor's Business Daily and PR Newswire*, established a claims call center, and also established a website dedicated to the Settlement, which provides all information and documentation pertinent to the Settlement. *Id.* at ¶¶13-15; *see also Tennille v. Western Union Co.*, 785 F.3d 422, 438-39(10th Cir. 2015) (finding distribution of notice via first-class mail supplemented by publishing notice in widely circulated publications and on settlement website sufficiently adequate).

**D.    The straightforward nature of the Settlement framework and lack of objections warrant final approval.**

The Settlement framework provides a simple and well-established methodology for the processing of claims from Class members. First, the Court-approved Proof of Claim form provides clear instructions to potential Class members concerning the necessary information they must present to the Claims Administrator in order it to accurately process their claim and the deadlines by which they must do such. ECF No. 77-2. Based on the information provided by the Class

members, the Claims Administrator will confirm each Class member's eligibility to participate in the recovery by mechanically calculating their respective "Recognized Loss" based on the Court-approved Plan of Allocation to ultimately determine each Class member's *pro rata* portion of the Net Settlement Fund. *See* ECF No. 77-2; Apton Decl. at ¶¶31-32.

Pursuant to the Preliminary Approval Order, any Settlement Class Member who wanted to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the attorneys' fees and expense award request, was required to submit such exclusion request or objection by twenty-five calendar days prior to the Final Approval Hearing or October 4, 2021. ECF No. 77-2; ECF No. 79 at ¶11. As of the date of this motion, neither Plaintiffs' Counsel nor the Claims Administrator have received any objections to the Settlement. *See* Supplemental Declaration of Adam M. Apton, dated September 17, 2021 ("Apton Supp. Decl."), ¶4; Declaration of Luiggy Segura, dated September 15, 2021, ¶17. Plaintiffs will respond to any objections and exclusions after the October 4, 2021 deadline has elapsed. Apton Supp. Decl. at ¶5. It is established that the absence of a large number of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). "The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement." *Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796, at *21 (S.D. Cal. June 9, 2011); *see In re Skilled Healthcare Group, Inc.,* 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a *de minimus* objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528. Given the absence of objections, at this time, the Court should consider this as additional evidence in support of granting final approval.

**E.    Certification of the Settlement Class Remains Warranted.**

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested, for purposes of the Settlement only, that the Court certify the Settlement Class under Rules 23(a) and (b)(3). In Preliminary Approval Order, this Court certified the Settlement Class. *See* ECF No.79 at ¶2. Nothing has changed to alter the propriety of the Court's certification, and no Settlement Class Member has objected to class certification. For all the reasons stated in Plaintiff's Brief in Support of the Motion for Preliminary Approval of Settlement (ECF No. 78), which is incorporated herein by reference, and in the Court's Preliminary Approval Order, Plaintiffs request that the Court reaffirm its determinations in the Preliminary Approval Order and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiffs Voulgaris and Rose as Settlement Class Representatives, and appoint Plaintiffs' counsel Levi & Korsinsky, LLP as Settlement Class Counsel and Berens Law LLC as Liaison Counsel.

## V.    <u>CONCLUSION</u>

Based on the foregoing reasons, and the declarations submitted herewith, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable and adequate.

//

//

//

//

//

//

Dated: September 17, 2021

BERENS LAW LLC

/s/ Jeffrey A. Berens
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

*Liaison Counsel for Plaintiff Wendell Rose, Lead Plaintiff Peter Voulgaris, and the Class*

LEVI & KORSINSKY, LLP
Nicholas I. Porritt
Adam M. Apton
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com

*Attorneys for Plaintiff Wendell Rose and Lead Plaintiff Peter Voulgaris and Lead Counsel for the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Jeffrey A. Berens, an attorney, hereby certify that on September 17, 2021, I caused a true and correct copy of the foregoing PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 17, 2021.

/s/ Jeffrey A. Berens
Jeffrey A. Berens