**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

      Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

      Defendants.

---

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

---

**BERENS LAW LLC**
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
1101 30th Street N.W.
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (212) 333-2121
nporritt@zlk.com
aapton@zlk.com

Dated: September 17, 2021

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL STANDARD...................................................................................................... 3

III.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE GIVEN THE RESULT OBTAINED AND UNANIMOUS LEGAL AUTHORITY................................. 4

    A.   Legal Authority from District Courts within the Tenth Circuit Supports Lead Counsel's Request for One-Third of the Settlement Fund.................................................................. 4

    B.   The *Johnson* Factors Support the Reasonableness of the Fee Request. ............................ 5

        1.   The amount involved and the results obtained support the reasonableness of the fee request. ............................................................................................................ 6

        2.   The novelty and difficulty of the legal and factual issues support the reasonableness of the fee request. ........................................................................... 7

        3.   The skill requisite to perform the legal service properly and the experience, reputation and ability of counsel support the reasonableness of the fee request. ... 9

        4.   The contingent nature of the fee supports the reasonableness of the fee request.  10

        5.   The time and labor expended by Lead Counsel support the reasonableness of the fee request. .......................................................................................................... 11

        6.   The undesirability of the action supports the reasonableness of the fee request. . 14

        7.   The Settlement exceeds awards in similar cases.................................................... 15

IV.     LEAD COUNSEL INCURRED REASONABLE AND NECESSARY OUT-OF-POCKET LITIGATION EXPENSES. ........................................................................................ 16

V.      CONCLUSION............................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Merit Energy Co.*,
 2009 U.S. Dist. LEXIS 100681 (D. Colo. Oct. 20, 2009) ........................................................ 5

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
 2017 WL 2574005 (D. Minn. June 14, 2017).......................................................... 16

*Behrens v. Wometco Enters., Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988).......................................................................... 9

*Blum v. Stenson*,
 465 U.S. 886 (1984).............................................................................................. 5

*Boeing Co. v. Van Gemert*,
 444 U.S. 472  (1980)............................................................................................ 3

*Booth v. Strategic Realty Tr., Inc.*,
 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ......................................................... 15

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
 8 F. 3d 722 (10th Cir. 1993)............................................................................... 17

*Brewer v. S. Union Co.*,
 607 F. Supp. 1511 (D. Colo. 1984).......................................................................... 13

*Brown v. Phillips Petroleum Co.*,
 838 F.2d 451 (10th Cir. 1988) ............................................................... 3, 4, 5, 6

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ........................................................................... 6, 10

*Cook v. Rockwell Int'l Corp.*,
 2017 WL 5076498 (D. Colo. Apr. 28, 2017)............................................................. 3

*Destefano v. Zynga, Inc.*,
 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................... 16

*Diaz v. Lost Dog Pizza, LLC*,
 2019 WL 2189485 (D. Colo. May 21, 2019)............................................................ 7

*Equ In re Equity Funding Corp. of Am. Sec. Litig.*,
 438 F. Supp. 1303 (C.D. Cal. 1977) ..................................................................... 10

*Fischel v. Equitable Life Assurance Soc'y of United States*,
　　307 F.3d 997 (9th Cir. 2002) .................................................................................. 12

*Goldberger v. Integrated Res., Inc.*,
　　209 F.3d 43 (2d Cir. 2000) ................................................................................. 6, 11

*Gottlieb v. Barry*,
　　43 F. 3d 474  (10th Cir. 1994) .............................................................................. 3, 4

*Harris v. Marhoefer*,
　　24 F.3d 16 (9th Cir. 1994) ...................................................................................... 16

*Hicks v. Morgan Stanley*,
　　2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ....................................... 7

*In re : Washington Pub. Power Supply Sys. Sec. Litig.*,
　　19 F3d 1291 (9th Cir 1994) ............................................................................... 6, 11

*In re Amgen Inc. Sec. Litig.*,
　　No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................... 14

*In re Arizona Dairy Prod. Litig.*,
　　1984 WL 2928 (D. Ariz. Jan. 16, 1984) .................................................................. 13

