Matthew Pampena
316 17th Ave.
Seattle WA, 98122
Tel: (206) 779-0467

September 30, 2021

Clerk of Court
United States District Court
District of Colorado
Alfred A. Arraj US Courthouse
901 19th Street, Room A105
Denver, CO 80294

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT -4 2021

JEFFREY P. COLWELL
CLERK

Re: *Voulgaris, et al. v. Array Biopharma Inc. et al*, Case No. 1:17-cv-02789-KLM

To the honorable Court:

I write to object to the proposed settlement in the above referenced matter. I am a member of the proposed class and have not excluded myself from the settlement. I submitted a timely proof of claim and received a confirmation of receipt from JND Legal Administration. Between June 30, 2016 and March 17, 2017 I purchased and sold the following Array securities:

| Date | Symbol | Type | Quantity | Price | Amount |
|---|---|---|---|---|---|
| 17-Mar | ARRY | Bought | 555 | $10.52 | $5,845.55 |
| 20-Mar | ARRY | Sold | 100 | $ 9.98 | $ 990.52 |
| 20-Mar | ARRY | Sold | 155 | $ 9.97 | $1,545.68 |
| 20-Mar | ARRY | Sold | 300 | $ 9.97 | $2,990.93 |

I am filing this objection because aspects of the proposed settlement are not adequate, fair, or reasonable for the following reasons:

A. **The amount of the settlement is negligible when compared with the alleged loss to investors.**

The Complaint in this case alleges that Array Biopharma and a number of its executives committed fraud by releasing partial results from a clinical trial while withholding negative data, and that Array therefore raised money from investors based on false and incomplete information. It alleges that when the full information was belatedly revealed, investors lost more than $240 million. In its November 24, 2020 Order denying the Defendants' motion to dismiss, the Court found that the Plaintiffs adequately alleged that information Array and its executives provided was misleading and that their omissions were material. The Court also found Plaintiffs to have adequately alleged that Defendants acted knowingly and with the intent to defraud. The Court declined to dismiss any of Plaintiffs' claims.

Plaintiffs did not seek to develop the evidence to support the allegations the Court found sufficient to sustain the claims on behalf of investors. They instead entered into settlement negotiations without the benefit of having deposed any witnesses or conducting written discovery.

The gross amount of the proposed settlement is $8,500,000 – or slightly more than 3% of the amount the Complaint and Response to the Motion to Dismiss claimed investors to have lost. After payment of $2,833,333 in fees and at least another $90,000 in litigation costs that Plaintiffs' counsel requested, the return to class members will be less than 2.4% of the alleged loss.

In moving to approve the settlement, Plaintiffs' counsel revised the amount it claimed the investors lost to being between $24 and $34 million, and calculated the recovery to the class to be between 25% and 35% of damages. It is not clear why their measure of damages dropped from the $240 million previously claimed. The class has not been provided information regarding damages, and the declaration in support of the preliminary approval motion sheds no light on why the estimated damages were reduced ten-fold when seeking to have the settlement approved.

The only document in support of the reduced damages is an expert's "simplified tiered damages" analysis that surveys all securities cases throughout the country and uses "simplifying assumptions to estimate per-share damages and trading behavior." The report warns however, that its measure of damages "is not intended to represent actual economic losses borne by shareholders. Determining any such losses for a given case requires a more in-depth analysis." It does not appear that a more in-depth analysis or any analysis based on the specific facts in this case was performed.

Even ignoring the original claim of $240 million in damages, the claim that the settlement constitutes a 25% to 35% recovery is dubious. As the Complaint alleges, the Array stock price dropped $1.43 in two trading days after full information regarding the clinical trial became public. The settlement website states "Lead Counsel estimates the average cash recovery per share of common stock will be approximately $0.25 per share (assuming claims representing 34.6 million shares are filed) before deduction of court-approved fees and expenses." (Emphasis added). It is unclear what percentage of the total affected shares 34.6 million shares constitute, but even if is the total number of affected shares it constitutes a loss of nearly $49.5 million. After payment of fees and expenses, $5,573,000, or 11.25% of the loss, not 25% - 35%, will be distributed to class members *pro rata*.

This is not an excellent result for the investors. Given the allegations the Court sustained, particularly those regarding fraud, and given the amounts originally alleged to be at issue, Plaintiffs could likely have achieved a more favorable result had counsel developed evidence by pursuing more information in discovery and by cross examining the alleged perpetrators in depositions.

B.     **The requested attorneys' fees are excessive.**

Plaintiffs' counsel asks to be awarded $2,833,333 in fees plus reimbursement of slightly more than $93,000 in costs. The first defect with the request is the lack of information to justify it. Second, this case was not vigorously pursued. Finally, the hourly rates that Plaintiffs' Counsel claims are exorbitant.

1. **Counsel has not submitted information by which to evaluate whether the fee request is reasonable.**

According to the motion for approval of fees submitted on September 17, 2021 the Levi Korinski firm expended 1,558.45 hours of attorney and staff time litigating this case. The accompanying declaration of Adam Apton merely lists each attorney and staff member who worked on the case, their billing rates, and the number of hours they claim each spent. It does not detail what types of work each attorney performed or how much time was spent on types of work.

