IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02789-KLM (Consolidated with Civil Action No. 17-cv-02848-STV)

PETER VOULGARIS,
WENDELL ROSE, and
ROBERT NAUMAN,

       Plaintiffs,

v.

ARRAY BIOPHARMA INC.,
RON SQUARER,
VICTOR SANDOR, and
JASON HADDOCK,

Defendants.

_____

## ORDER APPROVING SETTLEMENT AND FINAL JUDGMENT
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on **Plaintiffs' Motion for Final Approval of the Settlement** [#81][1] (the "Motion for Final Approval") and **Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses** [#82] (the "Motion for Fees") (collectively "Motions"). A hearing was held on these Motions [#81, #82] on October 29, 2021. The Court has reviewed the Motions [#81, #82] and attached exhibits, the one Objection [#83], Plaintiff's Reply in Support of the Motions [#84], and the Declaration of Layn R. Phillips [#85]. The Court has also considered the argument presented at the hearing, and is fully advised in the premises. For the reasons stated

---

[1] **Error! Main Document Only.** "[#81]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

below, the Motion for Final Approval [#81] and the Motion for Fees [#82] are **granted**.

## I.    Background

### A.    Details of the Case

This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Array Biopharma Inc. ("Array") common stock between December 16, 2015, and March 17, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").   *See Consolidated Class Action Compl. for Violations of the Federal Securities Law ("Compl.")* [#27] ¶ 1.   Plaintiffs assert that Array intentionally misled investors about one of its cancer drugs, binimetinib, and the likelihood of binimetinib's approval by the Food and Drug Administration ("FDA").   *Id.* ¶13.

More specifically, Plaintiffs allege that Defendants made materially false and/or misleading statements or omissions by: (1) omitting to disclose material information about the results of a Phase 3 clinical trial of binimetinib, referred to as "NEMO" (**N**RAS M**E**LANOMA AND **M**EK INHIBIT**O**R), (2) misleading investors to believe that the NEMO study results showed sufficient clinical benefits of binimetinib for the purposes of obtaining FDA approval; and (3) concealing that Defendants intended to seek FDA approval for a more narrow indication (only patients who have had prior immunotherapy treatment) than what was submitted in the original New Drug Application ("NDA").   *See generally Compl.* [#27]; *Mot. for Final Approval* [#81] at 2.

On March 19, 2017, Array announced that it had met with the FDA and decided to withdraw its NDA for binimetinib.   *See generally Compl.* [#27]; *Mot. for Final Approval*

2

[#81] at 2-3.   According to Plaintiffs, the news of Array's decision surprised the market, including analysts and investors alike, given Defendants' positive statements about the NEMO trial data over the previous nine months.   *Id*.   Over the next two trading days, Array's stock declined from $10.56 per share to $9.13 per share.   Plaintiffs alleged that the decline in the stock and, in turn, the losses they suffered, were due to Defendants' fraudulent statements about the NEMO trial data.   *Id*.

Plaintiffs filed suit to recover their losses.   Wendell Rose filed the initial Complaint [#1] on November 20, 2017, and Plaintiffs filed the Consolidated Class Action Complaint [#27] on April 26, 2018.   Defendants thereafter filed a Motion to Dismiss the Consolidated Class Action Complaint [#32] ("Motion to Dismiss").   The Court denied the Motion to Dismiss [#32] in its entirety on November 24, 2020, holding that Plaintiffs satisfactorily pled the elements of their securities fraud claims and met the heightened pleading requirements of Fed. R. Civ. P. 9 and the Private Securities Reform Act ("PSLRA").   *See Order* [#46].

Following the ruling on Defendants' Motions to Dismiss [#32], the Parties commenced formal discovery as well as class certification briefing.   *See Decl. of Adam M. Apton* ("Apton Decl.*") [#78-1] at ¶¶ 12, 15-16.   At or around the same time, the Parties also agreed to mediate the case before the Honorable Layn Phillips (Ret.) of Phillips ADR Enterprises.   *Id*. at ¶ 14.   The mediation occurred on March 24, 2021.   *Id*. at ¶ 19.   Plaintiffs assert that while participating in mediation, they recognized that they faced several critical obstacles in the case and determined that the Settlement was in the best interest of the class.   *See Motion for Approval* [#81] at 3.

**B.      The Terms of the Settlement**

The Stipulation and Agreement of Settlement [#77] (the "Settlement" or the "Settlement Agreement") was filed on April 28, 2021.   Under the terms of the proposed Settlement [#77], the Parties agreed that Defendants or their designee will make a cash payment of eight million and five-hundred thousand dollars ($8,500,000), as set forth in greater detail in ¶ 2.   *Id.*   Any interest earned will be for the benefit of the Class.   *Id.* at ¶ 7.   The Settlement Fund shall be used to pay: (i) any taxes and tax expenses as provided in § H of the Settlement [#77]; (ii) Notice and Administrative Expenses in accordance with § E ¶ 12, and (iii) Plaintiffs' attorneys' fees and expenses awarded by the Court as set forth in § F.   *Id.* at 15.   The balance of the Settlement Fund (i.e., the Net Cash Settlement Amount) will be distributed to Authorized Claimants in connection with the Plan of Allocation, wherein each Authorized Claimant shall be allocated a *pro rata* share of the Net Cash Settlement Amount based on his, her or its Recognized Claim compared to the total Recognized Claims of all Authorized Claimants.   *Id*. at 20.

