**PUBLISH**

FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

February 27, 2023

Christopher M. Wolpert
Clerk of Court

_____

PETER VOULGARIS; WENDELL ROSE; ROBERT NAUMAN,

    Plaintiffs - Appellees,

v.

ARRAY BIOPHARMA, INC.; RON SQUARER; VICTOR SANDOR; JASON HADDOCK,

    Defendants - Appellees.

---------------------------------------

MATTHEW PAMPENA,

    Objector - Appellant.

No. 22-1003

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 1:17-CV-02789-KLM & 1:17-CV-02848-KLM)**
_____

Ari Y. Brown, Law office of Ari Brown, (Nicholas S. Boebel, Hansen Reynolds LLC, Minneapolis, Minnesota, with him on the briefs), Seattle, Washington, for Objector-Appellant

Nicholas I. Porritt, Levi & Korsinsky, LLP, Washington, D.C., for Plaintiffs-Appellees
_____

Before **MATHESON**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

**CARSON**, Circuit Judge.

_____

A request for attorneys' fees generally should not result in a second major litigation. Yet by granting class members permission to object, Federal Rule of Civil Procedure 23 anticipates some litigation when class counsel requests fees. Following Rule 23's rubric, here, a single class member—Matthew Pampena—objected to a proposed class action settlement and request for attorneys' fees. Pampena lost at the district court and before us appeals the fee award. He relies on three propositions. First, he says that we have a 25% benchmark for reasonable attorneys' fees in common-fund class action cases. Second, he says that the district court misapplied the factors from <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974). And third, he says that the district court accepted an improperly inflated lodestar. Each proposition is wrong. Thus, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Plaintiffs are shareholders in Array Biopharma, Inc. who brought a federal securities class action against Array and its executives (together, "Defendants") in fall 2017. Plaintiffs alleged that Defendants made deliberate fraudulent statements about a clinical trial, which caused significant shareholder losses.

Defendants moved to dismiss in June 2018. Over two years later, the district court denied the motion. Upon denial, Plaintiffs drafted discovery and moved for class certification. While awaiting a ruling, the parties agreed to mediate.

Mediation took place in March 2021. It led to a proposed settlement that resolved claims on behalf of the class for a payment of $8.5 million. In May, the district court granted preliminary approval of the settlement. The district court also authorized counsel to disseminate notice of the settlement to potential class members.

That September, Plaintiffs sought final approval of the settlement and an award of attorneys' fees. Plaintiffs' counsel asserted that the $8.5 million common fund settlement represented between 25% and 35% of estimated total class wide damages. And they requested a fee of one-third of the $8.5 million (or $2,833,333.33). In support of their requested fee, Plaintiffs' counsel cited the number of notices they sent (46,000), the hours they spent (1,558.45), and their billing rates (ranging from $455 for associates to $1,050 for partners). In addition, Plaintiffs' counsel pointed out that the requested fee was 2.8 times their lodestar.

Pampena objected to the settlement. By his estimation, the settlement recovered a fraction of the losses suffered by the class and the attorneys' fee request was excessive because the case was not extensively litigated and the billing rates were exorbitant. The district court rejected Pampena's arguments and entered a final approval order in December 2021. The order approved the settlement and awarded Plaintiffs' counsel one-third of the common fund. Pampena appeals the fee award.

II.

We review decisions awarding or denying fees for abuse of discretion. United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1232 (10th Cir. 2000). An abuse of discretion occurs if the district court commits legal error, relies on

clearly erroneous factual findings, or issues a ruling without any rational evidentiary basis.  Dullmaier v. Xanterra Parks & Resorts, 883 F.3d 1278, 1295 (10th Cir. 2018).

III.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  Reasonable attorneys' fees are those "adequate to attract competent counsel" that do not "produce windfalls to attorneys."  Blum v. Stenson, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5913).