*In Re Arizona Escrow Fee Antitrust Litigation*,
　　1982–83 Trade Cases ................................................................................................ 13

*In re Atmel Corp. Derivative Litig.*,
　　2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)......................................................... 15

*In re BP p.l.c. Sec. Litig.*,
　　852 F. Supp. 2d 767 (S.D. Tex. 2012) ....................................................................... 8

*In Re Cement & Concrete Antitrust Litigation*,
　　1980–81 Trade Cases  (D.Ariz.1980) ...................................................................... 13

*In re Checking Account Overdraft Lit.*,
　　830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................... 15

*In re Crocs, Inc. Sec. Litig.*,
　　2014 WL 4670886 (D. Colo. Sept. 18, 2014).................................................... passim

*In re Crocs, Inc. Sec. Litig.*,
　　306 F.R.D. 672 (D. Colo. 2014) .............................................................................. 15

iv

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003) ................................................................. 15

*In re Davita Healthcare Partners, Inc. Derivative Litig.*,
   No. 12-cv-2074-WJM-CBS, 2015 U.S. Dist. LEXIS 74372 (D. Colo. June 5, 2015) ............ 13

*In re Einstein Noah Bagel Corp. Sec. Litig.*,
   No. 97-N-1614, slip op. (D. Colo. June 4, 1999) ........................................................ 5

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400,2010 WL 4537550 (S.D.N.Y. Nov. 8. 2010) .................................... 3

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ..................................................................... 14

*In re GSE Bonds Antitrust Litig.*,
   2020 WL 3250593 (S.D.N.Y. June 16, 2020) ......................................................... 16

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) ........................................................................ 6

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) ............................................. 7

*In re MerrillLynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y 2008) ........................................................................... 4

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................................... 8

*In re Molycorp Inc. Sec. Litig.*,
   2017 WL 11598681 (D. Colo. June 16, 2017) ........................................................ 14

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   2014 WL 12768451 (D. Colo. July 31, 2014) ......................................................... 3

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267 (D. Colo. Sept. 29, 2006)....... 2, 10, 12

*In re Spectranetics Corp. Sec. Litig.*,
   2011 WL 13238696 (D. Colo. Apr. 4, 2011)........................................................... 14

*In re Thornburg Mortg., Inc.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) .................................................................... 9

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................... 5, 6, 7

*Knight v. Red Door Salons, Inc.*,
    No. 08 Civ. 1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)............................................. 8, 9

*Lane v. Page*,
    862 F. Supp. 2d 1182 (D.N.M. 2012) ..................................................... 6

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) ..................................................... 6, 11

*Lucas v. Kmart Corp.*,
    2006 U.S. Dist. LEXIS 51420 (D. Colo. July 27, 2006)......................................... 14

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
    2010 WL 5387559 (D. Colo. Dec. 22, 2010)............................................. 5

*Miller v. Woodmoor Corp.*,
    1978 U.S. Dist. LEXIS 15234 (D. Colo. Sept. 28, 1978)......................................... 7

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ..................................................... 16

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
    2021 WL 2981970 (D. Colo. July 15, 2021) ..................................................... 8, 13

*Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 71267 (D. Colo. Sept. 29, 2006)......................................... 9

*Rasner v. FirstWorld Commc'ns, Inc.*,
    No. 00-K-1376, slip op. (D. Colo. Jan. 19, 2005) ..................................................... 5

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014).............................................. 10, 13

*US Airways, Inc. v.McCutchen*,
    133 S. Ct. 1537  (2013)..................................................... 3

*Uselton v. Commercial Lovelace Motor Freight*,
    9 F.3d 849 (10th Cir. 1993) ..................................................... 4, 5

*Vaszlavik v. Storage Tech. Corp.*,
    No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140 (D. Colo. Mar. 9, 2000) ......................... passim

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................................................... 11, 12

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................................. 8

## **Other Authorities**

Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986) ............................. 11