This can't possibly be sufficient. Neither class members nor the Court can determine whether the amount of time attorneys spent on particular tasks or type of work was reasonable, whether some work was repetitive or unnecessary, or how much work was expended after the outcome of the case was no longer in doubt. The summary also does not allow anyone to evaluate whether senior attorneys billing at high rates spent time on work that could have been performed by paralegals or staff. In fact, of the 1,558 hours, only 26.35 were spent by a paralegal. The rest was by attorneys who billed between $455 and $1,050 per hour. While some of the legal work may have required the specialized skill of a senior attorney, surely preparing ministerial documents that comprise most of the docket do not.

In addition, more than 900 hours of the attorney time listed in the declaration was by staff attorneys or associates who do not appear on the Levi Korinski firm resume and about whom Plaintiff's counsel has not submitted any way to evaluate whether their hourly rates that range from $455 - $500 are remotely reasonable.

2. **This case was not extensively litigated.**

Plaintiffs' Counsel claims to have spent more than 1,550 hours and describes the legal work with the superlatives of a foodie's menu. Reading the submissions, one would think each piece of research and each pleading resulted from heroic measures and once-in-a-generation genius. But, as the Levi Korinski law firm resume and website tout, this firm has handled dozens, if not hundreds, of securities cases—many of which involve stock price drops resulting from a company providing false or misleading information. As such, much of the legal work and the briefing was presumably recycled from other similar cases and perhaps updated.

More importantly, as of the date of this letter, the entire docket consists of 82 entries, most of which involve ministerial matters. The original complaint was filed in November 2017. Plaintiffs filed a motion to consolidate two actions and a motion for appointment of lead plaintiff and lead counsel, both of which were unopposed, and

filed an amended complaint in April 2018. Plaintiffs' counsel spent up to six weeks in June and July 2018 preparing a response to Defendants' Motion to Dismiss.

The Court ultimately denied Defendants' Motion on November 24, 2020. Though there was no order staying litigation while the Motion to Dismiss was pending, Plaintiffs did not pursue discovery and this case was effectively dormant for more than two years. In January 2021, Plaintiffs filed a motion for class certification that included no evidence specific to the allegations in this case beyond a declaration from expert stating that Array's stock traded in an efficient market and that he could quantify damages if needed, but had not been asked to do so.

At about the same time, the parties agreed to mediate the case. According to the declaration of Adam Apton in support of preliminary approval, the parties went to mediation without Plaintiffs conducting discovery, and the only two depositions in this case were by the Defendants. The parties reached a settlement following one mediation session in March 2021.

In sum, Defendants' Motion to Dismiss was the only contested motion the Court heard. Stripped of he superlatives, the materials submitted in support of the fee request show that counsel investigated the company's public statements as compared with the true clinical trial results, prepared a complaint, defended it with a response to a motion to dismiss that drew from briefing in other cases, did nothing for two years, reviewed the materials Defendants informally agreed to provide, then settled the case following a day of mediation. While the Complaint and response to the motion may have been brilliant, this does not justify the nearly $3 million requested.

### 3. Counsel's requested rates are exorbitant

Plaintiffs' counsel states that the attorneys and staff spent time valued at $1,011,904 based on rates that range from $455 per hour for new associates to $1,050 per hour for attorneys who have been practicing law since the mid 1990's. These rates far exceed the rates regular people pay for legal representation. While I do not know the prevailing attorney rates in Denver, in my experience, senior attorneys in Seattle with 20, 30, or more years experience commonly charge between $250 and $400 per hour to people who actually pay them. This includes rates for legal services that would be considered "technical" or "specialized."

On top of hourly rates that are several times what actual people pay for legal work, Plaintiffs' Counsel asks that the Court multiply their rates by 2.8 in recognition of their extraordinary work and excellent results. Again, there was little in this case that was not in line with the work the attorneys have performed in dozens of cases. There was no discovery, no cross examinations of people who allegedly perpetrated fraud, and almost no evidence submitted that is unique to the facts of this case.

I understand class action attorneys may operate in a different sphere than other lawyers, but the rates at which they are paid to represent investors—many of whom are individual people, should have at least some resemblance to what their clients would conceivably pay for representation.

C. **The information provided to class members regarding the settlement was inadequate.**

Aside from the substantive shortcomings, this settlement is objectionable because class members were not provided the information they need to make informed decisions—which is ironic given the substance of the lawsuit.

The information in the class notice and on the settlement website are abbreviated and cryptic. The description of the lawsuit consists of a single paragraph stating that Array is alleged to have knowingly or recklessly made false and misleading statements that induced shareholders to purchase stock and that the stock price declined when the truth was revealed. It does not inform class members that Plaintiffs alleged that Array and its executives perpetrated fraud, the content and deliberate nature of the alleged fraud, the alleged $240 million value of the decline in stock price, that the Court decided the only contested motion in Plaintiffs' favor, or that Plaintiffs settled without seeking to substantiate their claims through document discovery or depositions.

The only documents made available to class members are the settlement agreement and the preliminary approval order. To evaluate whether they considered the settlement adequate and to make an informed decision as to whether to object, shareholders should have been given access to the complaint, and at least one document, such as the motion for preliminary approval and supporting declaration, that described the litigation and the basis for the fee request.

My decision to object came only after I asked a friend with online access to the Court's docket to retrieve a number of the key documents. The information that has not been made available to the class convinced me that this settlement was not fair adequate or reasonable.

Respectfully,

*[signature]*

Matthew Pampena