As to distribution of the settlement proceeds, the Settlement Agreement [#77] provides that following the date on which the Settlement is no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise, and the Settlement Administrator has completed processing all of the Claims submitted in connection with the Settlement, Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Settlement Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any unpaid Notice and

4

Administrative Expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.   *Settlement* [#77] at 23.   Upon entry of the Class Distribution Order, the Net Cash Settlement Amount (which excludes (i) the Attorneys' Fees and Expenses Award, (ii) Notice and Administrative Expenses incurred, (iii) estimated Notice and Administrative Expenses for distributing the Net Cash Settlement Amount to eligible Settlement Class Members, and (iv) any taxes paid or to be paid on the Settlement Amount (and accumulated interest) and related tax preparation expenses) shall be promptly distributed to Authorized Claimants in accordance with the plan of allocation approved by the Court.   *Id*.

## C.    The Court's Preliminary Approval of the Settlement

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages.   In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement.   In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.   Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

Plaintiffs filed their Motion for Preliminary Approval of Settlement [#78] ("Motion for Preliminary Approval") on April 28, 2021.   By Order [#79] of May 4, 2021 ("Preliminary

Approval Order"), the Court granted Plaintiffs' Motion for Preliminary Approval [#78]. The Court also certified a class for the purposes of the Settlement, holding that Plaintiffs had satisfied the requirements of Rule 23 because: "(a) the members of the Class are so numerous that joinder of all Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Plaintiffs are typical of the claims of the Class; and (d) Plaintiffs have fairly and adequately represented and protected the interests of all of the Class Members." *Id.*  at 2 ¶ 2.

The Preliminary Approval Order [#79] further found that for the purposes of effecting the Settlement [#77], "a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . ." *Id.* at 2-3 ¶ 3.  In so finding, the Court considered: (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action." *Id.*

Additionally, the Preliminary Approval Order [#79] confirmed Plaintiffs' proposed forms of notice.  The Court held, in pertinent part, that the Notice, "meets the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified through reasonable efforts, and shall constitute due and

sufficient notice to all Persons entitled thereto."  *Id.* at 3 ¶ 5.

Plaintiffs filed the Motion for Final Approval [#77] and the Motion for Fees [#78] on September 17, 2021.  A hearing on these Motions [#77, #78] and the fairness of the settlement was held on October 29, 2021.

## II.    The Motion for Final Approval of the Settlement

### A.    Preliminary Findings

This Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including all Class Members.

This Order Approving Settlement and Final Judgment incorporates by reference the definitions in the Settlement Agreement [#77], and all terms used herein shall have the same meanings as set forth in the Settlement Agreement [#77], unless otherwise set forth herein.

The Court finally certifies a Class defined as: "all persons or entities who purchased or otherwise acquired Array common stock between and including June 30, 2016 and March 17, 2017 and were damaged thereby, with the exception of: (a) Array and the Individual Defendants; (b) the officers and directors of Array during the Class Period; (c) members of their immediate families and their legal representatives, heirs, successors, or assigns; and (d) any entity in which the Individual Defendants have or had a controlling interest during the Class Period."  Also excluded from the Class is the Person who validly and timely requested exclusion from the Class, as listed in Exhibit A attached to the Motion for Final Approval [#81].

With respect to the Class, this Court reaffirms its holding in the Preliminary Approval Order [#79] that for purposes of effectuating this settlement: (a) the members of the Class are so numerous that joinder of all Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Plaintiffs are typical of the claims of the Class; (d) Plaintiffs and Lead Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of the class action.

As to the notice provided in this case to the class, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court finds that the Notice of Proposed Settlement of Class Action ("Notice") given to the Class was the best notice practicable under the circumstances, including

individual notice to all members of the Class who could be identified through reasonable effort along with publication of the Publication Notice.   The Notice contained the essential terms of the settlement, including the nature of the case, the amount of the recovery, the plan of allocation and distribution to Class Members, and contact information for Lead Counsel to obtain additional materials.   Plaintiffs' counsel sent the Notice, which was 10 single-spaced pages long, to over 46,000 potential class members.   *See Reply* at 1. Plaintiffs also published a summary notice providing pertinent information about the settlement once in print in *Investor's Business Daily* and once electronically over *PR Newswire*.   *Id*.   Further, counsel established a website dedicated to providing class members with additional information.   *Id*.

The Notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement [#77], to all Persons entitled to such notice, and the Notice fully satisfied the requirements of Fed. R. Civ. P. 23, the PSLRA, and the requirements of due process.