Two methods exist for determining attorneys' fee awards in common-fund class action cases.  Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P., 888 F.3d 455, 458 (10th Cir. 2017).  One is the percentage-of-the fund method, which awards class counsel a share of the benefit achieved for the class.  Id.  The other is the lodestar method.  Id.  We have "approved both methods in common-fund cases, although expressing a preference for the percentage-of-the-fund approach."  Id. (citing Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994)).  We have also recognized the applicability of the Johnson factors to the percentage-of-the-fund method.[1]  See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454–55 (10th Cir. 1988).

---

[1] The Johnson factors are:

Pampena says the district court erred in determining that the fees were reasonable because it: (1) did not start its analysis with a 25% benchmark; (2) misapplied the Johnson factors; and (3) accepted an inflated lodestar.

A.

Pampena first argues that the Tenth Circuit previously declared a "benchmark" of 25% for attorneys' fees from a common fund, and that the district court should have started with that number in assessing reasonableness. See Gottlieb, 43 F.3d at 487–88. But we have never adopted such a benchmark. True, Gottlieb cited a Ninth Circuit case in which that court "established 25% of the common fund as the 'benchmark' award for attorney fees." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). But Gottlieb neither announced a Tenth Circuit benchmark nor adopted Torrisi in toto. See Gottlieb, 43 F.3d at 487–88. Rather, Gottlieb cited several cases—among them, Torrisi—to support a conclusion that

---

(1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee- this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Brown v. Phillips Petroleum Co., 838 F.2d 451, 454–55 (10th Cir. 1988) (citing Johnson, 488 F.2d at 717–19).

22.5% was "well within the range of permissible reasonable fee awards." Id. (collecting cases).

To date, we have not adopted a benchmark percentage for attorneys' fees from common fund settlements. And we decline to pronounce a bright-line benchmark today. Instead, we reiterate our prior recognition that awards across a range of percentages may be reasonable. See Brown, 838 F.2d at 455 n.2 (collecting cases treating awards from 22% to 37.3% reasonable); Uselton v. Com. Lovelace Motor Freight, Inc., 9 F.3d 849, 854 (10th Cir. 1993) (affirming a 29% fee and observing "the district court arrived at a percentage near the top of the range for comparable common fund cases").

The district court properly exercised its discretion in determining that 33% "falls within the range of fee percentages awarded in securities class actions and other comparable complex class actions in this Circuit." Voulgaris v. Array Biopharma Inc., No. 17-CV-02789-KLM, 2021 WL 6331178, at *12 (D. Colo. Dec. 3, 2021) (collecting cases). Pampena's argument that the district court needed to start at 25% to justify its finding is without merit.

B.

Next, Pampena argues that the district court did not explain why the Johnson factors support the fee award. He specifically challenges three factors: the amount involved and the results obtained; the novelty and difficulty of the questions; and experience, reputation, and ability of the attorneys.

1.

Pampena says that the district court provided no support for its conclusion that the settlement result was excellent.  By his estimation, the district court should have done more than compare the return to the range of settlements in similar securities actions.  But Pampena cites no case law suggesting that the district court's analysis was insufficient.  And, upon inspection, we are confident the analysis was adequate.

The district court relied on Plaintiffs' expert damage analysis and economic reports from Cornerstone Research, both of which provide historical settlement ranges in securities class actions.  And district courts commonly rely on these types of analyses and reports in assessing fairness, reasonableness, and adequacy of class action settlements.  See, e.g., Utah Ret. Sys. v. Healthcare Servs. Grp., Inc., No. CV 19-1227, 2022 WL 118104, at *10 (E.D. Pa. Jan. 12, 2022); In re Wells Fargo & Co. S'holder Derivative Litig., 445 F. Supp. 3d 508, 522 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021); In re Merrill Lynch Tyco Rsch. Sec. Litig., 249 F.R.D. 124, 135 (S.D.N.Y. 2008).