## I.      <u>INTRODUCTION</u>

After nearly four years of litigation, Levi & Korsinsky, LLP, Court-appointed Lead Counsel for Lead Plaintiff Peter Voulgaris and Plaintiff Wendell Rose (collectively, "Plaintiffs"), and the Settlement Class have successfully negotiated an exceptional settlement of this class action securities fraud lawsuit against Array BioPharma Inc., Ron Squarer, Victor Sandor, and Jason Haddock ("Defendants") in the amount of $8,500,000 in cash.[1] The proposed Settlement represents a very favorable recovery for the Settlement Class, especially when viewed in light of the risks and costs attendant to further, protracted litigation. Accordingly, Lead Counsel requests: (i) an award of attorneys' fees in the amount of $2,833,333.33, which represents one-third of the Settlement Fund; and (ii) payment of litigation expenses incurred in prosecuting the Action in the amount of $97,587.33.

Lead Counsel achieved the Settlement through hard work and diligent effort. They conducted a thorough factual investigation into the Class's claims, including reviewing and analyzing voluminous publicly available information; drafted a detailed consolidated complaint based on this investigation; conducted extensive research regarding the law applicable to the claims asserted in the litigation and Defendants' potential defenses thereto; opposed Defendants' comprehensive motion to dismiss; consulted with experts on complex issues pertaining to class certification and recoverable damages; and engaged in hard-fought settlement negotiations with an experienced and highly respected neutral mediator. It is against this backdrop that Plaintiffs and Lead Counsel were able to obtain the proposed settlement of $8,500,000.

The proposed settlement of $8,500,000 represents an excellent recovery for the Class. Proof of this is evident in the fact that this recovery represents between 25% and 35% of estimated total class-wide damages. Declaration of Adam M. Apton in Support of the Motion for Preliminary

---

[1] All terms with initial capitalization not otherwise defined herein shall have the same meaning ascribed in the Stipulation and Agreement of Settlement dated April 28, 2021 (ECF No. 77) (the "Stipulation").

Approval of Settlement (ECF No. 78-1) (the "Apton Decl."), ¶24. Moreover, over 46,000 notices have been disseminated to the public detailing the terms of the Settlement along with Lead Counsel's intended request for attorneys' fees and reimbursement of expenses. *See* Declaration of Luiggy Segura, dated September 15, 2021 ("Segura Decl."), ¶12. To date, there have been no objections to the Settlement or the requested payments and there has been only one request for exclusion from the Settlement. *Id*. at ¶¶17-18.

In exchange for their excellent work and results, Lead Counsel seeks one-third of the Settlement Fund, as noticed, in the amount of $2,833,333.33 and reimbursement of litigation expenses in the amount of $97,587.33. Lead Counsel's request is supported by the amount of time they invested in the case, which amounts to over 1,500 hours of attorney time, and the reasonable 2.8x multiplier being sought. The requested fee will compensate Lead Counsel for their time, effort, and results. Not only is it fair, but it also falls squarely in line with precedent from within the Tenth Circuit concerning multipliers and the benchmark fee award in complex class action litigation. *See*, *e.g.*, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure."); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS 21140, at *7-8 (D. Colo. Mar. 9, 2000) ("Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed").

Lead Counsel's litigation expenses are also deserving of reimbursement. Lead Counsel incurred them as a result of reasonable and necessary steps taken during the course of the litigation. Significantly, the requested amount of $97,587.33 is notably less than the amount stated in the notice disseminated to the Class. They primarily consist of expert witness fees as well as mediation

expenses. Without the expert witnesses retained by Plaintiffs and Lead Counsel, it is unclear whether Plaintiffs would have secured the result presently before the Court.

For all the reasons set forth herein, Lead Counsel respectfully requests that the Court approve their request for attorneys' fees and expenses.

## II.   <u>LEGAL STANDARD</u>

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1550 (2013). The purpose of this common fund doctrine is to compensate class counsel fairly and adequately for services rendered and to prevent unjust enrichment of persons who benefit from a lawsuit without bearing its cost. *See Boeing*, 444 U.S. at 478. The Tenth Circuit has explicitly recognized this Court's right to award attorneys' fees from a common fund in situations where, as here, the common fund is the result of the attorney's successful prosecution of the action. *See, e.g.*, *Gottlieb v. Barry*, 43 F. 3d 474, 482 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014). In preferring this method, courts in the Tenth Circuit have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *See Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017).