No Class Member is relieved from the terms of the Settlement Agreement, including the releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or an adequate notice.

**B.    Whether the Settlement Should Be Approved**

**1.    The Standard and Factors to Be Considered**

Under Federal Rule of Civil Procedure 23(e), a class action settlement is entitled to final approval where it is fair, reasonable, and adequate.   *Gottlieb v. Wiles*, 11 F.3d

1004, 1014 (10th Cir. 1993).   District courts have broad discretion in granting or denying class certification.   *Shook v. Bd. of Cty. Comm'rs of the Cty. of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008).

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).   In assessing whether the settlement is fair, reasonable, and adequate, the Court must consider whether: (1) "the class members and class counsel have adequately represented the class[;]" (2) "the proposal was negotiated at arms length[;]' (3) "the relief provided for the class is adequate, taking into account: the issues identified in Rule 23(e)(2)((C); and (4) "the proposal treats class members equitably relative to each other."   *Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita, Inc.*, No. 17-cv-00304-WJM-NRN, 2021 WL 1387110, at *3 (D. Colo. April 13, 2021) (citing Rule 23(e)(2)(A)-(D)); *see also In Re Samsung Top-Load Washing Machine Marketing, Sales Practice and Products Liability Litig.*, 997 F.3d 1077, 1088 (10th Cir. 2021).

In addition, the Tenth Circuit has stated that the Court should consider: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."   *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 321 F.3d 1180, 1188 (10th Cir. 2002).   The factors in Rule 23(e), which were added in connection

with 2018 amendments to the rule, were not meant to displace any circuit's unique factors, but rather to focus courts on the core concerns in deciding whether to approve a proposed settlement.    *DaVita*, 2021 WL 1387110, at *3 (citing the advisory committee's comments to the amendments).    As noted by District Judge William J. Martinez in the *DeVita* decision, "the Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23."    *Id*.    Accordingly, as in *DaVita*, the Court "considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors."    *Id*.

        **2.**       **Analysis of the Factors**

                **i.**       **Adequate Representation by the Class Members and Class Counsel**

The Court finds that the Plaintiffs and Class Counsel have adequately represented the class, and that this factor supports approval of the settlement.    According to the Motion for Final Approval [#81], Plaintiffs have adequately represented the interests of the Class by closely monitoring and participating in this litigation from the outset through resolution.    *Id*. at 12.    Plaintiffs were in regular contact with Lead Counsel about the progress of the Action; took an active role in discussions about the claims and strategies; and Plaintiff Wendell Rose prepared and sat for deposition in connection with class certification.    *Id*.    Plaintiffs also played an instrumental role in the settlement negotiations, closely evaluated the proposed settlement, and recommended that it be approved.    *See id.*; *Rose Declaration* [#78-6]; *Voulgaris Declaration* [#78-7].

There is also nothing in the record to suggest that Plaintiffs have antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action

was aligned with all Settlement Class Members.   *See In Re Crocs Inc. Sec. Litig.*, 306 F.R.D. 672, 688 (D. Colo. 2014) (approving settlement where, as here, there was "no evidence that one set of class members will benefit from the settlement to the detriment of another set of class members").   Further, Plaintiffs' claims are typical of the claims of the Class because they all allege that they purchased Array's common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions and suffered damages as a result.   Therefore, Plaintiffs and the Class's claims are subject to the same burden of proof.

As to Class Counsel, they are highly experienced in prosecuting securities class actions, and have a long, successful track record of adequately representing large and diverse groups of investors in similar cases.   *See Mot. for Final Approval* [#81] at 13 (citing cases).   In moving for preliminary approval of the Settlement, Plaintiffs complied with Rule 23(e)(1)(A) by making an evidentiary showing in support of the settlement. Among other things, Plaintiffs submitted a declaration from Adam M. Apton, one of the lead attorneys on the matter, that demonstrated the complexity of the case and the work that was performed to arrive at the proposed Settlement.   Apton Decl. [#78-1], §§ 12-21. The case has been well managed and hard fought over nearly four years of litigation, and Plaintiffs prevailed on the Motion to Dismiss [#32] which raised complicated issues related to the merits of the securities fraud claims.   Finally, no objections were raised at any point regarding the adequacy of the representation in this case.

## ii.   Arms-Length Negotiation

The Court also finds that the settlement proposal was negotiated at arms-length,

and was fairly and honestly negotiated.   Courts have recognized that "[t]he fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'"   *McNeely v. Nat1 Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *11 (W.D. Okla. Oct. 27, 2008).   Where a settlement results from arm's-length negotiations between experienced counsel, the Court may generally presume the settlement to be fair, adequate and reasonable. *O'Dowd v. Anthem*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (Mix J.); *see also Lucas v. KmartCorp.*, 234 F.R.D. 688, 693 (D. Colo., 2006).   Moreover, utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved."   *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017).