Using Plaintiffs' expert damage analysis, the district court accepted that "damages in this case were estimated between $24 million and $34 million," so the $8.5 million recovery "will provide the Class between 25% and 35% of total recoverable damages." Array Biopharma Inc., 2021 WL 6331178, at *6.  Then, looking to the Cornerstone reports, the district court found that 25% to 35% "dwarfs the median class action settlement for similar cases in the Tenth Circuit between 2010 and 2019 where the median settlement as a percentage of overall damages was

7.6% for similar cases." Id.  And moreover, "[t]he $8.5 million settlement exceeds the median settlement amount for cases with damages between $25 million and $74 million." Id.

Comparing this recovery to average recoveries across securities class actions confirmed the above-average results obtained by Plaintiffs' counsel.[2]  The district court was, therefore, well within its discretion to determine that the amount involved and results obtained supported an attorneys' fee award of 33%.

2.

As to the novelty and difficulty of the questions at-issue, Pampena contends that the district court did not sufficiently explain itself.  Although the district court could have explored the complexity of this action compared to others, Pampena cites no case suggesting that we require such an analysis.  In fact, Pampena cites no case that outlines what the district court should have done—or why what the district court did amounts to error.

What's more, the district court recognized that "securities class actions present inherently complex and novel issues, which are constantly evolving" and that the "novelty and difficulty of the legal and factual issues in *this* securities case," as evidenced by the briefing and order on the motion to dismiss, support the requested fees.  Array Biopharma Inc., 2021 WL 6331178, at *13 (emphasis added).

---

[2] Indeed, even if Pampena were correct that the settlement amount was 12% or 18% of total damages (instead of 25% to 35%), the comparative analysis shows those numbers would still beat the median (7.6%).

We see no abuse of discretion and, especially with no articulation of how these findings were insufficient or incorrect, will not go hunting for error. See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1200–01 (10th Cir. 1986) ("We customarily defer to the District Court's [fees award] because an appellate court is not well suited to assess the course of litigation and the quality of counsel." (quoting Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980) (en banc))).

3.

Pampena next argues that this case required no exceptional experience, reputation, or ability from class counsel and that the district court insufficiently supported its contrary finding. Once again, the district court's order and record on appeal belie Pampena's argument.

Pampena is correct that the district court led by broadly remarking that "[t]he skill required and the experience, reputation, and ability of the attorneys also support the reasonableness of the fee request." Array Biopharma Inc., 2021 WL 6331178, at *13. Perhaps if the district court stopped with that conclusory observation, Pampena's concerns could be warranted. But the district court did not stop there. It explained that "Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation, and faced formidable opposition from counsel from Skadden Arps, a firm that also has significant experience with securities litigation practices." Id. And that "[t]he quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained," which "exceeds awards in similar cases." Id.

9

Pampena argues that most of the time spent litigating this case came from junior or staff attorneys. But that observation does not undermine the district court's experience and quality findings, which broadly apply to the firm (Levi & Korsinsky, LLP), not to individual attorneys.

Simply put, the district court did not abuse its discretion as to the Johnson factors.

C.

Pampena's third argument is that the district court relied on inflated numbers in calculating the lodestar.[3] This argument fails for at least two reasons.

First, the district court was not required to perform a lodestar cross-check. In Brown, we held that "in awarding attorneys' fees in a common fund case, the 'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." Brown, 838 F.2d at 456. Pampena himself recognizes that the lodestar cross-check is "not strictly required in every case." Appellant's Br. at 24. Thus, any perceived error in the district court's lodestar calculation does not necessarily entitle Pampena to relief.

Second, the district court's lodestar calculation was not erroneous. The district court found that Plaintiffs' counsel spent "more than 1,500 hours, equivalent to

---

[3] The "lodestar" is "the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).

$1,004,641.00 in attorney and staff time, over the course of more than three years of litigation." Array Biopharma Inc., 2021 WL 6331178, at *14. The requested fee ($2,833,333.33) is 2.8 times Plaintiffs' counsel's lodestar. See id. The district court correctly observed that "a multiplier of 2.8x" is "consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit." Id.