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund should "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010); *see also In re Crocs, Inc. Sec. Litig.*, 2014 WL

4670886, at *5 (D. Colo. Sept. 18, 2014) ("Federal securities class actions require Lead Counsel to expend substantial time and effort with no guarantee of success  In light of these difficulties, 'public policy supports granting attorneys' fees that are sufficient to encourage Lead Counsel to bring securities class actions that supplement the effortsof the SEC.'").  Moreover, compensating Lead Counsel for the risks they take in bringing theseactions is important because "[s]uch actions could not be sustained if Lead Counsel were not toreceive remuneration from the settlement fund for their efforts on behalf of the class."  *In re MerrillLynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y 2008).

III.   **LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE GIVEN THE RESULT OBTAINED AND UNANIMOUS LEGAL AUTHORITY.**

    A.    **Legal Authority from District Courts within the Tenth Circuit Supports Lead Counsel's Request for One-Third of the Settlement Fund.**

For their efforts in creating a $8.5 million Settlement Fund, Lead Counsel seeks one-third of the recovery or $2,833,33.33. Tenth Circuit precedent squarely supports the request. In *Brown v. Phillips Petroleum Co.*, the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case. 838 F.2d 451, 454 -55 (10th Cir. 1988); *see also Gottlieb v. Barry*, 43 F. 3d 474, 483 (10th Cir. 1994) ("In our circuit, following *Brown* and *Uselton*, either [the percentage or lodestar] method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method.") (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993)); *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *4 ("[w]hile enhanced lodestar cases remain instructive, the Tenth Circuit has expressed 'a preference for the percentage of the fund method'"). The PSLRA also supports awarding attorneys' fees in securities cases using the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court for the plaintiff class shall not exceed a reasonable percentage of the amount . . . actually paid to the class." 15 U.S.C. §78u-4(a)(6). The percentage

4

method also is consistent with arrangements in the private marketplace for contingency cases, in which individual clients typically agree to a fee based on the amount recovered. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984). In *Brown*, the Tenth Circuit recognized that a typical percentage award in a common fund case is around one-third of the recovery. 838 F.2d at 455 n.2 (collecting cases).

Lead Counsel's fee request falls within the range of fee percentages awarded in securities class actions and other comparable class actions in this Circuit. *See, e.g., Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Anderson v. Merit Energy Co.*, 2009 U.S. Dist. LEXIS 100681, at *10 (D. Colo. Oct. 20, 2009) (awarding 33% of recovery); *Rasner v. FirstWorld Commc'ns, Inc.*, No. 00-K-1376, slip op. (D. Colo. Jan. 19, 2005) (awarding 33% of recovery); *In re Einstein Noah Bagel Corp. Sec. Litig.*, No. 97-N-1614, slip op. (D. Colo. June 4, 1999) (awarding 30% of recovery). Accordingly, Lead Counsel's fee request is consistent with attorneys' fees awarded in securities class actions and other complex actions in this District.

**B.    The *Johnson* Factors Support the Reasonableness of the Fee Request.**

The Tenth Circuit also considers the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.* when determining the appropriate percentage of attorneys' fees in common fund cases. 488 F.2d 714 (5th Cir. 1974); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993). The *Johnson* factors are as follows:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) (Martínez, J.) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979)).

Because "rarely are all of the *Johnson* factors applicable," "a court need not specifically address each *Johnson* factor." *Lane v. Page*, 862 F. Supp. 2d 1182, 1236 (D.N.M. 2012); *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014). Each factor that is relevant to a securities class action supports the fee request.