Here, counsel for both parties are highly experienced.   The parties negotiated at arm's-length with the assistance of a nationally recognized mediator of complex cases and class actions, the Honorable Layn Phillips (Ret.).   *See Crocs*, 306 F.R.D. at 679, 690 (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases").   The arm's-length nature of the parties' negotiations and the active involvement of an independent mediator, such as Judge Phillips in particular, provide strong support for approval of the Settlement.   *Id.; see also IBEW Local 697 Pension Fund v. Int1 Game Tech., Inc.,* No. 09-cv-00419-MMD-

WGC, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips"); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations" helps to ensure that the proceedings were free of collusion and undue pressure").   Judge Phillips' involvement in the mediation process, the length of the mediation (eleven hours), and the extensive briefing and discovery that occurred in connection with the mediation, demonstrate fair, honest, and arm's length negotiations in connection with the Settlement.

### iii.    Adequacy of the Relief

Third, the Court finds that the relief provided for the class is adequate, taking into account the factors identified in Rule 23(e)(2)((C).   In assessing a settlement, courts in this District weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation."   *O'Dowd*, 2019 WL 4279123, at *13.   Here, the Court finds that the settlement amount is more than adequate.   The $8.5 million settlement exceeds the median settlement amount for cases with damages between $25 million and $74 million. *See Apton Decl.* [#78-1] ¶ 24 and Ex. A, Securities Class Action Settlements - 2020 Review and Analysis by Cornerstone Research.   Considering that damages in this case

14

were estimated between $24 million and $34 million, this recovery will provide the Class between 25% and 35% of total recoverable damages.  *Apton Decl.* [#78-1], ¶ 24.  This dwarfs the median class action settlement for similar cases in the Tenth Circuit between 2010 and 2019 where the median settlement as a percentage of overall damages was 7.6% for similar cases.  *Id.*

The finding that the settlement is adequate is further supported by the fact that continued litigation would have been highly risky, costly, and protracted.  Additionally, the likely recoverable damages if Plaintiffs prevailed may have been less if Defendants established that damages were limited to only a portion of the first day of the decline in Array's stock price.  *See In Re Crocs, Inc. Sec. Litig.*, Nos. 07-cv-02351-PAB-KLM, 07-cv-02412, 07-cv-02454, 07-cv-02465; 07-cv-02469, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) ("the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery").  The Settlement ultimately provides an excellent outcome for the Class, restoring between 25% and 35% of their alleged damages, and provides a recovery in the near term instead of years of additional litigation with uncertainty over the outcome.  Courts routinely approve class action settlements representing similar or lower percentages of recoverable damages.  *See*, *e.g., Crocs*, 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median. . . "); *In re Patriot Nat1, Inc. Sec. Litig.* 828 F. App'x 760, 762 (2d Cir. 2020) (affirming approval of settlement recovery of 6.1% of "potentially recoverable damages"); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016)

(approving settlement representing 5.5% of likely recoverable damages, noting settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size").

### iv.   Treatment of the Class Members Relative to Each Other

Fourth, the proposal treats class members equitably relative to each other.   All Class Members who meet the Class definition with a "Recognized Loss" will receive a *pro rata* share of the Settlement Fund.   *Apton Decl.* [#78-1], §§ 31-32.   The Plan of Allocation for this Settlement is as follows:   Each Class Member who submits a valid Claim (an "Authorized Claimant") will be assigned a Recognized Loss.   *Id.*   An Authorized Claimant's Recognized Loss depends upon the number of Array shares held during the Class Period; specifically, an Authorized Claimant's Recognized Loss is equal to the number of shares he or she held at the time of the corrective disclosures multiplied by the declines in Array's stock price.   *Id.*

Accordingly, each Class Member that submits a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their "Recognized Loss" and obtain their *pro rata* share of the Net Settlement Fund calculated and distributed.   Accordingly, this factor also supports granting final approval. *See, e.g.*, *Hefler v. Wells Fargo & Co.,* Case No. 16-cv-05479-JST, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) ("the allocation plan disburses the Settlement Fund to class members 'on a *pro rata* basis based on the relative size of' the potential claims that they are compromising . . . This type of *pro rata* distribution has frequently been determined to be fair, adequate, and reasonable") (citing cases).

### v.    Whether Serious Questions of Law and Fact Exist

The Court also finds that serious questions of law and fact exist in this case, placing the ultimate outcome of the litigation in doubt.   This factor also favors approval of the settlement.