Pampena contends that the district court should have scrutinized the hours spent and rates charged by Plaintiffs' counsel. In support, he cites Rosenbaum v. MacAllister, 64 F.3d 1439, 1447–48 (10th Cir. 1995), in which we reversed an attorneys' fee award because "our conscience [wa]s shocked by an award of a 3.16 multiplier that result[ed] in a fee equal to more than $900 per hour for every attorney, paralegal, and law clerk who worked on the case." But Rosenbaum is distinguishable in several ways. Chief among them: Rosenbaum was not a common fund case. A close second: Rosenbaum did not consider reasonable hourly rates for attorneys in factually analogous cases.

According to Pampena, if the district court used the rates "prevailing in the community" of "lawyers of reasonably comparable skill, experience and reputation," the multiplier would be much higher. Blum, 465 U.S. at 895 n.11 (1984). He points to Jensen v. West Jordan City, 968 F.3d 1187 (10th Cir. 2020), to support his belief that the prevailing community rates are much lower than those charged by Plaintiffs' counsel.

True, in Jensen, the district court found that $285 per hour best reflected the rate for an attorney with 24 years of experience. Jensen, 968 F.3d at 1201. Also true

11

that, if the appropriate average rate here were closer to $300, the lodestar would be much lower and the multiplier much higher. But attorneys are not so fungible that Pampena can argue any rate we once declared appropriate is appropriate for all cases. Jensen involved an attorney seeking statutory fees in an individual's Title VII retaliation case. This case involves counsel litigating a complex securities class action on a contingent basis. Those situations are different. The district court recognized the need to look to *similar* cases to determine whether counsel charged reasonable rates. See Array Biopharma Inc., 2021 WL 6331178, at *14 (comparing the rates here with those approved in other securities class actions in the District of Colorado). In performing that analysis, the district court appropriately found that the rates charged in this case ($455 to $1050) were "generally consistent" with those approved in similar cases. Id.

 Pampena is also wrong to suggest that the district court needed to discount counsel's lodestar because hours came from staff attorneys and because billing records were insufficiently meticulous.[4] When a district court uses the lodestar as a cross-check, it does not err by failing to employ an objector's desired level of scrutiny. See, e.g., In re Rite Aid Corp. Sec Litig., 396 F.3d 294, 306 (3d Cir. 2005)

---

[4] The cases Pampena cites are distinguishable. For example, this case does not involve contract attorneys as in In re Wells Fargo & Co. Shareholder Derivative Litigation, 445 F. Supp. 3d 508, 527–31 (N.D. Cal. 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021), where the district court reduced the hourly rate of contract attorneys but overruled objections related to staff attorneys. Nor does it involve statutory attorneys' fees as in Robinson v. City of Edmond, 160 F.3d 1275, 1284 (10th Cir. 1998), where we explained the need for "meticulous" records when seeking attorneys' fees under 42 U.S.C. § 1988.

("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) ("Of course, where [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."). That is what happened here. The district court did not abuse its discretion.

IV.

Finally, Plaintiffs request sanctions against Pampena because neither law nor facts support his arguments.

Federal Rule of Appellate Procedure 38 authorizes us to award damages and costs if "an appeal is frivolous or brought for purposes of delay." Braley v. Campbell, 832 F.2d 1504, 1510 (10th Cir. 1983). An appeal is "frivolous" when "the result is obvious, or the appellant's arguments of error are wholly without merit." Id. (quoting Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 656 (9th Cir. 1984)).

Although Pampena's appeal lacks merit—and ushers us down the undesirable path of "a second major litigation" on attorneys' fees, Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)—we will not levy sanctions against him. The award of sanctions is a matter within our discretion. See Fed. R. App. P. 38 (detailing that a court "*may* . . . award just damages and single or double costs to the appellee" (emphasis added)). But in this instance, with a class member using the available process for colorable objection and appeal, we will not exercise our discretion to sanction the class member.

For these reasons, we AFFIRM the district court's award of attorneys' fees and DENY Plaintiffs' request for sanctions.