      1.    <u>The amount involved and the results obtained support the reasonableness of the fee request.</u>

The result achieved for the class is the most important in determining an appropriate fee award. *Brown*, 838 F.2d at 456 (in a common fund case the results obtained may be given greater weight); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of recovery, and end result achieved are of primary importance, for these are the true benefit to the client"). Through their efforts in prosecuting and resolving this litigation, Lead Counsel has obtained a recovery of $8.5 million for the Class. As detailed previously in Plaintiffs' Motion for Preliminary Approval and accompanying Declaration of Adam M. Apton (ECF Nos. 78, 78-1), this case involved significant challenges with respect to damages and liability. Moreover, the Settlement avoids the risks, along with the costs and delays, of continued litigation, *i.e.*, class certification, additional motions for summary judgment and exclusion of expert witness testimony, a lengthy trial and subsequent appeals. Numerous courts have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., In re : Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F3d 1291, 1299-1300 (9th Cir 1994); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976).

The Settlement also represents a substantial percentage of the Class's estimated damages. Considering that damages in this case were estimated between $24 million and $34 million, this recovery will provide the Class between 25% and 35% of total recoverable damages. *See* Apton Decl. at ¶24. This is far greater than the 7.6% median recovery in cases settled between 2010 and 2019. *Id*. Moreover, if Defendants were to prevail on any of their arguments at trial, the Class's total recoverable damages would likely be reduced, and, as such, the percentage of damages the Settlement Amount represents could be viewed as even greater. In evaluating proposed settlements, other courts have found much smaller percentage recoveries to be reasonable. *See e.g. In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) ("The [$40.3] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the *higher end of the range* of reasonableness of recovery in class action securities litigations."); *Hicks v. Morgan Stanley*, 2005 U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (finding settlement representing 3.8% of plaintiffs' estimated damages to be within range of reasonableness).

2. The novelty and difficulty of the legal and factual issues support the reasonableness of the fee request.

The novelty and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) (Martínez, J.) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979)). Courts in this District have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving. *See Miller v. Woodmoor Corp.*, 1978 U.S. Dist. LEXIS 15234, at *12 (D. Colo. Sept. 28, 1978) ("Despite years of litigation, the area of securities law has gained little predictability. There are few 'routine' or 'simple' securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities law in such a way as to follow the spirit of the law while adapting to new situations

7

which arise."). "The very nature of a securities fraud case demands a difficult level of proof to establish liability. *In re Mills Corp. Sec. Litig*., 265 F.R.D. 246, 263 (E.D. Va. 2009). "Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish." *Id*. The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). The substantial risks and uncertainties in this type of litigation under the PSLRA, and in this case, made it far from certain that any recovery, let alone $8.5 million, would ultimately be obtained.

*First*, Lead Counsel obtained the recovery at hand despite the pleading burdens that initially confronted Plaintiffs when the case was first commenced; specifically, the Private Securities Litigation Reform Act of 1995. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."). This warrants a higher fee. *See Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *22 (D.N.J. Nov. 10, 2016) (taking into account pleading burdens imposed by PSLRA in awarding attorneys' fees). "Importantly, the risk that Lead Counsel 'would recover no compensation for their extensive efforts was not merely hypothetical, especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision.'" *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) (quoting *In re Crocs*, 2014 WL 4670886, at *5).

*Second*, this litigation involved issues related to pharmaceutical trials in Europe and the United States and, going forward, Plaintiffs would be required to rely heavily on experts in this industry, as well as experts typically retained in securities class actions. As detailed in the Motion for Preliminary Approval, before the Settlement was reached, Defendants raised credible defenses

to the merits of Plaintiffs' claims, each of which presented grave risks and easily could have resulted in either a substantially lower or no recovery at all. Apton Decl. at ¶27.

*Third*, further litigation would also have been risky with respect to damages. Defendants' damages expert was expected to testify the first day of the stock's decline was only partially related to the alleged fraud and that the second day of decline was completely unrelated, thereby limiting Plaintiffs' damages to only a portion of the first day of decline in Array's stock price. *Id.* at ¶28. Accordingly, defeating Defendants' arguments regarding loss causation and damages at summary judgment, trial, and possibly on appeal would have been time-consuming and risky. *See In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012) ("Damages in this case, as is common in securities class actions, would likely have been reduced to a 'battle of the experts,' and it is virtually impossible to predict with any certainty which testimony would be credited.")