Courts have recognized that "[l]itigating an action under the PSLRA is not a simple undertaking."  *Crocs.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014).   As detailed in both the Motion for Preliminary Approval [#78] and Motion for Final Approval [#81], Defendants raised credible defenses to the merits of Plaintiffs' claims before the settlement was reached, which could have resulted in either a substantially lower recovery or none at all.   *See also Apton Decl*. [#78-1] ¶27(while the discovery supporting the Defendants' contentions remain confidential, it potentially supports Defendants' arguments on the merits).   A jury could have been persuaded that Defendants' account of the regulatory process and their statements related to same did not constitute securities fraud, despite Plaintiffs' arguments to the contrary.   *Id.*

Plaintiffs note that further litigation would have also been risky with respect to damages.   *Mot. for Final Approval* [#81] at 10.   Plaintiffs' damages expert would have testified that investors sustained damages over a period of two days because Array's stock price declined steadily over that period following the March 19, 2017, announcement about the NDA.   *Id.*; *Apton Decl.* [#78-1], ¶ 28.   However, Defendants' expert would have argued that the first day of the decline was only partially related to the alleged fraud and the second day was entirely unrelated.   *Id.*   Unless Plaintiffs would have successfully precluded Defendants' damages expert from testifying, their recovery

17

may have been largely dependent on which expert the jury found more persuasive.   *Id.*

Additionally, continued litigation would have presented difficulties with witnesses. *Mot. for Final Approval* [#81] at 10-11.   The binimetinib NDA is almost five years old and the underlying data is even older.   It may have been difficult to locate the individuals who oversaw the NEMO trial and the application process, and those individuals may not remember key information.   *Id.*   Even Array no longer exists as it was acquired by Pfizer Inc. in July 2019.   *Apton Decl.* [#78-1] ¶ 26.   Plaintiffs also faced other risks inherent in most complex litigation, such as obtaining and maintaining class certification, having to defend and/or succeed against post-judgment appeals, and expert credibility concerns at trial.

### vi.   The Value of the Recovery

As to the value of a recovery, in assessing a settlement, courts weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation."   *O'Dowd*, 2019 WL 4279123, at *13.   Here, there is no question that the settlement amount of $8.5 million is substantial and a very good result for the Class, as discussed in Section II.B.2.iii, *supra.*   Furthermore, continued litigation would have been highly risky, costly, and protracted, especially as this litigation is now proceeding against one of the largest biopharmaceutical companies in the world, Pfizer Inc., who is being represented by one of the leading corporate litigation firms in the world, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps").   Accordingly, the Court finds that the value of an immediate recovery outweighs the mere possibility of future

relief after protracted and expensive litigation, and that this factor also supports approval of the settlement.

### vii.    The Judgment of the Parties and Objections to the Settlement

Finally, the judgment of the parties is that the settlement is fair and reasonable. This also weighs in favor of the settlement.   Plaintiffs achieved this Settlement only after conducting a thorough investigation of the facts and circumstances underlying their claims, including analysis of public documents, comprising of thousands of pages of company-specific materials and European regulatory filings; consultations with experts concerning drug trials and regulatory approvals; and significant preparation for the mediation.   *See Mot. for Final Approval* [#81] at 1.   Despite sending notice of the Settlement to over 46,000 potential class members, including the proposed plan for distributing settlement funds and the fee award being requested, only one Objection [#83] was received by a class member, Matthew Pampena, and two requests for exclusion. This provides further support for approval of the settlement.   *See, e.g., Hershey v. ExxonMobil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *3 (D. Kan. Oct. 26, 2012) (finding that the fact only two objections were received from class of over 8,600 members supported the approval of the settlement).[2]

---

[2]  The two requests for exclusion are from individual investors who appear to have received notices of the settlement even though they were not Class members.   *See Reply* [#84[ at 2.   Thus, they do not impact the Court's analysis.   Additionally, the Court notes that it also received a Letter [#88] from John D. Semler.   However, this does not appear to be an objection to the settlement itself, but instead to the settlement claim process.   Even if Mr. Semler's Letter [#88] is construed as an objection, it is untimely.   "[W]here the court has adopted specific timing requirements for objections," and the objector failed to comply with those requirements, even filing the objection after the fairness hearing, courts have held that the objection should be excluded. *See Hershey*, 2012 WL 5306260, at *9 (citing *Beaird v. Seagate Tech.*, 145 F.3d 1159, 116465

Moreover, while Mr. Pampena objects to the amount of the settlement, arguing that it is negligible when compared to the alleged loss to investors, Plaintiffs point out that Mr. Pampena's dissatisfaction appears to be premised on several misunderstandings of the law and the record of the case. *See Reply in Supp. of Mots.*[#84] ("Reply"), at 1.[3]  For example, Mr. Pampena accuses Lead Counsel of "revis[ing] the amount it claimed the investors lost" from $240 million to less than $34 million. *Objection* [#83] at 2.    However, this accusation confuses market capitalization loss with investor damages while only the latter being recoverable under the federal securities laws. *See Reply* [#84] at 1.  At the same time, Mr. Pampena alleges that Lead Counsel failed to engage in an "in-depth analysis" of damages, yet the estimate of recoverable damages of $34 million is the result of such an in-depth analysis. *Id.*   Mr. Pampena also faults Lead Counsel for not engaging in discovery while the Motion to Dismiss [#34] was pending.  Discovery, however, was stayed during that period pursuant to the mandatory discovery stay under the PSLRA.   Thus, the Court finds that Mr. Pampena's Objection [#83] is unfounded.