Lead Counsel's ability to successfully navigate these and other complex legal and factual obstacles fully supports the requested fee award.

3. <u>The skill requisite to perform the legal service properly and the experience, reputation and ability of counsel support the reasonableness of the fee request.</u>

The skill required and the experience, reputation, and ability of the attorneys, also support the reasonableness fee request. *Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71267, at *18-19 (D. Colo. Sept. 29, 2006) The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08 Civ. 1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). Here, the quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation. Lead Counsel's supporting declarations include a firm resume for

Levi & Korsinsky, which describe the firm's background and experience in conducting securities litigation. *See* Apton Decl., Ex. B.

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). The quality of opposing counsel is important in evaluating the quality of services rendered by Lead Counsel. *See Qwest*, 2006 U.S. Dist. LEXIS 71267, at *18 (finding that counsel for defendants were also "represented by lawyers of similar expertise and experience"). Throughout the Litigation, Lead Counsel faced formidable opposition from the prominent law firm Skadden Arps Slate Meagher & Flom, LLP, a firm with outstanding securities litigation practices. In the face of knowledgeable and solid opposition, Lead Counsel was able to develop a case that was sufficiently strong to encourage Defendants to settle the case on favorable terms for the Settlement Class. Lead Counsel's diligent efforts should be rewarded.

4.   The contingent nature of the fee supports the reasonableness of the fee request.

Paramount in the determination of a fair fee must include consideration of the contingent nature of the fee and the significant risks of non-recovery.  *See Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *9-10; *see also Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest*, 2006 U.S. Dist. LEXIS 71267, at *22 (a contingent fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful").

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974),

10

*abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Indeed, the risk of litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("[r]isk is a relevant circumstance").

The determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs, who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.*

Although this case is plainly meritorious, or this Court would not have denied Defendants' Motion to Dismiss in its entirety, there are facts that make even strong cases risky, and this case has them. Despite these risks, Lead Counsel prosecuted this matter on a wholly contingent basis and bore all the risks of litigating the case through trial andlikely appeals. Lead Counsel has received no compensation for this litigation and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to counsel has always been at risk and completely contingent on the result achieved. This, in part, is why Plaintiffs support Lead Counsel's request for the fee presently being sought. *See* Rose Declaration at ¶5 (ECF No. 78-6) and Voulgaris Declaration at ¶7 (ECF No. 78-7).

                5.    <u>The time and labor expended by Lead Counsel support the reasonableness of the fee request.</u>

The time and labor expended by Lead Counsel in prosecuting this Action firmly supports the requested fee. These efforts included an extensive and extremely comprehensive investigation, consultation with experts, and drafting a highly detailed Complaint sufficient to defeat Defendants' motion to dismiss in its entirety.

In addition, the extensive settlement negotiations were substantially time-consuming, including submitting detailed mediation statements and presentations over the course of the mediation that culminated in the Settlement. Lead Counsel also thoroughly reviewed discovery exchanged in advance of the mediation. Due to the PSLRA's five-year statute of repose and its effect on Class Members' claims, Lead Counsel moved for class certification on an expedited basis. This involved preparing the motion, defending the depositions of Plaintiffs' expert and Mr. Rose, and drafting a reply in response to Defendants' opposition to the motion.

Although not required in the Tenth Circuit, a lodestar "cross check" analysis also supports Lead Counsel's fee request. As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). Moreover, "the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

In total, prosecuting this Action necessitated Lead Counsel to expend more than 1,500 hours, equivalent to $1,004,641.00 in attorney and staff time, over the course of more than three years of litigation. The requested fee of $2,833,333.33 equates to a multiplier of 2.8x, which is consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit. *See e.g. In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a

12

common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure."); *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *7-*8 ("Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed").