Ultimately, the fact that just one objection was received in response to more than 46,000 notices to potential Class members suggests that the settlement was widely received as a favorable and positive outcome for the case.   Indeed, Plaintiffs notes that their claims administrator, JND Legal Administration, has provisionally

---

(10th Cir.1998)).

[3]  Mr. Pampena's objection to the amount of attorneys' fees requested is addressed in Section III, *infra.*

20

accepted 1,314 claims from Class members representing just over $47 million in recoverable losses.  *Reply* [#88] at 2.  Many, if not all, of these claimants have a significantly greater interest in the settlement than Mr. Pampena and have chosen to support it wholeheartedly even though they have more at stake.  *Id*.[4]  This suggests that the Class overwhelmingly supports the settlement.

Moreover, this Court has held that "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight."  *Farley v. Family Dollar Stores, Inc*., No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014).  Here, Plaintiffs retained counsel who are highly experienced in prosecuting securities class actions, and who have a long, successful track record of adequately representing large and diverse groups of investors in similar cases.  *See*, *e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig*., Nos. 3:17-cv-182-BTM-RBB, 17-cv-267-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("Levi & Korsinsky LLP has extensive experience representing plaintiffs in securities and financial class action lawsuits. That such experienced counsel advocate in favor of the settlement weighs in favor of approval."); *In re Ocean Power Techs., Inc*., Nos. 3:14-CV-3799, 3:14-CV-3815, 3:14-CV-4015, 3:14-CV-4592, 2016 WL 6778218, at *7 (D.N.J. Nov. 15, 2016) ("Lead Counsel, Levi & Korsinsky, is highly specialized in the field of securities class action litigation, and has efficiently conducted the motion practice and settlement negotiations involved in this proceeding, and is therefore qualified to represent the Settlement

---

[4]  Mr. Pampena lost just over $300 in connection with his purchase of Array stock on the very last day of the Class Period.  *Id*. at 1.

Class."); *see also Apton Decl*., Ex. B [#78-3] (firm resume).  Given their extensive experience and success in prosecuting class actions, Lead Counsel's judgment that the settlement is fair, reasonable, and adequate is entitled to substantial weight.

   viii.   **Conclusion as to the Factors**

   The Court finds from the foregoing that the factors relative to whether a settlement should be approved uniformly weigh in favor of approval of the settlement. Accordingly, the Court hereby **approves** the Settlement as fair, reasonable, and adequate, and directs that the Settlement be consummated in accordance with the terms and conditions set forth in the Settlement Agreement [#77].

   The Plan of Allocation, as described in the Notice and Publication Notice, is also hereby approved as fair, reasonable and adequate.  Any order, proceeding, appeal, modification or change relating to the Plan of Allocation or any fee and expense award shall in no way disturb or affect the finality of this Judgment, and shall be considered separate from this Judgment.

**C.   Additional Findings**

   Upon the Effective Date, Plaintiffs, Defendants, and each and every Class Member, for themselves and for any Person claiming now or in the future through or on behalf of them, shall be deemed to have, and by operation of the Judgment entered in the Action shall have, fully, finally, and forever waived, released, relinquished, discharged and dismissed each and every Claim released by the Parties, whether or not such Class Member executes and delivers the Claim Form, and whether or not such Class Member shares or seeks to share in the Settlement Fund.

Upon the Effective Date, Plaintiffs, Defendants, and each and every Class Member, for themselves and for any Person claiming now or in the future through or on behalf of them, shall covenant or be deemed to have covenanted not to sue the Releasors or Releasees with respect to the Claims, and shall be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum or other forum, asserting Claims against the Releasors or Releasees.

In accordance with 15 U.S.C. § 78u-4(f)(7), claims for contribution arising out of any Claim, including, but not limited to, any claims that arise out of the Action (i) by any Person against a Releasee, and (ii) by any Releasee against any Person other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii), are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.

Any Plan of Allocation submitted by Lead Counsel or any order entered regarding the attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

Neither the Settlement Agreement [#77] nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Plaintiffs' Claim, or of any wrongdoing or liability of the Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of any

of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal.   Neither the Settlement Agreement [#77] nor the settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement shall be admissible in any proceeding for any purpose except that the Releasees may file the Settlement Agreement and/or this Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or similar defense or counterclaim.

Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees and expenses in the Action; (d) all parties hereto for the purpose of construing, enforcing, and administering the Settlement Agreement; and (e) all other proceedings related to the implementation and enforcement of the terms of Settlement Agreement and/or settlement.

In the event that the settlement does not become effective in accordance with the terms of the Settlement Agreement [#77] or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants or their insurers, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be

vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

The Court finds that during the course of the Action, the Parties, and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

### III.   The Motion for Fees

Lead Counsel requests: (i) an award of attorneys' fees in the amount of $2,833,333.33, which represents one-third of the Settlement Fund; and (ii) payment of litigation expenses incurred in prosecuting the Action in the amount of $97,587.33. For the reasons stated below, the Court finds that these requests are reasonable and should be granted.