Multipliers are justified where, as here, plaintiffs' counsel litigates on a contingent basis. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."). Further, they are routinely held appropriate in cases, such as this one, given the "scope and nature of the work required by Plaintiff's counsel both in preparation for and during litigation" is of significant "complexity." *In re Davita Healthcare Partners, Inc. Derivative Litig.*, No. 12-cv-2074-WJM-CBS, 2015 U.S. Dist. LEXIS 74372, at *15 (D. Colo. June 5, 2015) (awarding multiplier of 3x in shareholder derivative lawsuit). A multiplier of 2.8x, in particular, "is at the low end of the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit." *See Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *3 (D. Colo. July 15, 2021); *In re Crocs*, 2014 WL 4670886, at *4 (referencing District cases approving multipliers ranging from 2.5 to 4.6); *see also In Re Cement & Concrete Antitrust Litigation*, 1980–81 Trade Cases ¶ 63,798 (D.Ariz.1980) (up to 2.85); *In Re Arizona Escrow Fee Antitrust Litigation*, 1982–83 Trade Cases ¶ 65,198 (D.Ariz.1982) (up to 3.1); *Brewer v. S. Union Co.*, 607 F. Supp. 1511, 1533 (D. Colo. 1984) (collecting cases where multipliers of 1.5 to 4 were applied); *In re Arizona Dairy Prod. Litig.*, 1984 WL 2928, at *8 (D. Ariz. Jan. 16, 1984) (Court applied a multiplier of 2.7 and 2.8 to the lodestar amount requested by the law firms that represented Plaintiffs).

The hourly rates charged by Lead Counsel range from $455 to $1,050, which is consistent with hourly rates approved in similar cases. *See, e.g., In re Molycorp Inc. Sec. Litig.,* 2017 WL

11598681, at *1-2 (D. Colo. June 16, 2017) (approving 30% fee request in securities class action where attorney hourly rates ranged from $435 to $955 per hour); *Crocs*, 2014 WL 4670886, at *4, ECF No. 208 at 95 (awarding 30% fee where attorney hourly rates were up to $935 per hour and were "higher than the rates charged by attorneys of similar skill and experience in the Denver legal market"); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (approving rates of $750-$985 for partners and $300-$725 for associates).

<blockquote>6.    <u>The undesirability of the action supports the reasonableness of the fee request.</u></blockquote>

"Federal securities class actions require Lead Counsel to expend substantial time and effort with no guarantee of success." *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). As a result, "[s]uch cases are often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011). Despite the inherent risks and exacting pleading standards applicable in cases governed by the Private Securities Litigation Reform Act, Lead Counsel took on a risky, complex, and protracted litigation requiring them to expend extensive funds and resources against formidable opposition with no guarantee of success. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("[l]ooking at the complexity of the litigation and the fact that the plaintiffs did not bring this case as a tag-along suit to a government investigation, the substantial attorneys' fees award in this case is justified"); *Lucas v. Kmart Corp.*, 2006 U.S. Dist. LEXIS 51420, at *20 (D. Colo. July 27, 2006) (finding complex class action to be "not a desirable case to take" given the risk of no recovery and legal issues involved).

This was a complex case that presented difficult issues. For example, Lead Counsel recognized very early that the elements of loss causation and damages would pose a significant challenge throughout the prosecution of the litigation. These risks must be assessed as they existed at the time counsel undertook the case and not considering the settlement ultimately achieved. *In*

14

*re Checking Account Overdraft Lit.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) (undesirability and relevant risks to be judged as of the time the suit was commenced).

7.    The Settlement exceeds awards in similar cases.

The Settlement Agreement represents an extremely beneficial outcome for the Class. he Settlement Agreement before the Court provides for a cash payment by or on behalf of Array of $8,500,000. The amount of the recovery strongly supports accepting the settlement. Given the size of the case, this recovery is at the high end of the range of historical settlements in similar cases. *See* Apton Decl. at ¶24. According to Cornerstone Research (a leading economics consulting firm), in cases with damages between $25 million and $74 million between 2011 and 2019, the median settlement as a percentage of overall damages was 7.6%. *Id.*: *see generally* Apton Decl., Ex. A. Considering that damages in this case were estimated between $24 million and $34 million, this recovery will provide the Class between 25% and 35% of total recoverable damages. *Id.*