### A.    Attorneys' Fees

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1550 (2013).   The purpose of this common fund doctrine is to compensate class counsel fairly and adequately for services rendered and to prevent unjust enrichment of persons who benefit from a lawsuit without bearing its cost.   *See Boeing*, 444 U.S. at 478.   The Tenth Circuit has explicitly recognized this Court's ability to award attorneys' fees from a common fund in situations where, as here, the common fund is the result of the

attorneys' successful prosecution of the action.    *See, e.g.*, *Gottlieb*, 43 F. 3d at 482; *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, Master Docket No. 09-md-02063-JLK-KMT, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014).    In preferring this method, courts in the Tenth Circuit have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *Cook v. Rockwell Int1 Corp.*, No. 90-cv-00181-JLK, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017).    Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund should "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature."    *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL4537550, at *23 (S.D.N.Y. Nov. 8. 2010); *see also Crocs*, 2014 WL 4670886, at *5 ("Federal securities class actions require Lead Counsel to expend substantial time and effort with no guarantee of success.    In light of these difficulties, 'public policy supports granting attorneys' fees that are sufficient to encourage Lead Counsel to bring securities class actions that supplement the efforts of the SEC.'").    Compensating Lead Counsel for the risks they take in bringing these actions is important because "[s]uch actions could not be sustained if Lead Counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."    *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y 2008).

26

For their efforts in creating a $8.5 million Settlement Fund, Lead Counsel seeks one-third of the recovery in the amount of $2,833,33.33.   Tenth Circuit precedent supports the request.   In *Brown*, the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case.   838 F.2d at 454-55; *see also Gottlieb*, 43 F. 3d at 483 (noting that either the percentage or lodestar method is permissible in common fund cases; however, there is a preference for the percentage of the fund method) (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993)).   The PSLRA also supports awarding attorneys' fees in securities cases using the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court for the plaintiff class shall not exceed a reasonable percentage of the amount . . . actually paid to the class."   15 U.S.C. §78u-4(a)(6).

The Court finds that Lead Counsel's fee request falls within the range of fee percentages awarded in securities class actions and other comparable complex class actions in this Circuit.   *See*, *e.g.*, *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Rasner v. FirstWorld Commc'ns, Inc.*, No. 00-K-1376, slip op. (D. Colo. Jan. 19, 2005) (same); *In re Einstein Noah Bagel Corp. Sec. Litig.*, No. 97-N-1614, slip op. (D. Colo. June 4, 1999) (awarding 30% of recovery).   Lead Counsel's request is supported by the amount of time they invested in the case, which amounts to over 1,500 hours of attorney time, and the

reasonable 2.8x multiplier being sought.   The requested fee will compensate Lead Counsel for their time, effort, and results.

Not only is the amount of fees requested fair, but it also falls squarely in line with precedent from within the Tenth Circuit concerning multipliers and the benchmark fee award in complex class action litigation.   *See*, *e.g.*, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure."); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *3 (D. Colo. Mar. 9, 2000) ("Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed").

The Court also finds that the factors considered by the Tenth Circuit in determining the reasonableness of the fee award.   *See Brown*, 838 F.2d at 454-55 (citing the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).   The *Johnson* factors are as follows:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Lost Dog Pizza, LLC*, No. 17-cv-2228-WJM-NYW, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) (Martínez, J.) (citing *Johnson*., 488 F.2d at 717-19).   The Court finds that each factor that is relevant to a securities class action supports the fee request.

First, the result achieved for the class is extremely important in determining an appropriate fee award.   *Brown*, 838 F.2d at 456 (in a common fund case the results obtained may be given greater weight); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of recovery, and end result achieved are of primary importance, for these are the true benefit to the client").   Through their efforts in prosecuting and resolving this litigation, Lead Counsel has obtained a recovery of $8.5 million for the Class, which the Court finds is a significant and excellent result for Plaintiffs in a complex securities class action case with significant challenges both to liability and damages.

Courts have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving.   *See Miller v. Woodmoor Corp.*, Nos. 74-F-988, 74-F-567, 1978 WL 1146, at *4 (D. Colo. Sept. 28, 1978); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009).   The novelty and difficulty of the legal and factual issues in this securities case, as demonstrated by the briefing and Order [#] on the Motion to Dismiss [#34], support an award of the fees requested. Further, courts have recognized that federal securities cases require counsel to spend substantial time and effort on the case, with no guarantee of success, such that the "cases are often seen as undesirable."   C*rocs*, 2014 WL 4670886, at *5; *In re*

29

*Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011).   This further supports the award of fees.   *See In Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016).

The skill required and the experience, reputation, and ability of the attorneys also support the reasonableness of the fee request.   As previously noted, Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation, and faced formidable opposition from counsel from Skadden Arps, a firm that also has significant experience with securities litigation practices.   The quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained.   Moreover, as discussed in Section I.B, *supra,* the Settlement exceeds awards in similar cases.