Courts regularly find settlements to be fair, reasonable, and adequate and grant their approval when they meet or exceed the median settlement for similar cases. *see In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1114 (N.D. Cal. 2003) (Settlement of $6.2 million constituted 13.6 percent of potential losses, which exceeded the 7 percent median of potential losses recovered in settlements by issuers in class actions involving restatement allegations after the enactment of the 1995 amendments to the Exchange Act); *In re Atmel Corp. Derivative Litig.,* 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010) (Net recovery of $4.71 million was 15 percent of the Plaintiffs' estimated total recoverable damages, which exceeded the 2.4 percent average of settlements as a percentage of "estimated damages" in 2006);  *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, n.20 (D. Colo. 2014) (Finding that the $10 million settlement, which represented a recovery of approximately 1.3 percent of the amount of damages that could be achieved, was in line with the median ratio of settlement size to investor losses); *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919, at *5 (N.D. Cal. Oct. 15, 2015) (Settlement of $5 million represented approximately 20

15

percent recovery, which exceeded the 11.7 percent median settlements in securities class action cases between 2005 and 2014 involving estimated damages of less than $50 million); *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.,* 2017 WL 2574005, at *3 (D. Minn. June 14, 2017) (Settlement of $9.5 million, which represented a recovery of approximately 6.8% to 9.5% of the estimated maximum provable damages, exceeded the median settlement as a percentage of estimated damages in the Eighth Circuit from 2007 through 2016); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *2 (S.D.N.Y. June 16, 2020) (Court found that the $14.5 million settlement amount represented 6% to 12% of the best possible recovery). Given the overall recovery at hand relative to previous settlement recoveries, Lead Counsel's work is deserving of the requested fee award.

## IV.   <u>LEAD COUNSEL INCURRED REASONABLE AND NECESSARY OUT-OF-POCKET LITIGATION EXPENSES.</u>

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *11. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation marks and citations omitted). Courts regularly award litigation costs and expenses, "including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services)); *see also Bratcher v. Bray-*

16

*Doyle Indep. Sch. Dist. No. 42*, 8 F. 3d 722, 725-26 (10th Cir. 1993) (expenses properly awarded if such charges would normally be billed to client).

In addition to a reasonable attorneys' fee, Lead Counsel respectfully seeks $97,587.33 for expenses and charges Lead Counsel reasonably and necessarily paid or incurred in connection with investigating, prosecuting, and resolving the claims against Defendants. These expenses are itemized in the accompanying declarations of Adam M. Apton and Jeff Berens. Apton Supp Decl. at ¶11; Berens Decl. at ¶4. The expenses and charges for which Lead Counsel seek payment are the types of expenses and charges that are necessarily incurred in litigation and routinely charged to clients billed by the hour and should be reimbursed, such as expert witnesses, investigators, research, and court filing fees. Apton Supp. Decl. at ¶¶12-15.

## V.    **CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of $2,833,333.33 (*i.e.*, one-third of the Settlement Fund) and reimbursement of $97,587.33 in litigation expenses.

Dated: September 17, 2021

BERENS LAW LLC

/s/ Jeffrey A. Berens
Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, Colorado 80238
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
jeff@jberenslaw.com

*Liaison Counsel for Plaintiff Wendell Rose, Lead Plaintiff Peter Voulgaris, and the Class*

LEVI & KORSINSKY, LLP
Nicholas I. Porritt
Adam M. Apton
1101 30th Street N.W., Suite 115

17

Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com

*Attorneys for Plaintiff Wendell Rose and Lead Plaintiff Peter Voulgaris and Lead Counsel for the Class*

18

## **CERTIFICATE OF SERVICE**

I, Jeffrey A. Berens, an attorney, hereby certify that on September 17, 2021, I caused a true and correct copy of the foregoing PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on September 17, 2021.

/s/ Jeffrey A. Berens
Jeffrey A. Berens