The contingent nature of the fee and the concomitant risks of non-recovery also support the reasonableness of the fee request.   *See Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *9-10; *see also Tuten v. United Airlines, Inc*., 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest*, 2006 U.S. Dist. LEXIS 71267, at *22 (a contingent fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful").   As Plaintiffs recognize, numerous cases have recognized that the risks of litigation are important factors in determining a fee award.   *See Mot. for Fees* [#82] at 17-18 (citing cases).

The time and labor expended by Lead Counsel also support the reasonableness of the fee request.   As noted in the Motion for Final Approval [#81], these efforts included an extensive and extremely comprehensive investigation, consultation with experts, and drafting a highly detailed Complaint sufficient to defeat Defendants' Motion to Dismiss [#32] in its entirety.   *Id* . at 12.   Due to the PSLRA's five-year statute of repose and its effect on Class Members' claims, Lead Counsel also moved for class certification on an expedited basis.   This involved preparing the motion, defending the depositions of Plaintiffs' expert and Mr. Rose, and drafting a reply in response to Defendants' opposition to the motion.   *Id.*   In addition, Plaintiffs note that the extensive settlement negotiations were substantially time-consuming, including submitting detailed mediation statements and presentations over the course of the mediation that culminated in the Settlement.

Although not required in the Tenth Circuit, a lodestar "cross check" analysis also supports Lead Counsel's fee request.   As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method.   *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). Moreover, "the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award."   *Vizcaino*, 290 F.3d at 1050.

In total, prosecuting this Action necessitated Lead Counsel to expend more than 1,500 hours, equivalent to $1,004,641.00 in attorney and staff time, over the course of more than three years of litigation.   The requested fee of $2,833,333.33 equates to a multiplier of 2.8x, which is consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit.   *See e.g. In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006); *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *7-*8.

Multipliers are justified where, as here, plaintiffs' counsel litigates on a contingent basis.   *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014)   The hourly rates charged by Lead Counsel in this case range from $455 to $1,050, which are generally consistent with hourly rates approved in similar cases. *See, e.g., In re Molycorp Inc. Sec. Litig.,* 2017 WL 11598681, at *1-2 (D. Colo. June 16, 2017) (approving 30% fee request in securities class action where attorney hourly rates ranged from $435 to $955 per hour); *Crocs*, 2014 WL 4670886, at *4, [#208] at 95 (awarding 30% fee where attorney hourly rates were up to $935 per hour and were "higher than the rates charged by attorneys of similar skill and experience in the Denver legal market").   While Objector Matthew Pampena objects to the rates as exorbitant, Objection [#83] at 4, the Court rejects this argument, particularly given the nature of this case and the amount of work involved in litigating a class action securities fraud case.

Based upon the foregoing and after weighing all the relevant factors, the Court finds that the fees requested by Lead Counsel are reasonable.   Lead Counsel is awarded attorneys' fees in the amount of $2,833,333.33.

**B.   Litigation Expenses**

Finally, the Court finds that Lead Counsel's litigation expenses should also be reimbursed.   "As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 U.S. Dist. LEXIS 21140, at *11; *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).   Courts regularly award litigation costs and expenses, "including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."   *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Bratcher v. Bray Doyle Indep. Sch. Dist. No. 42*, 8 F. 3d 722, 725-26 (10th Cir. 1993) (expenses properly awarded if such charges would normally be billed to client).

Here, Lead Counsel incurred the expenses as a result of reasonable and necessary steps taken during the course of the litigation, such that they are entitled to reimbursement.   Significantly, the requested amount of $97,587.33 is notably less than the amount stated in the notice disseminated to the Class.   They primarily consist of expert witness fees as well as mediation expenses.   Without the expert witnesses retained by Plaintiffs and Lead Counsel, it is unclear whether Plaintiffs would have

secured the result presently before the Court.   Accordingly, the Court awards the requested fees.

## IV.   Conclusion

Based upon the foregoing,

IT IS HEREBY **ORDERED** that the Motion for Final Approval [#81] is **GRANTED**.   The Settlement in this case is approved as fair, reasonable, and adequate.

IT IS FURTHER **ORDERED** that the Motion for Fees [#82] is **GRANTED**.   Lead Counsel is awarded attorneys' fees in the amount of **$2,833,333.33** and expenses in the amount of **$97,587.33**.

IT IS FURTHER **ORDERED** that in light of the approval of the settlement, this Action is **DISMISSED WITH PREJUDICE**.   The parties are to bear their own costs, except as otherwise provided in the Settlement Agreement or this Judgment.

IT IS FURTHER **ORDERED** that the provisions of this Order and Judgment constitute a full and complete adjudication of the matters considered and adjudged herein, and the Court finds for purposes of Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay in the entry of this Judgment and expressly directs entry of the Judgment.

Dated: December 3, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

.